# EXHIBIT A

# ~~Highbridge Principal Strategies,~~BASEBALL FINANCE LLC

40 WEST 57TH STREET
NEW YORK, NY 10019
TEL 212-287-6805
FAX 646-495-4450

June 27, 2011

Mr. Jeffrey J. Ingram
Executive Vice President
McCourt Group LLC
1000 Elysian Park Avenue
Los Angeles, CA 90012

Dear Jeff:

~~You have advised Highbridge Principal Strategies,~~Baseball Finance LLC, as manager of affiliates who are willing to provide debtor-in-possession financing (collectively, the "Lender") is advised that Los Angeles Dodgers LLC (the "Borrower") and certain of its affiliates as set forth in Exhibit A (collectively, the "Guarantors" and together with the Borrower, the "Obligors") are seeking debtor-in-possession financing in connection with a voluntary reorganization of Borrower and certain affiliates upon the filing of a petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court (the "Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

1. Commitments

The Lender is pleased to advise you that it is willing, subject to the terms and conditions of this letter agreement and the summary term sheet (the "Term Sheet"), attached as Exhibit A hereto, to provide the Borrower with debtor-in-possession financing (the "Commitment"), through a superpriority ~~senior secured delayed~~multiple draw term facility (the "DIP Facility") in an amount not to not to exceed $150,000,000 consisting of: (i) $60,000,000 (the "Interim Order Commitment Amount") available on the date of, and subject to the terms and conditions of, the Interim Order (as defined in Exhibit A); and (ii) $90,000,000 (the "Final Order Commitment Amount"); in each case subject to the terms and conditions set forth herein.

Subject to approval by orders entered into by the Bankruptcy Court and to the terms and conditions set forth herein and in the Term Sheet, the Lender hereby commits to act as sole ~~administrative agent (in such capacity, the "DIP Administrative Agent")~~lender for the DIP Facility. ~~Prior to or after execution of the mutually acceptable~~The definitive loan documentation for the DIP Financing (the "DIP Loan Documents")~~, which~~ shall be satisfactory to the Lender~~, the~~ in all respects. The Lender reserves the right to assign or syndicate all or part of the commitments hereunder to one or more other lenders who are affiliates of the Lender who will participate in the DIP Facility ~~(collectively with the Lender, the "DIP Lenders")~~ that will become party to such definitive credit documentation~~, provided, however, that the Lender or DIP Administrative Agent shall not assign or grant participations in any part of the Commitments to another Major League Baseball Club or Major League Baseball, or any affiliate of either of the foregoing~~.

1

Subject to approval by orders entered into by the Bankruptcy Court, the Lender's commitments and agreements hereunder are subject to (a) there not occurring or becoming known to the ~~DIP Lenders~~Lender any condition or circumstance which the Lender shall determine has had, or could reasonably be expected to have, a material adverse effect on (x) the DIP Financing, (y) the property, assets, nature of assets, business, operations, liabilities, condition (financial or otherwise) or prospects of the Obligors taken as a whole since May 1, 2011, or (z) the rights or remedies of the ~~DIP Lenders~~Lender or the ability of the Obligors to perform their obligations to the ~~DIP Lenders~~Lender under the DIP Facility (each, a "Material Adverse Effect"); provided, that neither (i) Major League Baseball's rejection of the Obligors' potential media rights transaction with Fox on June 20, 2011, nor (ii) the commencement of the Case and the events leading to the Case or resulting therefrom in and of themselves shall constitute a Material Adverse Effect, (b) the preparation, negotiation, execution and delivery of the DIP Loan Documents satisfactory to the ~~DIP Lenders~~Lender in ~~their~~its sole discretion, (c) your compliance with the terms of this Commitment Letter ~~and the fee letter with respect to the DIP Facility dated the date hereof (the "Fee Letter")~~, (d) the payment in full of all fees, expenses and other amounts payable under this Commitment Letter, ~~the Fee Letter (including the payment of a commitment fee to the DIP Lenders as set forth therein),~~ and the DIP Loan Documents, and (e) the other conditions set forth or referred to herein and in the Term Sheet.

2. Fees and Expenses; Indemnification.

In consideration of the execution and delivery of this Commitment Letter by the Lender, the Obligors agree, jointly and severally, to pay the fees and expenses set forth in the DIP Facility Term Sheet ~~and in the Fee Letter~~ as and when payable in accordance with the terms thereof.

The Obligors further agree, on a joint and several basis, to indemnify and hold harmless ~~each of~~ the Lender, any assignee of the ~~other~~ DIP ~~Lenders~~Facility, and each of their respective affiliates and all their respective officers, directors, partners, trustees, employees, shareholders, advisors, agents, professionals, attorneys and controlling persons and each of their respective heirs, successors and assigns, in their capacities as such (each, an "Indemnified Person") from and against any and all losses, liabilities, obligations, claims, damages, penalties, actions, judgments, suits, and related reasonable and documented out of pocket costs, expenses or disbursements of any kind or nature whatsoever (including, without limitation, the reasonable fees and disbursements of counsel (including the fees and disbursements of advisors to counsel) and advisors to the Lender) and, in each case, to which any Indemnified Person may become subject arising out of or in connection with (including with respect to the execution, delivery, enforcement, performance and administration of) this Commitment Letter, the DIP Facility, the loans made pursuant to the DIP Facility, the DIP Loan Documents, the use of the proceeds therefrom, any of the other transactions contemplated by this Commitment Letter, any other transaction related thereto, the Interim Order (as defined in the Term Sheet), the Final Order (as defined in the Term Sheet), and any such other documents related thereto (regardless of whether the Indemnified Person is a party to the litigation or other proceeding giving rise thereto) or any claim, litigation, investigation or proceeding relating to any of the foregoing (regardless of whether any Indemnified Person is a party thereto), (all the foregoing in this clause (a), collectively, the "Indemnified Liabilities") and to reimburse each Indemnified Person promptly upon demand for all legal (of a single law firm for all Indemnified Persons) and other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuit, investigation, claim or other proceeding relating to any of the foregoing (including, without

2

limitation, in connection with the enforcement of the indemnification obligations set forth herein), provided that the Debtors shall not have any obligation hereunder to the Indemnified Persons with respect to Indemnified Liabilities arising from the gross negligence, bad faith or willful misconduct of any such person (or any of its directors, trustees, officers, employees, affiliates, controlling persons, agents, successors and assigns) as determined by a final and non-appealable order of the Bankruptcy Court.

3. Expiration of Commitment.

The Lender's willingness and commitments with respect to the DIP Facility as set forth above will expire at<u>upon the earlier to occur of (i)</u> 9:00 a.m. (EST), on ~~June 27, 2011~~ <u>July 1, 2011,</u> unless on or prior to such time you have executed and returned to the Lender a copy of this Commitment Letter ~~and the Fee Letter; furthermore, if the Lender has not received the Commitment Fee, pursuant to the Fee Letter, in immediately available funds via wire transfer by 2:00 p.m. (EST), on June 27, 2011, the Lender may terminate all of the Lender's commitments with respect to the DIP Facility~~<u>, or (ii) entry of a Bankruptcy Court order approving an alternative post-petition financing arrangement in the Case</u>. If you do so execute and deliver to the Lender this Commitment Letter ~~and the Fee Letter~~, the ~~Lenders agree~~<u>Lender agrees</u> to hold the Interim Order Commitment Amount available for you until the earlier of (i) a material breach by the Obligors under this Commitment Letter or (ii) ~~June 30,~~<u>July 1,</u> 2011 (the "Closing Date"), and in no event shall the Interim Order Commitment Amount be available after such date for any reason whatsoever without the consent of the Lender unless the Interim Order (as defined in Exhibit A), on terms and conditions satisfactory to the Lender, shall have been entered on or before such date. Notwithstanding the foregoing, until such time as duly executed DIP Loan Documents are entered into, the Obligors shall be fully and unconditionally bound by their obligations contained in this Commitment Letter~~, the Fee Letter~~ and terms and conditions set forth in the Term Sheet.

4. Confidentiality

This Commitment ~~Letter and the Fee~~ Letter and the terms and conditions contained herein may not be disclosed by the Obligors to any person or entity and such of your and their agents and advisors as need to know and agree to be bound by the provisions of this paragraph or as required by applicable law or compulsory legal process (in which case you agree to inform us promptly thereof)) without the prior written consent of the Lender, provided, however, that the Borrower shall be permitted to file the Commitment ~~Letter and the Fee~~ Letter with the Bankruptcy Court in the Case~~, if directed by the Bankruptcy Court and provided that the Borrower shall request that the Bankruptcy Court accept the filing of the Commitment Letter or the Fee Letter under seal~~.

5. Survival

The provisions of this Commitment Letter relating to the payment of fees and expenses, indemnification and confidentiality and the provisions of Sections 2 and 4 hereof will survive the expiration or termination of the Commitments or this Commitment Letter (including any extensions) and the execution and delivery of the DIP Loan Documents.

6. Choice of Law; Jurisdiction; Waivers

This Commitment Letter will be governed by and construed in accordance with the laws of the State of New York without regards to principles of conflicts of law to the extent that the application of the laws of another jurisdiction will be required thereby. The Obligors<u>, and the</u>

3

Lender, ~~DIP Lenders, and DIP Administrative Agent~~ hereby irrevocably submit to the exclusive jurisdiction to the Bankruptcy Court in respect of any suit, action or proceeding arising out of or relating to the provisions of this Commitment ~~Letter or the Fee~~ Letter and irrevocably agree that all claims in respect of any such suit, action or proceeding may be heard and determined in any such court. The Obligors, and the Lender, ~~DIP Lenders, and DIP Administrative Agent~~ hereby waive any objection that they may now or hereafter have to the laying of venue of any such suit, action or proceeding brought in any such court, and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum **The parties hereto hereby waive, to the fullest extent permitted by applicable law, any right to trial by jury with respect to any action or proceeding arising out of or relating to this Commitment Letter** ~~or the Fee Letter~~.

7. Patriot Act

In order to comply with the USA PATRIOT Act, the ~~DIP Lenders~~Lender must obtain, verify and record information that sufficiently identifies each entity (or individual) that enters into a business relationship with the ~~DIP Lenders~~Lender. As a result, in addition to your corporate name and address, the ~~DIP Lenders~~Lender will obtain your corporate tax identification number and certain other information. The ~~DIP Lenders~~Lender may also request relevant corporate resolutions and other identifying documents.

8. Miscellaneous

a. ~~By executing this Commitment Letter, Borrower hereby represents and warrants to Lender that it has authority commence the Case without the need for any third party consents or approvals.~~

a. ~~b.~~ This Commitment Letter may be executed in one or more counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Delivery of an executed signature page of this Commitment Letter by facsimile transmission will be effective as delivery of a manually executed counterpart hereof. This Commitment Letter may not be amended or waived except by an instrument in writing signed by the Lender and you.

b. ~~c.~~ This Commitment Letter, including the attached ~~Exhibits and Schedules, and the Fee Letter~~Term Sheet set forth the entire understanding of the parties hereto as to the scope of the Commitments and the obligations of the Lender ~~and the DIP Lenders~~ hereunder. This Commitment Letter supersedes all prior understandings and proposals, whether written or oral, between ~~any of~~ the ~~DIP Lenders~~Lender and you relating to any financing or the transactions contemplated hereby. ~~This Commitment Letter is in addition to the agreements of the parties contained in the Fee Letter.~~

c. ~~d.~~ This Commitment Letter has been and is made solely for the benefit of the parties signatory hereto, the Indemnified Persons, and their respective heirs, successors and assigns, and nothing in this Commitment Letter, expressed or implied, is intended to confer or does confer on any other person or entity any rights or remedies under or by reason of this Commitment Letter or the agreements of the parties contained herein.

Should the terms and conditions of the proposal contained herein meet with your approval, please indicate your acceptance by signing and returning a copy of this Commitment Letter.

Very truly yours,

~~Highbridge Principal Strategies, LLC~~<u>Baseball Finance LLC</u>

By:_____
Name: ~~Michael Patterson~~
Title: ~~Managing Director~~

**Agreed and Accepted on this
____ day of ~~June~~_____, 2011:**

[Borrower]

By: _____
    Name:
    Title:

6

# LA HOLDCO LLC
# AND ITS SUBSIDIARIES
# TERM SHEET FOR PROPOSED DEBTOR IN POSSESSION FINANCING[1]

| | |
|---|---|
| BORROWER: | Los Angeles Dodgers LLC (the "Borrower"), a Delaware corporation, as debtor and debtor in possession in a case (the "Case") to be filed under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The date on which the Case ~~commences~~commenced is referred to herein as the "Petition Date". |
| GUARANTORS: | LA Holdco LLC, Los Angeles Dodgers Holding Company LLC, LA Real Estate Holding Company LLC and LA Real Estate LLC (together with the Borrower, each a "Company" and together, the "Companies"). (All Guarantors to commence Cases.) To the extent that any other direct or indirect subsidiary of LA Holdco LLC commences a Case, such entity shall become a Guarantor hereunder. |
| ~~COLLATERAL AGENT:~~ | ~~An entity to be determined by the Lenders in their sole and absolute discretion (the "Collateral Agent").~~ |
| ~~ADMINISTRATIVE AGENT:~~ | ~~An entity to be determined by the Lenders in their sole and absolute discretion (the "Administrative Agent" and collectively with the Collateral Agent, the "Agent").~~ |
| ~~LENDERS~~LENDER: | ~~HPS Senior Loan Fund II, L.P., Highbridge Senior Loan Holdings, L.P. and/or other affiliated entities in the Highbridge Senior Loan Fund II family of funds (the "Lenders~~Baseball Finance LLC (the "Lender"). |
| PROPOSED FINANCING FACILITY: | A senior ~~secured delayed~~multiple-draw term loan credit facility (the "Proposed Financing Facility") in an amount sufficient to be consistent with the Use of Proceeds (as discussed below) and not to exceed $150 million. Under the Proposed Financing Facility, the ~~Lenders~~Lender would provide a ~~delayed~~multiple-draw term loan (the "DIP Loan Commitment"), with not more than $60 million of the Proposed Financing Facility (the "Initial Availability") available to the Borrower following the entry of the order (in form and substance satisfactory to the ~~Lenders~~Lender in ~~their~~its sole and absolute discretion) approving the Proposed Financing Facility on an interim basis (the "Interim Order"), subject to the terms and conditions of the Interim Order and a note to be executed by the Borrower in favor of the Lender. The remaining |

---

[1] The terms and conditions set forth in this Term Sheet for Proposed Debtor in Possession Financing (the "Term Sheet") are to be used solely as a basis for continued discussions and do not constitute a commitment to provide a financing commitment of any sort or to prepare, negotiate, execute or deliver such a commitment. All figures, terms, and conditions are subject to change or withdrawal at any time. This Term Sheet is confidential and may not be disseminated to any person or entity other than the Borrower and Borrower's agents without the express prior written consent of the ~~Lenders~~Lender.

|  | portion of the Proposed Financing Facility will be available to the Borrower from time to time prior to the Maturity Date following the entry of the order (in form and substance satisfactory to the ~~Lenders~~Lender in ~~their~~its sole and absolute discretion) approving the Proposed Financing Facility on a final basis (the "Final Order"), subject to the terms and conditions ~~of~~ of the definitive financing documents (the "Loan Documents"). For the avoidance of doubt, it is contemplated that the Initial Availability will be made available to Borrower subject to the terms of the Interim Order, with the remaining balance being made available only upon execution of the Loan Documents, which shall be satisfactory to ~~the Agent and~~ the Lender in ~~their~~its sole and absolute discretion, and entry of the Final Order. |
|---|---|
| TERM: | All loans are to be repaid in full at the earliest of (i) one (1) year following the Petition Date, (ii) the effective date of a chapter 11 plan (a "Plan") in the Cases which is confirmed by an order of the Bankruptcy Court, (iii) the closing date of a sale of all or any part of the assets of the Companies under section 363 of the Bankruptcy Code (a "363 Sale") and (iv) the termination by the Agent upon an Event of Default (any such date, the "Maturity Date"). Unless otherwise agreed to by the ~~Lenders and the Agent~~Lender, any confirmation order entered in the Cases must provide for the repayment in full of the Proposed Financing Facility on or before the effective date of the Plan and shall not discharge or otherwise affect in any way the joint and several obligations of the Companies to the ~~Lenders~~Lender under the Proposed Financing Facility. |
| MANDATORY AND OPTIONAL PREPAYMENTS: | Customary mandatory prepayments (with a corresponding permanent reduction in the DIP Loan Commitments) to be included in the Loan Documents (including sale of assets, casualty events and tax refunds). Prepayment in whole or in part of the Proposed Financing Facility prior to the Maturity Date would not result in a prepayment fee ~~(other than, in the case of a full prepayment, the Deferred Commitment Fee (as defined below))~~. There shall be no re-borrowing of amounts repaid under the DIP Loan Commitment. |
| CLOSING DATE: | The first date on which (i) all Loan Documents satisfactory to the ~~Lenders~~Lender are executed by the Companies party thereto, ~~the Agent~~ and the ~~Lenders~~Lender and (ii) the Interim Order shall have been entered on the Bankruptcy Court's docket and shall not be subject to a stay (the "Closing Date"). Borrowings under the Proposed Financing Facility are subject to the entry of the Interim Order or the Final Order, as the case may be, which order shall not be subject to any stay. |
| ~~COLLATERAL~~PRIORITY: | All obligations of the Companies under the Proposed Financing Facility to the ~~Lenders~~Lender shall be: ~~(X)~~ entitled to super-priority administrative expense claim status pursuant to 11 U.S.C. § 364(c)(1) in each of the Cases, subject only to (A) (i) allowed unpaid professional fees and disbursements incurred by the Companies and any official committees appointed in the Cases and provided for in the Budget through the date of the acceleration of amounts outstanding under the Proposed Financing Facility (such event, a "Triggering Event"); (ii) the payment of fees required to be paid to the clerk of the Bankruptcy Court and to the office of the U.S. Trustee pursuant to 28 U.S.C. § 1930; and (iii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not exceeding $25,000 ((i) through (iii) collectively, the "Carve-Out Expenses") and (B) without reducing the Carve-Out Expenses, after the occurrence of a Triggering Event, to the extent allowed at any time, all professional fees and disbursements incurred by the Companies and any official committees appointed in the Cases in an aggregate amount not to exceed $50,000~~; and (Y) secured pursuant to 11~~ |

2

|  |  |
|---|---|
|  | ~~U.S.C. §§ 364(c)(2) and (c)(3) and 364(d) by a first and senior priority lien on all of the Companies' assets of any kind, including, without limitation, personal property, leases and real property of the Companies, wherever located, and whether now or hereafter existing, and whether now owned or hereafter acquired, of every kind and description, tangible or intangible, including any and all cash or non-cash proceeds of any of the foregoing and, subject to entry of the Final Order, claims of the Companies or their estates under Bankruptcy Code sections 542, 544, 545, 547, 548, 550, 551, 553(b) or 724(a), (the "Collateral") and a junior lien on any Collateral that is subject to a lien, to the extent that such a lien is valid, perfected, and unavoidable.~~ |
|  | ~~Subject to entry of the Final Order, the Collateral shall not be subject to assessment pursuant to section 506(c) of the Bankruptcy Code.~~ |
|  | ~~The security interests in and liens on the Collateral shall be (i) first priority, not subject to subordination, but subject to (a) the Carve-Out Expenses and (b) valid, perfected and unavoidable preexisting liens on the Collateral and (ii) perfected pursuant to orders of the Bankruptcy Court without need for further recordings or filings in connection with the creation, perfection or enforcement of such security interests and liens, provided that the Companies shall make or authorize any such recordings or filings requested by the Agent in its reasonable discretion. No liens will be released until all amounts due under the Proposed Financing Facility are indefeasibly paid in full.~~50,000. |
| INTEREST ~~RATES~~RATE: | All obligations of the Companies under the Proposed Financing Facility shall bear interest at the LIBOR Rate payable monthly in arrears. The LIBOR Rate shall be equal to LIBOR plus ~~seven~~five and one-half percent (~~7~~5.5%) per annum; provided that at no time shall LIBOR be less than ~~three~~one and one-half percent (~~3~~1.5%) per annum. All interest and fees shall be computed on the basis of a year of 360 days for the actual days elapsed. |
|  | The default interest rate shall be the interest rate then in effect plus two percent (2%) per annum. |
| AMORTIZATION: | None. |
| FEES~~:~~ | ~~Delayed Draw Fee: One-half percent (0.50%) of the unused portion of the DIP Loan Commitment, payable monthly in arrears.~~ |
|  | ~~Deferred Commitment Fee: $4,500,000, which shall be fully earned and non-refundable as of the Closing Date, and paid on the earlier of (i) payment in full of the Proposed Financing Facility and (ii) the Maturity Date.~~ |
| USE OF PROCEEDS: | To (i) pay fees and expenses related to this transaction and the Cases, and (ii) fund working capital and general corporate purposes in the ordinary course of business of the Companies as set forth in a thirteen-week rolling cash flow forecast satisfactory to the ~~Agent and the Lenders~~Lender in ~~their~~its sole and absolute discretion (the "Budget") (and out of the ordinary course as approved by the ~~Lenders~~Lender and the Bankruptcy Court to the extent set forth in the approved Budget). |
|  | The Borrower shall submit an updated Budget to the ~~Agent and the Lenders~~Lender on a weekly basis, each of which shall be satisfactory to the ~~Agent and the Lenders~~Lender in ~~their~~its sole and absolute discretion. |
| CONDITIONS PRECEDENT TO CLOSING DATE: | The obligation of ~~Lenders~~Lender to make the initial Loans or extensions of credit in connection with the Proposed Financing Facility will be subject to customary conditions precedent, including, without limitation, the following |

conditions precedent:

(a) the ~~Lenders~~Lender shall have received such agreements, instruments, approvals, opinions and other documents, each satisfactory to the ~~Lenders~~Lender in form and substance, as the ~~Lenders~~Lender may request;

(b) entry of the Interim Order by the Bankruptcy Court, satisfactory in form and substance to the ~~Lenders~~Lender in ~~their~~its sole and absolute discretion, no later than ~~three~~four (~~3~~4) Business Days after the Cases are filed, which Interim Order shall not have been reversed, modified, amended, stayed or vacated;

(c) opinions from the Companies' counsel as to such matters as the ~~Agent~~Lender and its counsel may reasonably request;

(d) the Companies shall have paid to the ~~Lenders~~Lender all fees and expenses then owing to the ~~Lenders~~Lender on or before the Closing Date;

(e) all filings and pleadings to be filed by the Companies on the first day of the Cases shall be in form and substance satisfactory to the ~~Agent and the Lenders~~Lender in ~~their~~its sole and absolute discretion;

(f) the ~~Lenders~~Lender shall have received such financial and other information regarding the Companies as the ~~Lenders~~Lender may request; and

(g) the ~~Agent~~Lender shall have approved the initial Budget in its sole and absolute discretion.

| | |
|---|---|
| CONDITIONS PRECEDENT TO ALL BORROWINGS: | The obligation of ~~Lenders~~Lender to make any Loans beyond the Initial Availability will be subject to the following conditions precedent: |

(a) the Loan Documents, in form and substance satisfactory to the ~~Agent and the Lenders~~Lender in ~~their~~its sole and absolute discretion, shall have been executed;

(b) the representations and warranties contained in the Loan Documents shall be true and correct in all material respects as of the applicable borrowing date;

(c) no default or event of default shall have occurred and be continuing on the applicable borrowing date; and

(d) with respect to any borrowing that is more than twenty (20) days following the Closing Date, entry by the Bankruptcy Court of the Final Order, which Final Order shall not have been reversed, modified, amended, stayed or vacated.

| | |
|---|---|
| REPRESENTATIONS AND WARRANTIES: | Usual representations and warranties, including, but not limited to, corporate existence and good standing, authority to enter into and enforceability of loan documentation, validity of Interim Order and/or Final Order, governmental approvals, non-violation of other material agreements other than as a result of the commencement of the Cases as well as defaults under the MLB Constitution, financial statements, litigation, compliance with environmental, pension and other laws, taxes, insurance, absence of Material Adverse Change, absence of default or unmatured default under the Proposed Financing Facility and priority of the ~~Lenders' liens~~Lender's claims. |
| COVENANTS: | Usual covenants, including, but not limited to, compliance with reporting requirements, provision of financial statements, notices of litigation, defaults and unmatured defaults and other information, compliance with pension, environmental and other laws, inspection of properties, books and records, maintenance of insurance, limitations with respect to liens and encumbrances, dividends and retirement of capital stock, guarantees, sale and leaseback |

4

transactions, sales of assets, consolidations and mergers, investments, capital expenditures, loans and advances, indebtedness, operating leases, transactions with affiliates, prepayment of other indebtedness and amendments to material agreements, prohibition on payment of any material prepetition claim, other than as allowed by any first day order of the Bankruptcy Court (provided that such order is in form and substance satisfactory to the ~~Agent and the Lenders~~Lender in ~~their~~its sole and absolute discretion), without the approval of the ~~Lenders~~Lender in ~~their~~its sole and absolute discretion.

Prior to entry of the Final Order, actual expenditures made by the Borrower may not exceed the amounts set forth in the Budget. Upon and following entry of the Final Order, actual expenditures made by the Borrower may not exceed the amounts set forth in the Budget by more than (a) ten percent (10%) for any line item and (b) five percent (5%) in the aggregate. Unused amounts set forth in the Budget for any line item may be carried forward and used to fund such line item in the subsequent four one-week Budget periods. Actual revenues received by the Borrowers may not be less than ninety percent (90%) of the amounts set forth in the Budget.

The Companies shall not seek to reject or terminate, or permit the rejection or termination of, any material license agreement, material real property lease or material contract without the consent of the ~~Lenders~~Lender.

The ~~Agent's financial advisor~~Lender and its advisors shall have reasonable access to the Companies' officers.

Financial reporting to include: (i) annual, audited financial statements, (ii) quarterly, internally prepared financial statements, (iii) monthly, internally prepared, financial statements, (iv) annual projections, including monthly balance sheet, profit and loss and cash flow figures, (v) weekly Budgets including a comparison of actual performance to projections for the prior week and the prior cumulative four-week period delivered no later than 5:00 p.m. (Eastern time) on Wednesday of each week, (vi) a weekly compliance certificate for the revenue and expenditure covenants, (vii) an updated Budget by the 10th day of each month that is acceptable to the ~~Agent and the Lenders~~Lender in ~~their~~its sole and absolute discretion ~~in its reasonable discretion~~, and (viii) other reporting as reasonably required by the ~~Lenders~~Lender.

| | |
|---|---|
| EVENTS OF DEFAULT: | Usual events of default, including, but not limited to, payment, cross-default, violation of covenants, breach of representations or warranties, judgment, ERISA, environmental, change of control, loss of material permits, licenses and regulatory approvals and other events of default which are customary in facilities of this nature. |

In addition, an event of default shall occur if: (i)(A) the Interim Order shall not have been entered within three (3) Business Days after the Cases are filed; ~~(B) any of the Cases shall be dismissed or converted to a chapter 7 case; a chapter 11 trustee or an examiner with enlarged powers shall be appointed; any other superpriority administrative expense;~~ any other claim which is senior to or *pari passu* with the ~~Lenders' liens~~Lender's superpriority administrative claim or any lien on any assets or property of the Debtors shall be granted without the ~~Agent's and Lenders'~~Lender's consent in ~~their~~its sole and absolute discretion; the Interim Order or the Final Order, as the case may be, shall be stayed, amended, modified, reversed or vacated; (~~C~~B) the Final Order shall not have been entered within twenty (20) days after the Closing Date; or a Plan shall be confirmed in any of the Cases which does not provide for termination of the commitment under the Proposed Financing Facility and payment in full in cash

5

|  | of the Companies' obligations thereunder on the effective date of the Plan; or an order shall be entered which dismisses any of the Cases and which order does not provide for termination of the Proposed Financing Facility and payment in full in cash of all obligations thereunder; or (D(C) the Companies shall take any action, including the filing of an application, in support of any of the foregoing, or any person other than the Companies shall do so and such application is not contested in good faith by the Companies, (ii) the Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder of any security interest in any material asset of the Companies, (iii) the Companies fail to meet any of the Milestones (defined below), (iv) any material contract is rejected or otherwise terminated or any material property of the Companies is sold, in each instance, without the consent of the Lenders, (v) termination of the Companies' rights, privileges and other property rights under the Major League Baseball Constitution or any other baseball-related agreement, or (viLender, or (iv) other events of default to be set forth in the Loan Documents. |
|---|---|
| MILESTONES: | The Companies shall conduct a process to license Borrower's broadcast media rights (the "Media Rights"). The Companies shall provide a weekly telephonic update on their sale process to the Agent and shall provide such other updates on the sale process as the Agent may request. The sale process is intended to be fully transparent to the Agent and the Lenders, with the Agent to have full and complete access to the Companies and their representatives on all non-privileged matters pertaining to the sale process. |
|  | As a condition to further funding, the Companies, the Agent and the Lenders shall, on or prior to July 29, 2011, reach agreement with respect to a process and timing for the license of the Media Rights (the "Milestones"), which Milestones shall require, among other things: |
|  | (a) entry of a final order of the Bankruptcy Court, satisfactory to the Agent and the Lenders in their sole and absolute discretion, approving the transaction (the "Media Rights Order") shall occur no later than 180 days after the Petition Date; and |
|  | (b) the transaction shall close no later than 45 days after entry of the Media Rights Order. |
| REMEDIES: | Upon the occurrence and during the continuance of an Event of Default, the LendersLender may, in theirits sole and absolute discretion, suspend or terminate the DIP Loan Commitment. Following three (3) days' notice of such Event of Default to the Borrower, the official committee of unsecured creditors, and the U.S. Trustee, unless such Event of Default is cured within such time or an order of the Bankruptcy Court is entered to the contrary, the AgentLender shall have relief from the automatic stay to exercise remedies under the Proposed Financing Agreement. |
| CERTAIN MISCELLANEOUS PROVISIONS: | Customary for facilities of this type, including, without limitation, taxes, indemnity and expenses, funding protections to be set forth in the Loan Documents. |
| CERTAIN PROVISIONS OF THE INTERIM ORDER AND FINAL ORDER: | The Interim Order and Final Order shall be in form and substance satisfactory to the LendersLender in theirits sole and absolute discretion and contain provisions prohibiting the Companies from incurring any indebtedness that (x) ranks *pari passu* with or senior to the Proposed Financing Facility or (y) benefits from a first or second priorityany lien under section 364 of the Bankruptcy Code. |

| | |
|---|---|
| GOVERNING LAW: | All documentation in connection with the Proposed Financing Facility shall be governed by the laws of the State of New York applicable to agreements made and performed in such State except as governed by the Bankruptcy Code. |
| ASSIGNMENTS, PARTICIPATIONS, ETC.: | The ~~Lenders~~Lender shall be permitted to sell or assign their rights and obligations hereunder, or any part thereof, to any person or entity without the consent of the Companies~~, provided, however, that the Lenders shall not assign their rights or obligations hereunder to another Major League Baseball Club or Major League Baseball, or any affiliate of either of the foregoing. The Lenders~~. The Lender shall be permitted to grant participations in such rights and obligations, or any part thereof, to any person or entity without the consent of the Companies~~, provided, however, that the Lenders shall not grant participations in such rights and obligations to another Major League Baseball Club or Major League Baseball, or any affiliate of either of the foregoing~~. |
| OUT-OF-POCKET EXPENSES: | All fees, including legal and other professional fees (including any financial advisor to be retained by the Agent), and all reasonable out-of-pocket expenses of each of the Lender and MLB associated with the transaction, the Debtors or the Case are to be paid by the Companies without the need for the filing of any applications with the Bankruptcy Court. |
| | All borrowings by the Borrower, all costs, fees and expenses of the ~~Agent and the Lenders~~Lender (including the fees and expenses of the ~~Agent~~Lender's ~~and the Lenders'~~ professionals), and all other obligations owed to the ~~Lenders~~Lender shall be charged to the loan account to be established under the Proposed Financing Facility, unless such costs, fees, expenses and other obligations have been paid by the Companies on a current basis. |

# EXHIBIT A

Interim Order