# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LOS ANGELES DODGERS LLC, *et al.*,[1] | Case No. 11-12010 (_____) |
| Debtors. | Joint Administration Requested |
| | Ref. Docket No.: \_\_\_\_\_ |

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 362, AND 364, AND (II) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon consideration of the motion (the "Motion")[2], dated June 27, 2011 of Los Angeles

Dodgers LLC ("LAD"), and the other above-captioned debtors and debtors-in-possession

(collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") for entry of

an interim order (the "Interim Order") and a final order (the "Final Order") pursuant to sections

105, 362, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the

"Bankruptcy Code"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and the Local Rules for the Bankruptcy Court for the

District of Delaware, seeking, among other things:

---

[1]  The Debtors, together with the last four digits of each Debtor's federal tax identification number are: Los Angeles Dodgers LLC (3133); Los Angeles Dodgers Holding Company LLC (4851); LA Holdco LLC (2567); LA Real Estate Holding Company LLC (4850); and LA Real Estate LLC (3029). The location of the Debtors' corporate headquarters and the service address for the Debtors is: 1000 Elysian Park Avenue, Los Angeles, California 90012.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the DIP Term Sheet as applicable

(i)     The Court's authorization for the Borrower (as defined below) to obtain postpetition financing (the "Financing") consisting of a superpriority delayed draw term loan facility in an aggregate principal amount of up to $150,000,000 (the "DIP Facility") with an initial draw of $60 million upon entry of the Interim Order and the remaining $90 million available from time to time following entry of the Final Order in additional drawings, each in a principal amount not less than $10 million, and other financial accommodations, allocated as follows:

> DIP Facility. A superpriority delayed draw term loan facility in the principal amount of $150,000,000 (the "DIP Commitments" and the term loans made thereunder, the "DIP Term Loans") to be secured by liens on all of the property, assets or interests in property or assets of each Debtor, each Debtor's "estate" (as defined in the Bankruptcy Code), in each case of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each subsidiary of such Debtor, money, investment property, deposit accounts, all commercial tort claims and other causes of action (including any and all actions arising under sections 542, 544, 545, 547, 548, 550, 551, 553(b) and 724(a) of the Bankruptcy Code (collectively, "Avoidance Actions")), all cash and cash

equivalents of the Debtors and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above (collectively, with respect to all such entities, the "Collateral") and entered into between, on the one hand, LAD (the "Borrower"), as debtor and debtor-in-possession under the Bankruptcy Code, and, on the other hand, [_____], as administrative agent and collateral agent (the "DIP Agent") and certain financial institutions that are party to the DIP Term Sheet and DIP Loan Agreement (as defined below) from time to time with respect to the DIP Facility (each a "DIP Lender," and together with the DIP Agent, the "DIP Parties") with all obligations under the DIP Documents (as defined below) to be guaranteed (the "Guarantee"), with respect to obligations of the Borrower, unconditionally and jointly and severally by each of the Debtors other than Borrower (together, the "Guarantors"), with such Guarantees to be secured by liens on all Collateral.[3]

     (ii)     The Court's authorization for the Debtors to execute and deliver a promissory note from Borrower in favor of the DIP Lenderslenders (the "Note"), the Guarantees and, upon entry of the Final Order additional final documentation consistent with the terms of (or as may be required by) the DIP Term Sheet, including a final loan agreement (as the same may be amended or modified, the "DIP Loan Agreement") and all additional documentation (the "DIP Loan Documents" and together with the DIP Loan Agreement, the DIP Term Sheet, the Note and the Guaranties, the "DIP Documents"), and to perform such other and further acts as may be required in connection with the DIP Documents;

---

[3]    A term sheet setting forth the material terms of the DIP Facility is attached as Exhibit A hereto (the "DIP Term Sheet").

(iii)　The Court's authorization for the use of proceeds of the Financing extended to the Borrower as expressly provided in the DIP Documents and in accordance with the Budget (A) to pay costs, fees and expenses of ~~the DIP Parties~~those lenders as provided for in the Interim Order and the DIP Documents, as well as all scheduled payments of interest and principal thereunder, (B) to provide working capital and for other general corporate purposes of the Debtors, and (C) to pay administration costs of these Chapter 11 Cases and claims or amounts approved by this Court, *provided that* payments of (A) above shall be made from the proceeds of the DIP Facility whether or not included in the then-applicable Budget;

(iv)　The Court granting in favor of the ~~DIP Lenders and any other parties~~lenders referred to in the DIP Documents ~~(collectively, the "DIP Secured Parties")~~ with respect to the respective DIP Obligations (as defined below), in accordance with the relative priorities as set forth more fully below, and subject to, after the Carve-Out Effective Date (as defined below), the Carve-Out (as defined below):

> (a) pursuant to Bankruptcy Code section $364(c)(1)$, joint and several superpriority administrative expense claim status in the Chapter 11 Cases, which claims in respect of the DIP Facility shall be superior to any and all other claims;

> (b) pursuant to Bankruptcy Code section $364(c)(2)$, a first priority lien on all unencumbered assets of the Debtors and their estates (now or hereafter acquired and all proceeds thereof); and

> (c) pursuant to Bankruptcy Code section $364(c)(3)$, a junior lien on all assets of the Debtors and their estates that, as of the Filing Date, is subject to valid, perfected, and non-avoidable liens in favor of third parties (now or hereafter acquired and all proceeds thereof), except as otherwise set forth herein.

(v)     The Court to vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order;

(vi)    The Court to waive any applicable stay (including under Bankruptcy Rule 6004) and provide for immediate effectiveness of this Interim Order;

(vii)   Pursuant to Bankruptcy Rule 4001, the Court order that an interim hearing on the Motion be held before this Court to consider entry of this Interim Order, authorizing that during the period commencing on the date (the "Interim Order Entry Date") of this Court's entry of this Interim Order and ending on the earlier of (a) the date this Court enters the Final Order and (b) the occurrence of the DIP Loan Maturity Date (as defined in the DIP Documents) (such period, the "Interim Period"), a portion of the DIP Commitments shall be borrowed by the Borrower (the "Initial Availability"), subject to (i) delivery by the Debtors of the Budget, and (ii) compliance with the terms, conditions and covenants contained in the DIP Term Sheet and this Interim Order, in an amount equal to the lesser of $60,000,000 or such other amount as may be approved by order of this Court, to be made available during the Interim Period in accordance with the Budget; and

(viii)  The Court to schedule a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis and authorizing the balance of the borrowings under the Financing on a final basis, as set forth in the Motion filed with this Court.

And, on June 28, 2011, the Office of the Commissioner of Baseball, doing business as Major League Baseball ("BOC") filed an objection (the "MLB Objection") to the Motion and

proposed that its affiliate, Baseball Finance LLC (the "DIP Lender"), provide the DIP Facility as modified pursuant to this Interim Order and the DIP Documents.

The interim hearing on the Motion having been held on June [ ], 2011 (the "Interim Hearing"); and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing and the entire record herein; and the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and the Debtors having provided notice of the Motion as set forth in the Motion and it appearing that no further or other notice of the Motion need be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    Filing Date.  On June 27, 2011 (the "Filing Date"), the Debtors commenced their Chapter 11 Cases by filing voluntary petitions for relief under the Bankruptcy Code.  The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of these Chapter 11 Cases.

B.    Jurisdiction; Venue.  The Court has jurisdiction over these cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  Venue of the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are

---

[4]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

sections 105, 362, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Bankruptcy Rules.

C.     Committee Formation. No official committee of unsecured creditors has yet been appointed in any of these Chapter 11 Cases.

D.     Stipulations. In requesting the ~~Financing~~financing under the DIP Documents, the Debtors permanently, immediately, and irrevocably acknowledge, represent, stipulate, and agree that:

> (i)     in entering into the DIP Facility, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments are terminated in accordance with the terms of the this Interim Order or the DIP Documents, as applicable, the Debtors will not (except as expressly permitted by this Interim Order or the DIP Documents) in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the ~~liens, security interests, or~~ claims provided under the DIP Documents or this Interim Order to the DIP ~~Parties~~Lender by offering a subsequent lender or any party-in-interest a superior *or pari passu* lien or claim pursuant to section 364 of the Bankruptcy Code, or otherwise, without the consent of the DIP ~~Parties~~Lender in ~~their~~its sole and absolute discretion;

> (ii)     the DIP ~~Parties are~~Lender is not ~~a~~ control ~~persons~~person or ~~insiders~~insider of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Documents or this Interim Order;

(iii)    as of the date hereof, there exist no claims or causes of action against any of the DIP ~~Parties~~Lender with respect to, in connection with, related to, or arising from the ~~Financing~~DIP Facility that may be asserted by the Debtors or any other person or entity;

(iv)    as of the date hereof, there were no ~~other~~ liens on or security interests in the Collateral except for certain existing liens that, to the extent such liens are determined to be valid, perfected, binding, and enforceable, are permitted hereunder; and

(v)    the Debtors forever and irrevocably release, discharge, and acquit the ~~former, current, or future DIP Parties~~DIP Lender, and ~~each of their~~ ~~respective~~its former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in their capacities as such (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to ~~the Financing,~~ the DIP Documents, this Interim Order, or the

transactions contemplated hereunder or thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under title 11 of the United States Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP ~~Parties~~Lender.

E.    Purpose and Necessity of Financing. The Debtors require ~~me~~the financing described in the Motion and as expressly provided in the DIP Documents and this Interim Order (i) to pay costs, fees and expenses of the DIP ~~Parties~~Lender, as provided for in the DIP Documents and this Interim Order, as well as all scheduled payments of interest and principal thereunder, (ii) to provide working capital and for other general corporate purposes of the Debtors, and (iii) to pay administration costs of these Chapter 11 Cases and claims or amounts approved by this Court, *provided that* payments of (i) above shall be made from the proceeds of the DIP Facility whether or not they are included in the then-applicable Budget. If the Debtors do not obtain authorization to borrow under the DIP Documents and this Interim Order and the DIP Loans are not approved, the Debtors will suffer immediate and irreparable harm. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Documents and this Interim Order. A loan facility in the amount provided by the DIP Documents and this Interim Order is not available to the Debtors without granting the DIP ~~Parties~~Lender superpriority claims~~, liens, and security interests,~~ pursuant to ~~sections~~section 364(c)(1)~~, (2), (3)~~ of the Bankruptcy Code, as provided in this Interim Order. After considering all alternatives, the

Debtors have concluded, in the exercise of their prudent business judgment, that the loan facility

provided under the DIP Documents and this Interim Order represents the best and only working

capital financing available to them at this time. The DIP Facility is the only loan available to the

Debtors and the Debtors have been unsuccessful in their attempts to find any alternative

financing. Additionally, the terms of the ~~Financing~~DIP Facility are fair and reasonable and

reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

   F.  Good Cause. The ability of the Debtors to obtain sufficient working

capital and liquidity under the DIP Documents and this Interim Order, is vital to the Debtors,

their estates and creditors and stakeholders. The liquidity to be provided under the DIP

Documents and this Interim Order will enable the Debtors to continue to operate their

businesses in the ordinary course and preserve the value of their businesses. The Debtors'

estates will be immediately and irreparably harmed if this Interim Order is not entered. Good

cause has, therefore, been shown for the relief sought in the Motion.

   G.  Good Faith. The ~~Financing, the~~ DIP Documents and this Interim Order

have been negotiated in good faith and at arm's length ~~among~~between the Debtors and the DIP

~~Parties~~Lender, and all of the obligations and indebtedness arising under, in respect of or in

connection with ~~the Financing,~~ the DIP Documents and this Interim Order, including without

limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP

Documents and this Interim Order, and any other obligations under the DIP Documents and this

Interim Order, including, without limitation, credit extended in respect of overdrafts and related

liabilities and other depositary, treasury, hedging, swap, and cash management services and other

clearing services provided by ~~any~~the DIP Lender~~, DIP Agent~~ or ~~their respective~~its affiliates (all

of the foregoing collectively, the "DIP Obligations"), shall be deemed to have been extended by

the DIP ~~Lenders~~Lender and ~~their~~its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, ~~the Postpetition Liens (as defined below),~~ and the Superpriority Claims (as defined below), shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits, and privileges of this Interim Order regardless of whether this Interim Order is subsequently reversed, vacated, modified, or otherwise is no longer in full force and effect or the Chapter 11 Cases are subsequently converted or dismissed.

        H.    <u>Consideration</u>. All of the Debtors will receive and have received fair consideration and reasonably equivalent value in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Documents and this Interim Order.

        I.    <u>Immediate Entry of Interim Order</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) ~~and (c)(2)~~. The permission granted herein to enter into the DIP Facility and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates, creditors and stakeholders as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.    Disposition.  The Motion is granted on an interim basis and on the terms set forth herein.  Any objections to the Motion with respect to the entry of this Interim Order that have not previously been withdrawn, waived, settled, or resolved and all reservations of rights included therein are hereby denied and overruled on their merits with prejudice.

2.    Effectiveness.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Filing Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

3.    Authorization of the Financing.

(a)    The Debtors are hereby authorized to enter into the DIP Facility and the DIP Documents, including the DIP Term Sheet, the terms of which are incorporated herein by reference.  Prior to entry of the Final Order, the DIP Documents (other than the DIP Credit Agreement) and this Interim Order shall govern the financial and credit accommodations to be provided to the Debtors by the DIP ~~Parties~~Lender in respect of the Initial Availability.  Following entry of the Final Order, the financial and credit accommodations to be provided to the Debtors by the DIP ~~Parties~~Lender in respect of the ~~Financing~~DIP Facility (including amounts borrowed under the Initial Availability) shall be governed by the DIP Documents and the Final Order.

(b)    The Borrower is hereby authorized to borrow money pursuant to the DIP Documents and this Interim Order, and the Borrower and the Guarantors are hereby authorized to unconditionally guaranty (on a joint and several basis) such borrowings and the Borrowers'

other obligations under the DIP Documents and this Interim Order, up to an aggregate principal amount of $150,000,000, (provided, however that during the Interim Period no more than $60,000,000 may be borrowed by the Borrower), plus interest, costs, fees and other expenses and amounts provided for in the DIP Documents and this Interim Order, in accordance with the terms of the DIP Documents and this Interim Order, which shall be used solely as expressly provided in the DIP Documents, this Interim Order and the Budget (i) to pay costs, fees and expenses of the DIP PartiesLender, as provided for in the DIP Documents and this Interim Order, as well as the scheduled payments of principal and interest thereunder, (ii) to provide working capital and for other general corporate purposes of the Debtors, and (iii) to pay administration costs of these Chapter 11 Cases and claims or amounts approved by this Court; provided that payments of (i) above shall be made from the proceeds of the DIP Facility whether or not such amounts are included in the then-applicable Budget.

(c)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be required or necessary for the Debtors' performance of their obligations under the FinancingDIP Facility, including, without limitation:

(i)     the execution, delivery and performance of the DIP Documents, including, without limitation, the DIP Term Sheet and the Note, any guarantees, any security and pledge agreements, and any mortgages contemplated thereby,

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents for.

among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors and the DIP PartiesLender may agree;

(iii)    the non-refundable payment of the fees referred to in the DIP Documents and this Interim Order and costs and expenses as may be due in accordance with the DIP Documents and this Interim Order, and

(iv)    the performance of all other acts required under or in connection with the DIP Documents and this Interim Order.

(d)    The DIP Documents and this Interim Order constitute valid, binding and non-avoidable obligations of the Debtors enforceable against each person or entity party thereto in accordance with their respective terms for all purposes during the Chapter 11 Cases, any subsequently converted case of any Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any case.  No obligation, payment, transfer, or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 547, 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

4.    Carve-Out.

(a)     The Debtors' obligations to the DIP ~~Parties and the liens~~Lender and superpriority claims granted herein shall be subject and subordinate only to, after a Carve-Out Effective Date, payment of the Carve-Out.  For the purposes of this Order "Carve-Out" shall mean (A)(i) subject to the terms of this Interim Order and the Budget, all allowed fees and expenses of the professionals by the Debtors and any statutory committees appointed in the Chapter 11 Cases (each, a "Committee") accrued on or before the first business day (the "Carve-Out Effective Date") following the delivery by the DIP ~~Parties~~Lender of a Carve-Out Trigger Notice (as defined below), whether approved by this Court before or after the Carve-Out Effective Date (ii) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States trustee pursuant to 28 U.S.C. § 1930(a); and (iii) reasonable fees and expenses of a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000 ((i), (ii) and (iii) collectively, the "Carve-Out Expenses"); and (B) on and after the Carve-Out Effective Date an amount not exceeding $50,000 in the aggregate, which amount may be used (subject to the terms of this Interim Order and the Budget) to pay, to the extent allowed at any time, all fees or expenses incurred by the professionals retained by the Debtors and Committee, on or after the Carve-Out Effective Date, *provided* that (x) the Carve-Out Expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid on or prior to the Carve-Out Effective Date in respect of which the Carve-Out is invoked or by any fees, expenses, indemnities or other amounts paid to any agent or lender (or any of their respective attorneys or agents under the DIP Facility or otherwise), and (y) nothing herein shall be construed to impair the ability of any entity to object to the fees, expenses, reimbursement or compensation described above. "Carve-Out Trigger Notice" means a written notice delivered by the DIP ~~Parties~~Lender to the Borrower and its

counsel, the U.S. Trustee, and lead counsel to any Committees, which notice may be delivered following the occurrence and during the occurrence of an Event of Default, expressly stating that it is a Carve-Out Trigger Notice hereunder.

5.  Superpriority Claims.

(a)  The ~~DP Parties are~~DIP Party is hereby granted an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code for all DIP Obligations, having priority over any and all other claims against the Debtors and their estates, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, which Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof. The Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to, after the Carve-Out Effective Date, the Carve-Out. Except as expressly set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

6.  ~~Postpetition Liens.~~Continuation of Superpriority Claim.

(a)  ~~To secure the DIP Obligations, the following are granted in favor of the DIP Lenders:~~

(i)  ~~a first priority, perfected security interest in, and lien, under section 364(c)(2) of the Bankruptcy Code upon all Collateral of each Debtor and of each Debtor's estate that, on or as of the Filing Date is not subject to valid, perfected, and non-avoidable liens:~~

*provided however*, that any such lien shall not extend to any leasehold where the terms of the lease would prohibit the imposition of such lien, but provided further that such lien shall extend to the proceeds of any such leasehold;

(ii) a junior lien, under section 364(c)(3) of the Bankruptcy Code upon all of the Collateral of each Debtor and of each Debtor's estate that is, as of the Filing Date, subject to valid, perfected, and non-avoidable liens in favor of third parties;

(a) [Intentionally Omitted].

(b) The liens created as described in clauses (i) and (ii) above (the "Postpetition Liens") shall cover all property and assets of the Debtors and their estates (now or hereafter acquired and all proceeds thereof), except (i) until entry of the Final Order, Avoidance Actions; and (ii) as otherwise agreed to by the DIP Parties.

(c) The Postpetition Liens shall be effective immediately upon the entry of this Interim Order and subject only to, (i) after the Carve-Out Effective Date, payment of the Carve-Out, and (ii) valid, perfected and unavoidable preexisting liens on the Collateral.

(d) Except as provided in this Interim Order, the Postpetition Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Filing Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(e) The Postpetition Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the date of this Interim Order without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or other agreements, such that no additional steps

~~need be taken by the DIP Parties to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors, or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, shall have no force or effect with respect to the transactions granting in favor of the DIP Lenders a priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors in favor of the DIP Lenders, in accordance with the terms of the DIP Documents and this Interim Order.(f)~~ The Postpetition ~~Liens,~~ Superpriority Claim, and other rights, benefits, and remedies granted under this Interim Order and the DIP Documents in favor of the DIP ~~Lenders~~Lender, shall continue in these Chapter 11 Cases, in any superseding case or cases under the Bankruptcy Code (including without limitation any case for any Debtor under chapter 7 of the Bankruptcy Code) (a "Superseding Case"), and following any dismissal of the Chapter 11 Cases, and such ~~liens and~~ claims shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and the DIP ~~Lenders'~~Lender's commitments have been terminated in accordance with the DIP Documents.

(g~~c~~) If any additional direct or indirect subsidiary of Holdco (each, a "Subsequent Debtor") commences a Chapter 11 Case, such Subsequent Debtor shall become a Guarantor and be bound by the terms of the DIP Documents and this Interim Order~~, and such Subsequent Guarantor shall grant in favor of the DIP Lenders, a lien on any Collateral of such~~

Subsequent Debtor, which lien shall be a Postpetition Lien on the same terms and with the same limitations as provided for herein and in the DIP Documents.

7. <u>Fees</u>. All fees paid and payable, and costs and/or expenses reimbursed or reimbursable by the Debtors to the DIP ~~Parties~~<u>Lender</u> are hereby approved. The Debtors are hereby authorized and directed to promptly pay all such fees, costs, and expenses on demand, without the necessity of any further application with the Court for approval or payment of such fees, costs or expenses. Notwithstanding anything to the contrary herein, the fees, costs and expenses (other than those of professionals retained by the DIP ~~Parties~~<u>Lender</u>) of the DIP ~~Parties, whether~~<u>Lender and the BOC</u> incurred ~~prior to or~~ after the ~~Filing Date~~<u>filing date</u> shall be deemed fully earned, non-refundable, irrevocable, and non-avoidable as of the date of this Interim Order; *provided* that with respect to fees and expenses of professionals of the DIP ~~Agent and the DIP Lenders~~<u>Lender</u> incurred after the date of this Interim Order, the Debtors shall provide copies of invoices of such professionals of the DIP ~~Agent and the DIP Lenders~~<u>Lender</u> to the Committee and the United States Trustee. All unpaid fees, costs, and expenses shall be included and constitute part of the principal amount of the DIP Obligations ~~and be secured by the Postpetition Liens~~.

8. <u>Authority to Execute and Deliver Necessary Documents</u>.

(a) ~~All of the liens described herein with respect to the assets of the Debtors shall be effective and perfected as of the entry of this Interim Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements.~~<u>[Intentionally Omitted]</u>.

(b) Each of the Debtors is hereby further authorized and directed to (i) perform all of its obligations under the DIP Documents and this Interim Order, and such other

agreements as may be required by the DIP Documents and this Interim Order to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Documents and this Interim Order.

(c)     The Debtors shall execute all documents and take all actions required to effectuate the DIP Documents and this Interim Order, including, without limitation, executing all instruments which may be requested by the DIP PartiesLender.

(d)     All obligations under the DIP Documents and this Interim Order shall constitute valid and binding obligations of each of the Debtors enforceable against each of them, and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order. No obligation, payment, transfer, or grant of a security interest under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

9.     Amendments, Consents, Waivers, and Modifications.

The Debtors, with the express written consent of the DIP LendersLender, may enter into any amendments, consents, waivers, or modifications to the DIP Documents without the need for further notice and hearing or any order of this Court, provided that such amendments, consents, waivers, or modifications do not (i) shorten the Maturity Date, (ii) increase commitments, the rate of interest payable under the DIP Documents and this Interim Order, or require the payment of a fee, or (iii) change any Event of Default, add any covenants or amend the covenants in the

DIP Documents and this Interim Order, in each case as applicable to the Debtors, in any such case to be materially more restrictive; *provided, however*, that a copy of any such amendment, consent, waiver or other modification shall be served by the Debtors on the U.S. Trustee and the Committee (as that term is defined below). No consent shall be implied by any other action, inaction, or acquiescence ~~of any~~ of the DIP ~~Parties~~Lender.

10.     ~~Perfection of Postpetition Liens.~~[Intentionally Omitted].

~~(a)     The DIP Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, in each case without the necessity to pay any mortgage recording fee or similar fee or tax. Whether or not the DIP Parties shall, in their sole discretion, chooses to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge dispute or subordination, at the time and on the date of entry of this Interim Order. The Debtors shall, if requested, execute and deliver to the DIP Parties all such agreements, financing statements, instruments and other documents as the DIP Parties may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the Postpetition Liens. All such documents will be deemed to have been recorded and filed as of the Filing Date.~~

~~(b)     A certified copy of this Interim Order may, in the discretion of the DIP Administrative Agent, be filed with or recorded in filing or recording offices in addition to or in~~

~~lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing~~
~~offices are hereby directed to accept such certified copy of this Interim Order for filing and~~
~~recording.~~

11.     [Intentionally Omitted].

12.     <u>Budget; Use of Proceeds</u>.  All expenditures of the Debtors shall be made pursuant to and in accordance with the Budget.  The Debtors shall submit an updated Budget to the DIP ~~Parties~~Lender on a weekly basis, each of which shall be satisfactory to the DIP ~~Parties~~Lender in ~~their~~its sole and absolute discretion.  Subject to entry of the Final Order, actual expenditures made by the Debtors shall not exceed the amounts set forth in the Budget.  Upon and following entry of the Final Order and execution of the DIP Documents, expenditures made by the Debtors shall not exceed the amounts set forth in the Budget by more than (a) ten percent (10%) for any line item and (b) five percent (5%) in the aggregate.  Actual revenues received by the Debtors shall not be less than ninety percent (90%) of the amounts set forth in the Budget.

13.     <u>Financial Reporting</u>.  The Debtors shall provide the DIP ~~Parties~~Lender with (i) annual, audited financial statements, (ii) quarterly, internally prepared financial statements, (iii) monthly, internally prepared, financial statements, (iv) annual projections, including monthly balance sheet, profit and loss and cash flow figures, (v) weekly Budgets, including a comparison of actual performance to projections for the prior week and the prior cumulative four-week period, delivered no later than 5:00 p.m. (Eastern time) on Wednesday of each week, (vi) a weekly compliance certificate for the revenue and expenditure covenants, (vii) an updated Budget by the 10th day of each month that is acceptable to the DIP ~~Parties~~Lender in ~~their~~its sole and absolute discretion, and (viii) other reporting as reasonably required by the DIP ~~Parties~~Lender.

14.    ~~Milestones.  As a condition to further funding, the Debtors and the DIP Parties~~ ~~shall, on or prior to July 29, 2011, reach agreement with respect to a process and timing for the~~ ~~license of the broadcast media rights of the Debtors, in each case in a manner satisfactory to the~~ ~~DIP Parties (the "Milestones"), which Milestones shall require, among other things:~~[Intentionally Omitted].

(a)    ~~entry of a final order of this Court, satisfactory to the DIP Parties in their~~ ~~sole and absolute discretion, approving the transaction (the "Media Rights Order") shall occur no~~ ~~later than 180 days after the Filing Date; and~~

(b)    ~~the transaction shall close no later than 45 days after entry of the Media~~ ~~Rights Order.~~

15.    <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under the DIP Term Sheet and this Interim Order:

(a)    the Debtors' failure to make any payments of principal or interest on amounts owing hereunder;

(b)    ~~any of the Chapter 11 Cases shall be dismissed or converted to a chapter 7~~ ~~case;~~[Intentionally Omitted];

(c)    ~~a chapter 11 trustee or an examiner with enlarged powers shall be~~ ~~appointed in the Chapter 11 Cases;~~[Intentionally Omitted];

(d)    any other ~~superpriority administrative expense~~ claim that is senior to or *pari passu* with the DIP ~~Parties' liens~~Lender's superpriority administrative expense claim shall be granted without the DIP ~~Parties'~~Lender's consent in their sole and absolute discretion;

(e)    the Interim Order or the Final Order, as the case may be, shall be stayed, amended, modified, reversed or vacated;

(f)     the Final Order, in form and substance satisfactory to the DIP

~~Parties~~Lender in ~~their~~its sole and absolute discretion, shall not have been entered within twenty

(20) days after entry of this Interim Order;

(g)     a plan shall be confirmed in any of the Chapter 11 Cases that does not

provide for termination of the commitment under the ~~Financing~~DIP Facility and payment in full

in cash of the Debtors' obligations thereunder on the effective date of the plan, or an order shall

be entered that dismisses any of the Chapter 11 Cases and does not provide for termination of the

~~Financing~~DIP Facility and payment in full in cash of all obligations thereunder;

(h)     the Debtors shall take any action, including the filing of an application, in

support of any of (~~b~~d) through (g) hereof, or any person other than the Debtors shall do so and

such application is not contested in good faith by the Debtors;

(i)     this Court shall enter an order granting relief from the automatic stay to

the holder of any security interest in any material asset of the Debtors;

(j)     ~~the Milestones are not agreed to by July 29, 2011 or the Debtors fail to~~

~~meet any of the Milestones;~~[Intentionally Omitted];

(k)     ~~any material contract is rejected or otherwise terminated or any material~~

~~property of the Debtors is sold, in each instance, without the consent of the DIP Parties in their~~

~~sole and absolute discretion;~~[Intentionally Omitted];

(l)     ~~termination of the Debtors' rights, privileges and other property rights~~

~~under the Major League Baseball Constitution or any other baseball-related~~

~~agreement;~~[Intentionally Omitted];

(m)     any Debtor's failure to perform or observe, in any respect, any of the terms, conditions or covenants or their obligations under the ~~DP~~DIP Documents or this Interim Order; or

(n)     any other Event of Default as set forth in the DIP Documents.

16.     <u>Remedies Upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default, (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order and the DIP Documents, and (ii) the DIP ~~Parties~~Lender, shall be entitled to take any act or exercise any right or remedy as provided in this Interim Order or the ~~DP~~DIP Documents, including, without limitation, immediately suspending or immediately terminating the DIP Facility pending further order of the Court.  The DIP ~~Parties~~Lender shall have no obligation to lend or advance any additional funds to or on behalf of the Debtors, or provide any other financial accommodations to the Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

17.     <u>Automatic Stay Modified</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code hereby are, to the extent applicable, vacated, and modified to the extent necessary without the need for any further order of this Court:

(a)     [Intentionally Omitted]; and

(b)     following a default or an Event of Default under the DIP Documents and this Interim Order, the DIP ~~Parties are~~Lender is authorized to exercise any and all of ~~their~~its rights and remedies in accordance with the terms of the DIP Documents and this Interim Order, and to take all actions required or permitted by the DIP Documents and this Interim Order

6/28/2011 52 59I9 AM (2K)
MIAMI 919147 v12 [919147_1-2.DOC]

without necessity of further Court orders; *provided* that the DIP ~~Parties~~Lender shall give three

(3) business days notice to the Debtors, the U.S. Trustee, and any Committee of such action;

*provided further*, however, that this Interim Order shall not prejudice the rights of any party-in-

interest to oppose the exercise of the DIP ~~Parties'~~Lender's remedies; *provided further*, that the

only issue that may be raised by all entities in opposition thereto shall be whether a default or

Event of Default has in fact occurred and is continuing, and all entities hereby waive their right

to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in

any way impair, limit or restrict, or delay the exercise or benefit of, the rights and remedies of

DIP ~~Parties~~Lender under the DIP Documents or this Interim Order.

18.     Subsequent Reversal or Modification. This Interim Order is entered pursuant to,

*inter alia*, section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b)~~ and (~~e), granting

the DIP ~~Parties~~Lender all protections afforded by section 364(e) of the Bankruptcy Code. If any

or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed,

that action will not affect (i) the validity of any obligation, indebtedness or liability incurred

hereunder by any of the Debtors to the DIP ~~Parties~~Lender, prior to the date of receipt by the DIP

~~Parties~~Lender of written notice of the effective date of such action or (ii) the validity and

enforceability of any lien, claim, or priority authorized or created under the DIP Documents and

this Interim Order. Notwithstanding any such reversal, stay, modification, or vacatur, any

postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP

~~Parties~~Lender, prior to written notice to the DIP ~~Parties~~Lender of the effective date of such

action, shall be governed in all respects by the original provisions of this Interim Order and the

DIP ~~Parties~~Lender shall be entitled to all the rights, remedies, privileges, and benefits granted

herein and in the DIP Documents with respect to all such indebtedness, obligations or liability.

19.     Restriction on Use of Lenders' Funds.  Notwithstanding anything herein to the

contrary, no Collateral, proceeds thereof, proceeds of the ~~Financing~~DIP Facility, or any portion

of the Carve-Out may be used by any of the Debtors, their estates, any Committee, any trustee or

examiner appointed in these Chapter 11 Cases or any chapter 7 trustee, or any other person, party

or entity to, in any jurisdiction anywhere in the world, directly or indirectly (a) request

authorization to obtain postpetition financing (whether equity or debt) or other financial

accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other

than (i) from the DIP ~~Parties~~Lender or (ii) if such financing is sufficient to indefeasibly pay all

DIP Obligations in full in cash and such financing is immediately so used; (b) assert, join,

commence, support, investigate, or prosecute any action for any claim, counter-claim, action,

cause of action, proceeding, application, motion, objection, defense, or other contested matter

seeking any order, judgment, determination, or similar relief against, or adverse to the interests

of, in any capacity, the Releasees, with respect to any transaction, occurrence, omission, or

action, ~~including, without limitation,~~regarding any of the following: (i) any action arising under

the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any

action with respect to the validity and extent of the DIP Obligations, the Superpriority Claims~~, or~~

~~the validity, extent, perfection, and priority of the Postpetition Liens,~~; (iv) any action seeking to

invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable,

contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or

counter claims or raise any other challenges under the Bankruptcy Code or any other applicable

domestic or foreign law or regulation against or with respect to ~~the Postpetition Liens or~~ the

Superpriority Claims, in whole or in part; (v) appeal or otherwise challenge this Interim Order,

the Final Order, the DIP Documents, or any of the transactions contemplated herein or therein;

and/or (vi) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the DIP ~~Parties~~Lender in respect of ~~their liens and security interests in the Collateral or any of their~~its rights, powers, or benefits hereunder or in the DIP Documents anywhere in the world; and/or (c) pay any claim of a pre-petition creditor except in accordance with the DIP Documents and this Interim Order and the Budget (except as otherwise authorized by order of this Court, *provided that* such order is in form and substance satisfactory to the DIP ~~Parties~~Lender in ~~their~~its sole and absolute discretion). Any claim incurred in connection with any activities described in subparagraph (b) of this paragraph 19 shall not constitute an allowed administrative expense claim for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

20. ~~Collateral Rights. In the event that any person or entity that holds a lien or security interest in Collateral of the Debtors or their estates that is junior and/or subordinate to the Postpetition Liens in such Collateral of the Debtors or their estates receives or is paid the proceeds of such Collateral of the Debtors or their estates, or receives any other payment with respect thereto from any other source, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Documents and this Interim Order, and termination of the commitments in accordance with the DIP Documents and this Interim Order, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral of the Debtors or their estates in trust for the DIP Parties, and~~[Intentionally Omitted].

~~shall immediately turnover such proceeds to the DIP Parties for application in accordance with the DIP Documents and this Interim Order.~~

21.    Prohibition on Additional Liens.  Except as provided in the DIP Documents

and/or this Interim Order, the Debtors shall be enjoined and prohibited from, at any time during

the Chapter 11 Cases unless and until the DIP Obligations have been indefeasibly paid in full,

granting liens on ~~the Collateral~~any of their assets or properties or any portion thereof to any other

entities, pursuant to section 364(d) of the Bankruptcy Code or otherwise, ~~which liens are senior~~

~~to, *pari passu* with or junior to the liens granted in favor of the DIP Lenders,~~ except in

accordance with the DIP Documents and this Interim Order.

22.    No Waiver.  This Interim Order shall not be construed in any way as a waiver or

relinquishment of any rights that the DIP ~~Parties~~Lender may have to bring or be heard on any

matter brought before this Court.

23.    Sale/Conversion/Dismissal/Plan.

(a)    No order providing for either the sale of the ownership of the stock of the

Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the

Bankruptcy Code shall be entered by the Court unless, in connection and concurrently with any

such event, (i) the proceeds of such sale shall be used to satisfy, in cash, the DIP Obligations in

accordance with the DIP Documents; and (ii) such sale is expressly permitted under the DIP

Documents and this Interim Order.

(b)    ~~No motion shall be filed by any Debtor seeking dismissal or conversion of~~

~~these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or seeking~~

~~appointment of a chapter 11 trustee or an examiner with expanded powers unless and until (x)~~

~~the DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the~~

~~commitments under the DIP Documents and this Interim Order are terminated in accordance~~

~~therewith or (y) the DIP Parties expressly consent in writing.~~  If an order dismissing or

converting any of these cases under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered, and unless otherwise agreed to by the DIP PartiesLender, such order shall provide that (i) the Postpetition Liens and Superpriority Claim, granted hereunder and in the DIP Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order until all DIP Obligations are indefeasibly paid in full, in cash and completely satisfied and the commitments under the DIP Documents and this Interim Order are terminated in accordance therewith, (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Postpetition Liens and the Superpriority Claim, and (iii) all postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP PartiesLender, prior to the date of such order, including without limitation, the DIP Obligations, shall be governed in all respects by the original provisions of this Interim Order, and the DIP PartiesLender, shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Documents with respect to all such indebtedness, obligations or liability.

24.    Priority of Terms.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Documents, the terms and provisions of this Interim Order shall govern.

25. No Third Party Beneficiary. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

26. Rights Under Section 363(k). The full amount of the DIP Obligations may be used to "credit bid" for the assets and property of the Debtors as provided for in section 363(k) of the Bankruptcy Code, in accordance with the terms of the DIP Documents and this Interim Order without the need for further Court order authorizing the same.

27. Headings. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

28. Final Hearing Date. The Final Hearing to consider the entry of the Final Order approving the relief sought in the Motion shall be held on July [ ], 2011 at [ ] before the Honorable ┤┤Judge Kevin Gross, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801.

29. ~~No Consent. No action, inaction or acquiescence by any of the DIP Parties, including funding the Debtors' ongoing operations under this Interim Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Parties, to a charge against the Collateral pursuant to sections 506(c) or 105(a) of the Bankruptcy Code. The DIP Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.~~[Intentionally Omitted].

30. ~~Waiver. Effective upon entry of this Interim Order, no person or entity shall be entitled, directly or indirectly, to (a) except as expressly provided by paragraph 4 of this Interim Order, charge or recover from the Carve-Out or the Collateral by operation of section 105 of the Bankruptcy Code or otherwise or (b) direct the exercise of remedies or seek (whether by order of~~

~~this Court or otherwise) to marshal or otherwise control the disposition of Collateral or Property after an Event of Default under the DIP Documents or this Interim Order, or termination or breach under the DIP Documents or this Interim Order.~~[Intentionally Omitted].

31. <u>Section 506(c) Claims</u>. Subject to the entry of the Final Order, no costs or expenses of administration which have or may be incurred in the Chapter 11 Cases at any time during the Interim Financing Period (and subject to the entry of the Final Order, any time after the expiration of the Interim Financing Period) shall be charged against the DIP ~~Parties~~Lender, ~~their~~or its respective claims or interests, ~~and/or the Collateral~~ pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the DIP ~~Parties~~Lender in ~~their~~its sole and absolute discretion, and no such consent shall be implied from any other action, inaction or acquiescence by ~~any of~~ the DIP ~~Parties~~Lender.

32. <u>Adequate Notice</u>. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2), and the Local Bankruptcy Rules, and was adequate and sufficient. Under the circumstances, no further notice of the request for the relief granted at the Interim Hearing is required. The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties, any known entity effected by the terms of the Final Order, and any other entity requesting notice after the entry of this Interim Order. Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be <u>actually received</u> no later than seven (7) days prior to the Final Hearing by the following: (i) co-counsel to the Debtors, Dewey & Lebouf LLP, 333 Grand South Avenue, Suite 2600, Los Angeles, California 90071, Attn: Bruce Bennett, Esq. and Young, Conaway, Stargatt & Taylor LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 301,

Wilmington, Delaware 19801, Attn: Robert S. Brady, Esq. and (ii) co-counsel to the DIP Parties, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York, 10004, Attn: Gary L. Kaplan, Esq., and Richards, Layton & Finger P.A., One Rodney Square, P.O. Box 551,Lender, White & Case LLP, 200 S. Biscayne Blvd., Suite 4900, Miami, Florida 33131, Attn: Thomas E Lauria, Esq., Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: Bradley I. Ruskin, Jeffrey W. Levitan, and Fox Rothschild LLP, Citizens Bank Center, 919 Market Street, Suite 1300, P.O. Box 2323, Wilmington, Delaware 19899, Attn: Mark Collins, EsqJeffrey M. Schlerf.

33.     Binding Effect on Successors and Assigns. The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties-in-interest in these Chapter 11 Cases, including, without limitation, the Debtors, the DIP PartiesLender, and any Committee or examiner appointed in these Chapter 11 Cases, and their respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the DIP PartiesLender, and the Debtors and their respective successors and assigns, *provided, however*, that the agreement of the DIP PartiesLender to extend financing shall terminate upon the appointment of any chapter 7 or 11 trustee, examiner with expanded powers, or similar responsible person appointed for the estates of the Debtors. In determining to make any loan (whether under the DIP Documents, this Interim Order, the Note, or otherwise), or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP PartiesLender shall not (i) be deemed to be in control of the operations of the Debtors, (ii) owe any fiduciary duty to the

Debtors, their respective creditors, shareholders, or estates. Each stipulation, admission and agreement contained in this Interim Order shall also be binding upon all other parties in interest, including, any Committee, under all circumstances and for all purposes.

34. _Retention of Jurisdiction_. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: Wilmington, Delaware
June \_\_\_\_\_, 2011

_____
UNITED STATES BANKRUPTCY JUDGE