# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LOS ANGELES DODGERS LLC., *et al.*, | ) | Case No. 11-12010(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Dkt No. 13** |

## MEMORANDUM ORDER

On June 27, 2011, Los Angeles Dodgers LLC,[1] and affiliates, debtors and debtors in possession in the above-captioned cases (the "Debtors"), filed the Emergency Motion for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing pursuant to 11 U.S.C. §§ 105, 362, and 364, and (II) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (c) [D.I. 13] (the "Motion"). Debtors sought the Court's approval of proposed financing further described below.

The Debtors and objecting parties reached agreement on revised terms. The Court entered an order on June 28, 2011 [D.I. 52] (the "Interim DIP Order") that, among other things, approved the Motion on an interim basis on the terms set forth in the Interim DIP Order and scheduled and held an evidentiary hearing on July 20, 2011.

Debtors seek authority to obtain final approval of postpetition financing consisting of a superpriority delayed draw term loan facility in an aggregate principal amount of up to $150,000,000 (the "DIP Facility"). Debtors received an initial draw of $60 million upon entry of the Interim Order and the remaining $90 million would be available from time to time following entry of a final order.

---

[1] This entity owns the Los Angeles Dodgers Major League Baseball team (the "Dodgers") whose rich and successful history is of mythical proportions. Its great former players, managers and executives could justify their own hall of fame. Formerly the Brooklyn Dodgers, the team name is derived from fans who used to "dodge" that city's trolleys.

The proposed lenders are a group in the Highbridge Senior Loan Fund II family of funds ("Highbridge")[2], with whom Debtors have entered into a Credit and Security Agreement on terms more fully described below (the "Highbridge Loan"). The Office of the Commissioner of Baseball (the "Commissioner"), doing business as Major League Baseball ("Baseball") has objected[3] to the Motion and the terms of the Highbridge Loan and has proposed its own loan (the "Baseball Loan") which it characterizes as an unsecured loan. Debtors dispute the nature of the loan.[4]

Baseball fairly counters that, to date, Debtors have flatly refused to negotiate its proposal. Baseball is prepared immediately to engage in good faith negotiations toward an unsecured loan on the terms placed on the record.

---

[2] Highbridge Principal Strategic, LLC, is the proposed Senior Managing Agent.

[3] The Office of the United States Trustee and the Official Committee of Unsecured Creditors (the "Committee") also objected to the Motion. The Committee withdrew its objection as explained below.

[4] Debtors' argument that the Baseball Loan is not unsecured is premature, as negotiations and court review have not occurred. Therefore, Debtors' reliance upon cases such as *In re Snowshoe Co., Inc.*, 789 F.2d 1085 (4th Cir. 1986) for the proposition that conditioned loans are problematic does not change the Court's view.

The essential terms of the Highbridge Loan are as follows:

| Amount: | $150,000,000 multiple draw term loans (of which $60,000,000 has been funded) |
|---|---|
| **Rate:** | LIBOR plus 6.00%[5] for LIBOR Loans with a LIBOR floor of 3.00% |
| **Timing of Interest Payments:** | Paid at the end of an Interest Period/monthly during term of the facility |
| **Number of Borrowings:** | Borrower may only specify up to two Borrowing Dates during any 30 day period |
| **Fees:** | Closing date fees paid per Fee Letter:<br>• Closing commitment payment: 3.5% of the DIP Loan Commitment ($5,250,000), which has already been paid<br><br>Agent fee: $50,000 (paid annually)<br><br>Additional Credit Agreement Fees:<br>• Delayed draw fee: 0.50% of undrawn commitment<br>• Deferred commitment fee: $4,500,000 upon earlier of repayment in full and maturity<br>• Audit and collateral monitoring fees |
| **Maturity:** | June 27, 2012 (before expiration of Fox Sport's right of first negotiation) |
| **Security:** | All Assets of the Loan Parties |
| **Debt Priority:** | Super-priority administrative expense claims under section 364(c), senior to all other administrative expense claims |

The Court will decide the Motion on the narrowest grounds possible, i.e., applying the applicable section of the Bankruptcy Code to the dispute and leaving to a later, more appropriate day, the issues surrounding the underlying feud between the Commissioner and Debtors' principal, Frank

---

[5] The Official Committee of Unsecured Creditors withdrew its objection to the Motion when Highbridge agreed to lower the interest rate by one percent, from LIBOR plus 7% to LIBOR plus 6%, and to remove its lien on avoidance actions.

McCourt ("Mr. McCourt")[6]. It is clear that Baseball needs and wants the Dodgers to succeed and the Debtors are best served by maintaining Baseball's good will and contributing to the important and profitable franchise group under the Commissioner's leadership.

A comparison of the Highbridge Loan and the proposed Baseball Loan clearly shows the substantial economic superiority of the Baseball Loan, as follows:

**Comparison of Material DIP Terms**

| | **Highbridge DIP Facility** | **MLB DIP Facility** |
|---|---|---|
| **Fees:** | 0.50% Delayed Draw Fee<br>$4.5 MM Deferred Comm Fee<br>$5.25 MM Closing Comm Fee<br>$50,000 Annual Agent Fee | None |
| **Interest Rate:** | LIBOR + 6%<br>(3% Floor)<br>Base Rate + 6.0% | LIBOR + 5.5%<br>(1.5% Floor)<br>Base Rate + 4.5% |
| **Security:** | All Estate Assets | Unsecured |
| **Priority:** | Super-Priority Administrative | Administrative |
| **Events of Default:** | Case Dismissal<br>Trustee or Examiner Appointed<br>Termination of Debtors' Rights under Baseball Agreement | No Onerous Events of Default |
| **Maturity Date:** | June 27, 2012<br>(Before Fox Sports'<br>Right of First Negotiation) | November 30, 2012<br>(After Fox Sports'<br>Right of First Negotiation) |

---

[6] Mr. McCourt blames the Commissioner for Debtors' woes while the Commissioner alleges Mr. McCourt's mismanagement and self-dealing are the cause. It appears that their dispute will shortly be before the Court. Their acrimonious relationship and Mr. McCourt's belief that the Commissioner is hostile toward him is an unhelpful distraction which obfuscates the uncontroverted testimony from Debtors' representative, Mr. Jeffrey Ingram, that Baseball is not hostile to the Debtors.

The Court will deny the Motion, premised upon of Section 364(b) of the Bankruptcy Code, 11 U.S.C. § 364(b), which explicitly precludes the Highbridge Loan where, as here, Debtors are unable to prove that they are "unable to obtain unsecured credit allowable under section 503(b)(1) ... as an administrative expense." The opposite holds true, *viz.*, Baseball is ready, anxious and able to provide unsecured financing and has committed to do whatever it takes to do just that. The Court will insure that Baseball honors its commitment.

In seeking approval of the Highbridge Loan, the Debtors have the burden of proving that:

> (1) They are unable to obtain unsecured credit per 11 U.S.C. § 364(b), i.e., by allowing a lender only an administrative claim per 11 U.S.C. § 503(b)(1)(A);
> (2) The credit transaction is necessary to preserve the assets of the estate; and
> (3) The terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re St. Mary Hosp.*, 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988) (citing *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), *aff'd*, 75 B.R. 553 (E.D. Pa. 1987)). The Court "may not approve any credit transaction under subsection (c) [of Section 364] unless the debtor demonstrates that it has attempted, but failed, to obtain unsecured credit under section 364(a) or (b)." *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

Debtors not only failed to attempt to obtain unsecured financing, they refused to engage Baseball in negotiations because, they explained, Baseball has been hostile to Debtors.

Debtors correctly posit that courts will almost always defer to the business judgment of a debtor in the selection of the lender. The business judgment rule[7] is a standard of judicial review designed to protect the wide latitude conferred on a board of directors in handling the affairs of the

---

[7] The Court's discussion of business judgment is premised upon Delaware law to which Debtors are subject as Delaware entities. The cases upon which the Court relies are: *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. Supr. 1984) and *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. Supr. 1984).

corporate enterprise. The rule refers to the judicial policy of deferring to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions. Under the rule, courts will not second-guess a business decision, so long as corporate management exercised a minimum level of care in arriving at the decision. The business judgment rule under Delaware law and the law of numerous other jurisdictions establishes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.

Under this formulation, the business judgment rule governs unless the opposing party can show one of four elements: (1) the directors did not in fact make a decision, (2) the directors' decision was uninformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent. Baseball relies on the third exception to argue that the business judgment rule does not apply. Baseball says Mr. McCourt did not make a disinterested or independent decision.

The evidence shows that if Debtors, controlled by Mr. McCourt, did not seek court approval for the Highbridge Loan, Mr. McCourt would personally owe $5.25 million to Highbridge. Such potential personal liability clearly compromised Debtors'/McCourt's independent judgment. Therefore, Debtors' decision is not entitled to review using the business judgment standard. Instead, the Court must review Debtors' decision to accept the Highbridge Loan applying the entire fairness standard. This requires proof of fair dealing and fair price and terms. *Moran v. Household Int'l, Inc.*, 500 A.2d 1346 (Del. Supr. 1985). The Debtors did not establish that the terms of the Highbridge Loan are entirely fair, particularly given Baseball's competing terms.

Additionally, Debtors' refused to negotiate terms with Baseball to obtain a better and unsecured loan because of Mr. McCourt's poor relationship with the Commissioner. In this case, the Debtors decision to select the Highbridge Loan and refuse to negotiate with Baseball arises from recent dealings which Debtors claim show clearly an unworkable relationship with Baseball which will be harmful to reorganization efforts[8]. Further, Debtors contend that Highbridge is motivated to lend for commercial purposes unlike Baseball which Debtors fear has a nefarious strategy, namely, to seize control of the Dodgers away from Mr. McCourt. The Court finds that the Baseball Loan is not a vehicle for Baseball to control Debtors. Had Debtors negotiated with Baseball, a more economically viable loan may have developed - but at a high cost to the Debtors' decision-maker, Mr. McCourt. The Court therefore concludes that Debtors' decision is not entitled to deference as a matter of business judgment. Consequently, Debtors had to prove the entire fairness of the Highbridge Loan - - fair dealing and fair price. Baseball's willingness to extend unsecured credit on better terms and Debtors' refusal to negotiate with Baseball precludes a finding of entire fairness.

The Court is confident that Baseball will propose to Debtors a short form credit agreement that is genuinely unsecured in nature and contains minimal - - if any - - representations, covenants and warranties, no releases for prepetition actions and no default triggers for violations of Baseball's rules and regulations. The Baseball Loan must be independent of and uncoupled from Baseball's oversight and governance of the Dodgers under the Major League Baseball Constitution. The Court, if necessary and as always, will provide ready access to Debtors in the hopefully unlikely event that Baseball strays from its obligations to act in good faith as Debtors' lender.

---

[8] It is unclear to the Court how Debtors think they can successfully operate a team within the framework of Baseball if they are unwilling to sit with Baseball to consider and negotiate even more favorable loan terms while under the Court's protection.

At the same time, Debtors are directed to negotiate with Baseball cooperatively and in good faith. Debtors and Baseball are entitled to the other's full cooperation in finalizing and administering an unsecured loan facility.

Therefore, based foremost on Debtors' failure to satisfy the statutory predicate for the Highbridge Loan and, secondarily, for failure to prove the entire fairness of the Highbridge Loan, the Court hereby denies the Motion.

ORDERED this 22nd day of July 2011.

_____
Kevin Gross, United States Bankruptcy Judge