# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LOS ANGELES DODGERS LLC, *et al.*,[1] | Case No. 11-12010 (KG) |
| Debtors. | (Jointly Administered) |
| | |
| FOX SPORTS NET WEST 2, LLC, | Adv. Proc. No. 11-_____ (KG) |
| Plaintiff, | |
| v. | |
| LOS ANGELES DODGERS LLC, and DOES 1 through 100, | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY JUDGMENT, SPECIFIC PERFORMANCE, TEMPORARY AND PERMANENT INJUNCTIVE RELIEF, BREACH OF CONFIDENCE, INTENTIONAL AND NEGLIGENT INTERFERENCE WITH CONTRACT REGARDING TELECAST RIGHTS AGREEMENT, AS AMENDED**

Fox Sports Net West 2, LLC, doing business as FSN Prime Ticket ("Prime Ticket" or "Plaintiff"), by and through its attorneys, Rutter Hobbs & Davidoff Incorporated and Morris, Nichols, Arsht & Tunnell LLP, for its complaint against the Los Angeles Dodgers, LLC ("LAD" or "Defendant"), hereby alleges as follows:

<u>Jurisdiction and Venue</u>

1. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

---

[1] The Debtors, together with the last four digits of each debtor's federal tax identification number, are Los Angeles Dodgers LLC (3133); Los Angeles Dodgers Holding Company LLC (4851); LA Holdco LLC (2567); LA Real Estate Holding Company LLC (4850); and LA Real Estate LLC (3029).

1

2. Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. § 1409(a).

3. This adversary proceeding has been commenced in accordance with Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure, and asserts claims for relief that are non-core proceedings pursuant to 28 U.S.C. § 157(c)(1).

4. Plaintiff does not consent to the entry of a final judgment by the Bankruptcy Court herein.

The Parties

5. Plaintiff, a Delaware limited liability company with its principal place of business located at 10201 West Pico Boulevard, Building 103, Los Angeles, California 90035, is in the business of producing and telecasting a variety of sports television entertainment, including major league baseball games of the Los Angeles Dodgers baseball club to cable television subscribers of its Prime Ticket Channel in Southern California, Southern Nevada and Hawaii.

6. LAD, a Delaware limited liability company with its principal place of business located at 1000 Elysian Park Avenue, Los Angeles, California 90012 ("Dodger Stadium"), owns and operates the Los Angeles Dodgers baseball club, a professional major league baseball club and member of Major League Baseball ("MLB"). LAD and its affiliates (the "Debtors") are debtors and debtors-in-possession in chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Bankruptcy Case No. 11-12010 (KG) (jointly administered) (the "Bankruptcy Cases").

7. The true names and capacities, whether individual, corporate, associate or otherwise, of those defendants charged in this Complaint as Does 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues each of said defendants by such fictitious names. As soon as their respective true names and capacities have been ascertained, Plaintiff will amend this Complaint to show the same. Plaintiff is informed and believes and based thereon alleges that each of the defendants sued as Does 1 through 100 is responsible in some manner for the

occurrences alleged herein and proximately caused Plaintiff's harm.

8. Plaintiff is informed and believes and based thereon alleges that Does 1 through 25, inclusive, and each of them, are and were each the agent, servant, and employee of LAD, and/or the others, and each of them, and, to the extent of doing the acts alleged herein, each acted within the course and scope of said agency or employment.

9. Plaintiff is informed and believes and based thereon alleges that LAD and Does 26 through 50, and each of them, are and were the alter ego of each other, and each of them, and the actions, representations, and other conduct alleged hereinafter of one are and were the actions, representations, and conduct of the others, and each of them is and was bound thereby as having done, made, and/or committed the same directly. At all times mentioned herein, the conduct of LAD and Does 26 through 50, and each of their conduct, is and was the action, representation, and conduct of each and all others, and each such defendant is and was to be obligated, responsible, held liable, and charged thereby.

10. Plaintiff is informed and believes and based thereon alleges that Does 51 through 100 are third parties who have engaged in wrongful conduct in connection with Plaintiff's existing contractual rights with LAD as alleged below.

Background Facts

11. The Debtors initiated the Bankruptcy Cases by filing voluntary Petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on June 27, 2011 (the "Petition Date"). Although the Debtors acknowledge balance sheet solvency, the bankruptcy cases were allegedly initiated to resolve the Debtors' liquidity crisis and to retain control of the Los Angeles Dodgers by current ownership. Plaintiff is informed and believes and thereon alleges that the Debtors' purported liquidity crisis has been resolved and that the only crisis facing Debtors pertains to the control of the baseball club by present ownership.

12. In 2001, LAD entered into that certain Telecast Rights Agreement dated

November 1, 2001, as later amended from time to time (collectively, the "Telecast Agreement"). The Telecast Agreement defines a multi-year relationship between Prime Ticket and LAD during which Prime Ticket is to exclusively telecast LAD games and additional LAD-related programming, including both games at Dodger Stadium and at other MLB franchise stadiums. Under the terms of the Telecast Agreement, Prime Ticket is granted an exclusive license to telecast games through the 2013 MLB season and to retain the rights for later seasons, with the amount of consideration to be paid for the rights in later seasons subject to further negotiation, as set forth in the Telecast Agreement.

13. On the Petition Date, Prime Ticket was current on all its obligations under the Telecast Agreement, and as of the date of the filing of this Complaint it remains current on its obligations, and otherwise has performed all obligations required of it under the Telecast Agreement, except to the extent they have been prevented, waived, or excused by the conduct of LAD and Does 1 through 50, or applicable law.

14. With respect to the future rights granted to Prime Ticket under the Telecast Agreement, and as set forth in the Amendment dated February 13, 2004 (the "First Amendment") to the Telecast Agreement, Prime Ticket was granted several important and valuable rights with respect to the right to license rights to telecast games of the LAD in future seasons. These rights include, but are not limited to, certain rights of first negotiation, rights to exclusive negotiation commencing in October 2012, and matching rights for other offers if Prime Ticket does not initially reach an agreement with LAD for the future telecast rights. These provisions are sometimes collectively referred to herein as the "Future Acquisition Rights". Attached as Exhibit "1" hereto and incorporated herein by this reference is a true and correct copy of the Telecast Agreement, and the amendments thereto. Attached as Exhibit "2" hereto and incorporated herein by this reference are the provisions of Section 2 of the Telecast Agreement which set forth the Future Acquisition Rights.

15. LAD has taken affirmative steps to sell future "media rights" through a Court

authorized "process" (collectively, the "Sale Process"), in direct contravention of the Future Acquisition Rights in the Telecast Agreement.

16. Furthermore, Plaintiff is further informed and believes that LAD prior to filing bankruptcy engaged in communications with Does 51 through 100 in violation of the rights of Plaintiff under the Telecast Agreement. In doing so, LAD breached the confidentiality provisions of the Telecast Agreement and impaired the rights and interests of Plaintiff.

17. Plaintiff is informed and believes and thereon alleges that Does 51 through 100 wrongfully induced LAD to breach the Telecast Agreement, including the confidentiality provisions of the Telecast Agreement, and wrongfully received confidential information.

18. Any loss of its Future Acquisition Rights would be highly damaging to Plaintiff because of the inherently unique and irreplaceable nature of its exclusive license of the telecast rights, and, moreover, once the Sale Process commences, it will be impossible for LAD to ever comply with the Future Acquisition Rights.

19. The Telecast Agreement provides, in Section 15(d)(iii) thereof:

> Upon the happening of any breach of this Agreement by either party, the non-breaching party, in addition to any other rights and remedies provided in this Agreement, shall be entitled to seek (A) a **temporary, preliminary and/or permanent injunction** in order to prevent the continuation of such breach, and (B) **specific performance** by such breaching party. Such breaching party waives any requirement that the non-breaching party be required to post a bond in connection with any request for an injunction. Each party acknowledges that the other party would suffer irreparable harm if such party were to breach this Agreement, damages caused by such breach would not be ascertainable, money damages would not compensate the other party adequately for injuries resulting from such party's breach of this Agreement, and the other party **would not have an adequate remedy at law** if such party were to breach this Agreement. Each party further acknowledges that an **injunction and specific performance are necessary** to protect the other party because the success and viability of the other party's business depends upon such party's performance under this Agreement.

(Emphasis supplied.)

20. Plaintiff is entitled to the relief it seeks pursuant to the terms of the Telecast

Agreement and applicable non-bankruptcy law.

## FIRST CLAIM FOR RELIEF

(Declaratory Judgment That Future Acquisition Rights Are Enforceable)

(Against LAD and DOES 1 Through 50, Inclusive)

21. Plaintiff repeats and realleges paragraphs 1-20, inclusive, as if fully set forth herein.

22. LAD has commenced the Sales Process with respect to so-called future media rights, which rights are the same rights, or include the same rights, which Plaintiff is entitled to retain under the Telecast Agreement. By the express terms of the Telecast Agreement, LAD is to negotiate in good faith regarding the future media rights only in accordance with the terms of the Future Acquisition Rights granted to Plaintiff in the Telecast Agreement.

23. By refusing to comply with the terms of the Telecast Agreement with respect to, *inter alia*, the Future Acquisition Rights, the Defendant has anticipatorily breached the Telecast Agreement and created an actual, justiciable controversy between Plaintiff and LAD, which may be heard and determined by this Court pursuant to 28 U.S.C. § 2201.

24. Therefore, Plaintiff requests a declaration from this Court: (i) that pursuant to the Telecast Rights Agreement Plaintiff has been granted and exclusively and indefeasibly enjoys property rights under the Future Acquisition Rights pursuant to applicable non-bankruptcy law; (ii) that LAD has anticipatorily breached the Future Acquisition Rights; (iii) that the Sale Process should not proceed except in conformity with the Future Acquisition Rights; (iv) that LAD must comply in good faith with the Future Acquisition Rights; and (v) that any sale process or attempted disposition of the telecast rights in which Plaintiff holds its interest must be conducted in conformity with the Future Acquisition Rights.

## SECOND CLAIM FOR RELIEF

(Specific Performance of Future Acquisition Rights)

(Against LAD and DOES 1 Through 50, Inclusive)

25. Plaintiff repeats and realleges paragraphs 1-20 and 22-23, inclusive, as if fully set forth herein.

26. Plaintiff has dedicated considerable effort and investment in developing the infrastructure which allows it to telecast existing LAD games as part of a programming format directed to fans of the Los Angeles Dodgers. Plaintiff has created a programming service, Prime Ticket, whose commercial success has been integrated with the Los Angeles Dodgers and the telecast of LAD games, because of those games' popularity. The telecast rights to the Los Angeles Dodgers baseball games are an inherently unique and irreplaceable asset and business opportunity. Plaintiff will suffer great and irreparable injury unless Defendant is enjoined and restrained by order of this Court from further breaches and acting in derogation of the Future Acquisition Rights.

27. Plaintiff has no present adequate remedy at law for the threatened loss of its Future Acquisition Rights, because any Sales Process not in accordance with the Telecast Agreement threatens the loss of unique propriety interests vital to Plaintiff and its cable channel and will make it impossible to evaluate what might have occurred if LAD had complied in good faith with the terms of the Telecast Agreement.

28. Under the terms of the Telecast Agreement, Plaintiff is entitled to specific performance thereof, including the Future Acquisition Rights.

## THIRD CLAIM FOR RELIEF

(Temporary, Preliminary and Permanent Injunction)

(LAD and DOES 1 Through 50, Inclusive)

29. Plaintiff repeats and realleges paragraphs 1-20, 22-23, and 26-28, inclusive, as if fully set forth herein.

30. By virtue of the foregoing, Plaintiff is entitled to a temporary restraining order, preliminary injunction and/or a permanent injunction to prevent LAD and Does 1 through 50, inclusive, and all persons acting in concert with them, from engaging in the Sale Process, from breaching the Future Acquisition Rights, from breaching the confidentiality provisions in the Telecast Agreement and from disclosing information that is subject to the confidentiality provisions in the Telecast Agreement to others notwithstanding any rejection of the Telecast Agreement which may be approved by the Court.

31. No bond is required for such injunction, as set forth in the Telecast Agreement.

FOURTH CLAIM FOR RELIEF

(Breach of Confidence)

(Against DOES 1 through 50, Inclusive)

32. Plaintiff repeats and realleges paragraphs 1-20, inclusive, as if fully set forth herein.

33. In 2010 and 2011, Plaintiff, LAD and Does 1 through 50 entered into confidential contractual negotiations with the aim of agreeing to the terms and conditions for Plaintiff's retention of media rights after the expiration of the Telecast Agreement.

34. Does 1 through 50 agreed to the confidentiality of the negotiations and was at all times aware of the competitively sensitive nature of the confidential negotiations and that Plaintiff required and expected that the negotiations would be maintained as strictly confidential.

35. In the course of the confidential negotiations, Plaintiff shared highly confidential propriety information with Does 1 through 50, which if know by its competitors would result in competitive disadvantage to Plaintiff.

36. Does 1 through 50 knew of the highly sensitive nature of the information shared with them in negotiations but nonetheless deliberately and repeatedly, even after direct and explicit warnings from Plaintiff, engaged in a course of widening disclosures and use of Plaintiff's confidential, proprietary information, including, Plaintiff is informed and believes,

8

directly to competitors, potential investors and investment professionals, including, without limitation, participants in the intended Sales Process.

37. As a direct and proximate result of the foregoing, Plaintiff has been damaged in a presently unascertainable sum.

FIFTH CLAIM FOR RELIEF

(Intentional Interference With Contract)

(Against DOES 51 Through 100, Inclusive)

38. Plaintiff repeats and realleges paragraphs 1-20, inclusive, as if fully set forth herein.

39. Plaintiff is informed and believes and thereon alleges that at all relevant times, Does 51 through 100 were aware of the existence of the Telecast Agreement between Plaintiff and LAD.

40. Plaintiff is informed and believes and thereon alleges that despite knowledge of the Telecast Agreement between Plaintiff and LAD, Does 51 through 100 took actions that were intended to and did cause LAD to breach the Telecast Agreement, including, the confidentiality provisions in the Telecast Agreement and to anticipatorily breach the Future Acquisition Rights of the Telecast Agreement.

41. As a proximate result of the conduct of Does 51 through 100 alleged above, an actual disruption of the relationship between Prime Ticket and LAD under the Telecast Agreement has been caused to the harm and detriment of Plaintiff.

42. Plaintiff is informed and believes and thereon alleges that Does 51 through 100 threaten, unless restrained, to continue to take actions intended to cause LAD to materially breach the Telecast Agreement with Plaintiff, including, the confidentiality provisions in the Telecast Agreement and to breach the Future Acquisition Rights of the Telecast Agreement.

43. By virtue of the foregoing, Plaintiff is entitled to a temporary restraining order, preliminary injunction and/or a permanent injunction preventing Does 51 through 100, inclusive,

and all persons acting in concert with them, from taking any action to cause LAD to breach the Telecast Agreement with Plaintiff, including, the confidentiality provisions in the Telecast Agreement and to breach the Future Acquisition Rights of the Telecast Agreement, by engaging in the Sale Process, and by receiving information that is subject to the confidentiality provisions in the Telecast Agreement.

44. As a direct and proximate result of the foregoing, Plaintiff has been damaged in a presently unascertainable sum.

45. Plaintiff is informed and believes and thereon alleges that the acts of Does 51 Through 100 were willful, wanton, malicious and oppressive which justifies an award of punitive and exemplary damages against them in an amount to be determined by the trier-of-fact.

SIXTH CLAIM FOR RELIEF

(Negligent Interference With Contract)

(Against DOES 51 Through 100, Inclusive)

46. Plaintiff repeats and realleges paragraphs 1-20, inclusive, and paragraph 34, as if fully set forth herein.

47. Plaintiff is informed and believes and thereon alleges that Does 51 through 100 engaged in conduct that was intended or known to affect the contractual relationship between Plaintiff and LAD.

48. Plaintiff is informed and believes and thereon alleges that there was a foreseeable risk of harm to Plaintiff's contractual relationship with LAD if Does 51 through 100 failed to use ordinary care in engaging in conduct that was intended or known to affect the contractual relationship between Plaintiff and LAD.

49. By engaging in the conduct described herein, Does 51 through 100 negligently failed to take ordinary precautions to avoid interfering with the contractual relationship between Plaintiff and LAD.

50. The actions of Does 51 through 100 herein caused actual disruption of the

relationship between Plaintiff and LAD.

51. As a close, direct and proximate result of the foregoing conduct of Does 51 through 100, Plaintiff has been damaged in a presently unascertainable sum.

WHEREFORE, Plaintiff prays for judgment as follows:

(a) On the first claim for relief, for a declaration from this Court that (i) pursuant to the Telecast Rights Agreement Plaintiff has been granted and exclusively and indefeasibly enjoys property rights under the Future Acquisition Rights pursuant to applicable non-bankruptcy law; (ii) that LAD has anticipatorily breached the Future Acquisition Rights; (iii) that the Sale Process should not proceed except in conformity with the Future Acquisition Rights; (iv) that LAD must comply in good faith with the Future Acquisition Rights; and (v) any sale process or attempted disposition of the telecast rights in which Plaintiff holds its interest must be conducted in conformity with the Future Acquisition Rights.

(b) on the second claim for relief, for a judgment that Plaintiff is entitled to specific performance of the Telecast Agreement, including of the Future Acquisition Rights.

(c) on the third claim for relief, for a temporary restraining order, preliminary injunction and/or a permanent injunction to prevent LAD and Does 1 through 50, inclusive, and all persons acting in concert with them, from engaging in the Sale Process, from breaching the Future Acquisition Rights, from breaching the confidentiality provisions in the Telecast Agreement and from disclosing information that is subject to the confidentiality provisions in the Telecast Agreement to others, notwithstanding any rejection of the Telecast Agreement which may be approved by the Court.

(d) on the fourth claim for relief, for a temporary restraining order, preliminary injunction and/or a permanent injunction preventing Does 1 through 50, inclusive, and all persons acting in concert with them, from disclosing confidential information regarding negotiations with respect to the terms and conditions for Plaintiff's retention of media rights after the expiration of the Telecast Agreement.

(e) on the fifth claim for relief, for a temporary restraining order, preliminary injunction and/or a permanent injunction preventing Does 51 through 100, inclusive, and all persons acting in concert with them, from taking any action to cause LAD to breach the Telecast Agreement with Plaintiff, including, the confidentiality provisions in the Telecast Agreement and to breach the Future Acquisition Rights of the Telecast Agreement, by engaging in the Sale Process, and by receiving information that is subject to the confidentiality provisions in the Telecast Agreement.

(f) on the fifth claim for relief, for punitive and exemplary damages in an amount to be determined by the trier-of-fact;

(g) on the fourth, fifth and sixth claims for relief, for damages according to proof; and

(h) on all claims for relief, for cost of suit and such other and further relief as the Court may deem just and proper.

Dated: September 27, 2011    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Andrew R. Remming*
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Andrew R. Remming (No. 5120)
1201 North Market Street
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile:  (302) 658-3989
Email:  rdehney@mnat.com
Email:  gwerkheiser@mnat.com
Email:  aremming@mnat.com

and

RUTTER HOBBS & DAVIDOFF INCORPORATED

Paul J. Laurin (CA Bar No. 136287)
Bernard M. Resser (CA Bar No. 92873)
C. John M. Melissinos (CA Bar No. 149224)
Christian A. Jordan (CA Bar No. 235081)
Neeta Menon (CA Bar No. 254736)

1901 Avenue of the Stars, 17th Floor
Los Angeles, California 90067
Telephone: (310) 286-1700
Facsimile: (310) 286-1728
Email: plaurin@rutterhobbs.com
Email: jmelissinos@rutterhobbs.com
Email: cjordan@rutterhobbs.com
Email: nmenon@rutterhobbs.com

ATTORNEYS FOR FOX SPORTS NET WEST 2, LLC

4510467