IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LOS ANGELES DODGERS LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 11-12010 (KG) |
| LOS ANGELES DODGERS LLC,<br><br>Plaintiff,<br><br>v.<br><br>FOX SPORTS NET WEST 2, LLC d/b/a FSN PRIME TICKET,<br><br>Defendant. | Adv. Pro. No. 11-_____ ( KG) |

**COMPLAINT BY DEBTOR LOS ANGELES DODGERS LLC AGAINST FOX SPORTS NET WEST 2, LLC FOR ENFORCEMENT OF AUTOMATIC STAY AND FOR DAMAGES AND INJUNCTIVE RELIEF AS A RESULT OF VIOLATION OF THE <u>AUTOMATIC STAY</u>**

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number are: Los Angeles Dodgers LLC (3133); Los Angeles Dodgers Holding Company LLC (4851); LA Holdco LLC (2567); LA Real Estate Holding Company LLC (4850); and LA Real Estate LLC (3029). The location of the Debtors' corporate headquarters and the service address for the Debtors is: 1000 Elysian Park Avenue, Los Angeles, California 90012.

Debtor Los Angeles Dodgers LLC ("LAD"), by and through its counsel Dewey & LeBoeuf LLP and Young Conaway Stargatt & Taylor, LLP, hereby commences this adversary action against defendant Fox Sports Net West 2, LLC, doing business as FSN Prime Ticket ("Fox"), and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this adversary proceeding because it arises under and is related to the above-captioned chapter 11 case within the meaning of 28 U.S.C. §§ 1334(b) and 157(a) and (b).

2. This adversary proceeding is being brought pursuant to Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure. Venue is proper in this district.

3. This adversary proceeding is a core proceeding, and accordingly this Court has the power to enter final findings of fact and conclusions of law subject to review pursuant to 28 U.S.C. § 158.

## THE PARTIES

4. LAD is a Delaware limited liability company with its principal place of business at 1000 Elysian Park Avenue, Los Angeles, California 90012. LAD owns and operates the Los Angeles Dodgers Major League Baseball club (the "Dodgers"). LAD and certain of its affiliates are debtors-in-possession in the chapter 11 cases pending before this Court.

5. On information and belief, Fox is a Delaware limited liability company with its principal place of business at 10201 West Pico Boulevard, Los Angeles, California 90035, and is in the business of telecasting sports television entertainment, including baseball games of the Dodgers, to cable television subscribers of its "Prime Ticket" channel in Southern California and elsewhere.

## FACTUAL ALLEGATIONS

A. **The Fox Contract.**

6. In 2001, Los Angeles Dodgers, Inc. (the former owner of the Dodgers) and Fox entered into a Telecast Rights Agreement (as amended, the "Fox Contract").

2

7. Under the Fox Contract, which as amended expires at the end of the 2013 baseball season, Fox has certain rights, including the exclusive right to telecast 100 Dodgers regular season games each season during the term of the agreement.

8. In 2004, Fox, Los Angeles Dodgers, Inc. and LAD, in conjunction with the sale of the Dodgers, entered into an amendment to the Fox Contract under which the new owner of the Dodgers, LAD, assumed all the rights and obligations of Los Angeles Dodgers, Inc. under the Fox Contract, and Fox consented to such assignment.

9. Among other things, the Fox Contract contains a right of first negotiation that, if and to the extent enforceable, provides for LAD to negotiate exclusively with Fox from October 15 through November 30, 2012 with respect to the licensing of telecast rights following the 2013 baseball season. The Fox Contract also contains a limited right of first refusal that, if and to the extent enforceable, becomes applicable if LAD and Fox do not reach agreement during this exclusive negotiating period.

**B. The LAD Bankruptcy and Fox's Efforts to Exercise Control Over the Media Rights Belonging to the LAD Estate.**

10. On June 27, 2011, LAD commenced a voluntary case under chapter 11 of the Bankruptcy Code. LAD continues to operate its businesses and manage its properties as a debtor in possession as authorized by section 1107(a) of the Bankruptcy Code.

11. On July 15, 2011, LAD and the other Debtors filed an application to employ Blackstone Advisory Partners L.P. ("Blackstone Advisory"), as its financial advisor to identify and explore all available alternatives for LAD to reorganize, including obtaining access to the liquidity it needs in order to emerge from bankruptcy and operate its business. By order entered on September 30, 2011, the Bankruptcy Court authorized LAD and the other Debtors to employ Blackstone Advisory.

12. On November 2, 2011, LAD and Major League Baseball agreed to a process for LAD to sell the Dodgers and its attendant media rights in a manner designed to realize maximum value for the Dodgers and its stakeholders, including the team's owner, Frank McCourt.

3

13. On November 9, 2011, Fox's outside counsel sent a "cease and desist" letter to Blackstone Advisory (the "Fox Letter") that asserts, among other things, that Blackstone Advisory was "soliciting interest and/or bidders for a sale of the future media rights for the Dodgers and has represented to potential bidders for the team that it is in a position to negotiate a sale of the future media rights for the Dodgers." The Fox Letter falsely alleges that Blackstone Advisory has engaged in tortious interference, and demands

> that Blackstone [Advisory] and any other person or entity acting on its behalf, or within its control, immediately cease and desist from soliciting, encouraging, assisting or accepting any actual bids or potential bids for the telecast rights to Dodgers games or negotiating any such transaction. Further, [Fox] demands that Blackstone [Advisory] immediately cease and desist from making any statements claiming, explicitly or implicitly, that the [Fox Contract] and/or any of [Fox's] rights in that agreement are in any way invalid, inoperative, or not an obstacle to accepting bids for telecast rights to Dodgers games. And, [Fox] demands that Blackstone [Advisory] correct any prior false statements that it has the authority or legal right to solicit or accept any bids for the telecast rights to Dodgers games prior to November 30, 2012. Finally, we request that you provide within 48 hours confirmation that you will comply with the demands in this letter and fully honor [Fox's] rights under the [Fox Contract].

A true and correct copy of the Fox Letter is attached hereto as Exhibit A and is incorporated by reference.

14. The issuance of the Fox Letter was intended to interfere with the sale of the Dodgers and their assets in bankruptcy. It also constitutes an impermissible exercise of control over LAD's property in violation of Section 362(a)(3).

## FIRST CLAIM FOR RELIEF

**(For Enforcement of Automatic Stay and Temporary, Preliminary and Permanent Injunctions Barring Fox from Violating the Section 362 Automatic Stay)**

15. LAD hereby repeats and realleges paragraphs 1-14, inclusive, as if fully set forth herein.

16. 11 U.S.C. § 362 provides that the filing of a chapter 11 petition operates as an automatic stay of, among other things, "any act to obtain possession of property of the estate or

of property from the estate or to exercise control over property of the estate." *See* 11 U.S.C. § 362(a)(3). This automatic stay continues during the entire pendency of the chapter 11 proceeding unless and until a party that desires to exercise such control over the estate's property applies to the court for, and receives the court's permission to, exercise such control.

17. Upon its chapter 11 filing, LAD became entitled to, and remains entitled to, the benefits of the automatic stay. Accordingly, absent the Court's permission (which Fox has not obtained), Fox cannot take any act to obtain possession of any of property of the LAD estate, including without limitation LAD's existing or future media rights, or attempt to exercise any control over any such property.

18. The positions taken in, and the remedies demanded in, the Fox Letter violate the automatic stay in that Fox attempts to assert possession of, and exercise control over, property rights of the estate of LAD, including LAD's existing and future media rights.

19. The Fox Letter, which constitutes a deliberate attempt by Fox to interfere with the ability of LAD and its advisors, including Blackstone Advisory, to sell LAD's assets and otherwise to reorganize LAD's estate under chapter 11 of the Bankruptcy Code, constitutes a willful violation of the automatic stay. .

20. By virtue of the foregoing, LAD is entitled to enforce the automatic stay and is further entitled to a temporary restraining order, a preliminary injunction, and/or a permanent injunction to prevent Fox, and all persons acting in concert with Fox, from (a) taking any act to attempt to obtain possession of property of the LAD estate, including its existing and future media rights; (b) taking any act to attempt to exercise control over any property of the LAD estate, including its existing and future media rights; or (c) taking any act that otherwise interferes with any property rights of the LAD estate, including its existing and future media rights.

## SECOND CLAIM FOR RELIEF

### (For Damages Arising from Fox's Violation of the Automatic Stay In Contempt of Court)

21. LAD hereby repeats and realleges paragraphs 1-19, inclusive, as if fully set forth herein.

22. Fox is in contempt of court based upon its violation of the automatic stay.

23. Violations of the automatic stay and contempt of court can be remedied through an action brought by the debtor for damages incurred as a result of such violations.

24. Fox's efforts to take possession of property of the LAD estate and to exercise control over such property violate the automatic stay, as detailed above, are affecting and will continue to affect the estate adversely, including the efforts of the LAD estate to evaluate, market and potentially dispose of its existing and future media rights and to reorganize LAD's estate.

25. As a direct and proximate cause of Fox's willful conduct in violating the automatic stay, LAD has been damaged in an amount to be proven at trial, and will continue to incur damages after the filing of this complaint so long as Fox continues to violate the automatic stay.

## **PRAYER**

WHEREFORE, LAD prays for judgment against Fox as follows:

1. As to the First Cause of Action, for enforcement of the automatic stay including temporary, preliminary and permanent injunctive relief precluding Fox, and all persons acting in concert with Fox, from violating the automatic stay, including without limitation from (a) taking any act to attempt to obtain possession of property of the LAD estate, including its existing and future media rights; (b) taking any act to attempt to exercise control over any property of the LAD estate, including its existing and future media rights; or (c) taking any act that otherwise interferes with any property rights of the LAD estate, including its existing and future media rights;

2. As to the Second Cause of Action, for damages based upon Fox's violation of the automatic stay in contempt of court, in an amount to be proven at trial, and all appropriate pre-judgment and post-judgment interest on such damages in the highest amount permitted by law;

3. As to each cause of action, for LAD's attorney fees, costs and expenses incurred in this action; and

4. For such other and further relief as the Court may deem just and proper.

Dated: November 16, 2011

Respectfully submitted,

Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
Donald J. Bowman, Jr. (No. 4383)
Ryan M. Bartley (No. 4985)
The Brandywine Building 17th Floor
1000 West Street, Post Office Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

DEWEY & LEBOEUF LLP
Bruce Bennett
Sidley P. Levinson
Matthew Walsh
333 South Grand Avenue, Suite 2600
Los Angeles, California 90071
Telephone: (213) 621-6000
Facsimile: (213) 621-6100

*Co-Counsel for the Debtors
and Debtors in Possession*