**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| LOS ANGELES DODGERS LLC, *et al.*,[1] | ) | Case No. 11-12010 (KG) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Objection Deadline: March 23, 2012 at 4:00 p.m.** |
| | ) | **Hearing Date: April 13, 2012 at 10:00 a.m.** |
| | ) | **Re: Docket No. 1353** |

**LIMITED OBJECTION OF MAJOR LEAGUE BASEBALL TO CERTAIN PROVISIONS OF THE DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION**

The Office of the Commissioner of Baseball, doing business as Major League Baseball ("MLB"), hereby files this limited objection (the "Limited Objection") to the Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 1323] (the "Plan") filed by Los Angeles Dodgers LLC ("LAD") and its affiliated debtors and debtors in possession (collectively with LAD, the "Debtors") which are inconsistent with the Agreement Regarding Sale of the Los Angeles Dodgers Baseball Club and Stadium or Entities Owning Such Assets [Docket No. 911 Ex. B] (the "MLB Settlement") and the Rules and Regulations of MLB (the "MLB Rules and Regulations"). In support of its Limited Objection, MLB respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. The Court approved the MLB Settlement by and among MLB, Frank H. McCourt and the Debtors (collectively, the "Parties") by order dated January 11, 2012 [Docket

[1] The Debtors, together with the last four digits of each of the Debtors' federal tax identification numbers, are: Los Angeles Dodgers LLC (3133); Los Angeles Dodgers Holding Company LLC (4851); LA Holdco LLC (2567); LA Real Estate Holding Company LLC (4850); and LA Real Estate LLC (3029). The location of the Debtors' corporate headquarters and the service address for the Debtors is 1000 Elysian Park Avenue, Los Angeles, CA 90012.

No. 1164] (the "Order Approving MLB Settlement"). In accordance with its obligations under the MLB Settlement, MLB has taken and will continue to take all actions necessary to obtain confirmation of a plan of reorganization for the Debtors implementing the MLB Settlement. Indeed, the MLB Settlement requires the Debtors and MLB to "cooperate ... in connection with the filing and confirmation of plans of reorganization consistent with the terms [of the MLB Settlement]." MLB Settlement at 3. Although MLB requested an extension (even a short one) of the objection deadline to try to resolve this Limited Objection, the Debtors refused to consent to any extension.

2. Put simply, the Plan contains certain provisions that are inconsistent with the MLB Settlement and the MLB Rules and Regulations.[2] First, Sections 9.7(b) and (c) and 9.9 of the Plan contain an improper third party release and injunction that purports to bind MLB. The MLB Settlement expressly provides that the Parties will exchange mutual releases in accordance with the MLB Settlement (the "Mutual Releases"). By agreeing to exchange Mutual Releases under the MLB Settlement, MLB did not agree to be bound by ***any*** Plan release and injunction—particularly an overly broad, non-consensual third party release and injunction contrary to Third Circuit precedent. Indeed, the Plan release and injunction is so overly broad that it could be construed to release numerous persons (including Dodgers' players, coaches, personnel, etc.) from violations of MLB Rules and Regulations.

3. Second, the Plan purports to impose a cap on post-petition interest accruing on claims of MLB against the Debtors by limiting interest on such claims to the federal judgment rate (the "Post-Petition Interest Cap")—yet MLB never agreed to any Post-Petition

---

[2] MLB continues to investigate the new provisions of the Plan that purport to transfer certain assets of the Debtors to Mr. McCourt and his affiliates, including the "Excess Real Property" and the "Parking Receivable." See Plan §§ 3.2(e)ii and 4.11. Such transfers of the Debtors' assets are not contemplated by the MLB Settlement and, accordingly, MLB hereby notes its potential objections with respect to such transfers and reserves all of its rights to raise such objections in connection with confirmation of the Plan.

Interest Cap on its claims under the MLB Settlement.[3] See Plan § 3.2(c) (limiting post-petition interest accruing on prepetition unsecured claims at the federal judgment rate of 0.17%). Rather, such claims continue to accrue interest at the applicable non-bankruptcy rate. Moreover, the Plan contains another provision (Section 5.2) purporting to eliminate ***all*** other claims for post-petition interest. See Plan § 5.2 ("No Post-Petition Interest on Claims"). In these chapter 11 cases, MLB has claims against the Debtors, among other things, arising from (i) the $150 million debtor in possession financing facility ("DIP Claims"), (ii) prepetition claims under the Baseball Agreements ("Prepetition Claims"), (iii) post-petition claims under the Baseball Agreements ("Post-Petition Claims"), and (iv) cure amounts arising from the Debtors' assumption of the Baseball Agreements ("Cure Claims" and collectively with the DIP Claims, Prepetition Claims and Post-Petition Claims, the "MLB Claims"). To the extent Section 5.2 of the Plan seeks to eliminate post-petition interest accruing on some or all of the MLB Claims, MLB objects to such provision.

4. Third, the Plan's retention of jurisdiction provision (Article X.(k)) with respect to the MLB Settlement is inconsistent with, and arguably broader than, the retained jurisdiction provision contained in the Order Approving MLB Settlement. To avoid any inconsistency, the order confirming the Plan (the "Confirmation Order") should provide that in the event of any conflict between the Plan's retention of jurisdiction provision and the Order Approving MLB Settlement, the Order Approving MLB Settlement shall control.

---

[3] In correspondence, the Debtors erroneously contend the Mutual Releases constitute a general release that bars MLB's claims. MLB disputes the Debtors' contention—which dispute is to be resolved by Judge Farnan in accordance with the MLB Settlement.

5. Finally, Section 4.10 of the Plan provides that the MLB Settlement shall be enforceable by the Purchaser.[4] However, the yet-to-be-named Purchaser is not a party to the MLB Settlement. Rather, the MLB Settlement is enforceable by the Debtors (and their successors, the Reorganized Debtors).

6. Accordingly, MLB respectfully requests that these objectionable provisions be modified or severed from the Plan as set forth herein. See Plan § 11.10.[5]

## BACKGROUND

7. On June 27, 2011 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), thereby commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

8. The Debtors continue to manage their estates as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.

---

[4] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

[5] Section 11.10 of the Plan provides:

> If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration or interpretation.

Plan § 11.10.

9. On July 13, 2011, the Office of the United States Trustee appointed the official committee of unsecured creditors in these Chapter 11 Cases. As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.

10. On November 2, 2011, the Parties entered into the MLB Settlement, which was approved by the Order Approving MLB Settlement dated January 11, 2012 [Docket No. 1164]. The MLB Settlement provides that Mr. McCourt and the Debtors shall sell the Los Angeles Dodgers Baseball Club (the "Team"), and that MLB will cooperate with and support the filing and confirmation of a plan of reorganization implementing the MLB Settlement and the sale of the Team. MLB Settlement at 1, 3. In accordance with the MLB Settlement, the Debtors, in consultation with Blackstone, are currently conducting a process for the sale of the Team.

11. On January 20, 2012 the Debtors filed a Chapter 11 Plan of Reorganization [Docket No. 1199] (the "Original Plan") and disclosure statement in support thereof [Docket No. 1200]. Following multiple objections to the Original Plan and disclosure statement, on February 17, 2012, the Debtors filed the Plan (as amended) and the disclosure statement in support of the Plan [Docket No. 1324] (the "Disclosure Statement"). The Disclosure Statement was approved by order dated February 22, 2012 [Docket No. 1353] (the "Disclosure Statement Order"). The Disclosure Statement Order fixes March 23, 2012 as the deadline to object to the Plan.

12. Pursuant to the Plan, all classes of claims and interests are unimpaired and deemed to accept the Plan, except for Existing Interests in LA Holdco LLC ("HoldCo"). Plan at §§ 3.1, 3.2. Correspondingly, only votes from Existing Interests in HoldCo have been solicited to accept or reject the Plan [Docket No. 1353].

## LIMITED OBJECTION

### I. The Third Party Releases and Injunction in the Debtors' Plan are Impermissible

13. MLB objects to certain releases and injunction contained in the Plan. Specifically, the (i) "Release by Holders of Claims and Interests" contained in Section 9.7(b) of the Plan (the "Third Party Releases") and (ii) the "Injunction Related to Releases and Exculpation" contained in Section 9.9 of the Plan (the "Third Party Injunction" and, together with the Third Party Releases, the "Third Party Releases and Injunction") are not provided for in the MLB Settlement and constitute impermissible nonconsensual releases under Third Circuit precedent.

14. The Plan contains extremely broad third party releases and an injunction permanently enforcing those releases. Plan at §§ 9.7(b), 9.9. The Third Party Releases, in pertinent part, provide that:

> *Releases by Holders of Claims and Interests. Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all holders of Claims and Interests, in consideration for the obligations of the Debtors under this Plan, the Plan Consideration and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, and each entity (other than a Debtor) that has held, holds or may hold a Claim or Interest, as applicable, will be deemed to have consented to this Plan for all purposes and the restructuring embodied herein and deemed to forever release, waive and discharge all claims, demands, debts, rights, causes of action or liabilities (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan), including, without limitation, any claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtors commencing the Reorganization Cases or as a result of this Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or*

> *unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganization Cases, this Plan or the Disclosure Statement against any Released Party; provided, however, that in no event shall anything in this **Section 9.7(b)** be construed as a release of any Person's gross negligence, fraud or willful misconduct for matters with respect to the Debtors and their Subsidiaries and/or affiliates (the "**Third Party Release**").*

Plan § 9.7(b) (emphasis in original). Further, the Plan contains a Third Party Injunction permanently enforcing those releases. Specifically, the Plan provides that "[t]he Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity . . . of any Claims . . . released in [Section 9.7] of this Plan." Plan § 9.9.

15. MLB, however, has never agreed to the broad releases and the injunction contained in the Plan's Third Party Releases and Injunction. Rather, the only releases MLB has agreed to in connection with the Debtors' Chapter 11 Cases are the Mutual Releases to be exchanged by the Settling Parties under the MLB Settlement. Specifically, the Mutual Releases provide that:

> MLB and the Commissioner, on the one hand, and the Debtors and McCourt (and all his children), on the other hand, shall exchange mutual releases on behalf of themselves and their respective affiliates, insiders, shareholders, members, managers, directors, officers[,] employees and advisors.

MLB Settlement at 3. The Mutual Releases contemplate only a future release of claims, under which releases "shall" be exchanged by the Settling Parties. Those Mutual Releases, which are currently in the process of being negotiated, finalized and executed in accordance with the MLB Settlement, contain no agreement by MLB to provide broad plan releases and an injunction of claims against third party, non-debtors as contemplated by the Third Party Releases and Injunction.

16. The Debtors, in their Omnibus Reply in Support of Motion for Order Approving Disclosure Statement [Docket No. 1327] (the "Omnibus Reply"), claim that by removing the words "affiliates" and "insiders" from the Plan's definition of "Representatives," they have appropriately addressed and remedied the scope of the Third Party Releases and Injunction. See Omnibus Reply at 4; Plan § 1.96. However, even as amended, the Third Party Releases and Injunction have not been agreed to by MLB or any other unimpaired creditor.

17. Because MLB has not expressly agreed to the Third Party Releases and Injunction, those releases are not consensual releases. See In re Zenith Elecs. Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999) (allowing release by any creditor who actually voted in favor of the plan) (reversed on other grounds); In re Arrowmill Dev. Corp., 211 B.R. 497, 506 (Bankr. D.N.J. 1997) ("When a release of liability of a nondebtor is a consensual provision, however, agreed to by the effected [sic] creditor, it is no different from any other settlement or contract[.]"). Moreover, because MLB has not voted (and, as an unimpaired creditor, will not vote) on the Plan, MLB has not affirmatively accepted the Third Party Releases and Injunction by virtue of an accepting Plan vote. See In re Washington Mutual, Inc., 442 B.R. 314, 358 (Bankr. D. Del. 2011) (concluding that "any third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases."); In re EBHI Holdings, Inc., No. 09-12099, 2010 WL 3493027, at *22 (Bankr. D. Del. Mar. 18, 2010) (holding that "[e]ach Person who voted in favor of the Plan shall be deemed to have specifically consented to the releases and injunction set forth in the Plan."). Thus, MLB has not consented to the Third Party Releases and Injunction, and without the consent of MLB (or any other unimpaired creditor), the Third Party Releases and Injunction are not permissible as consensual releases.

18. Numerous courts within the Third Circuit (including courts in this district) have held that nonconsensual third party releases are completely impermissible. See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 335 (Bankr. D. Del. 2004) ("[T]he provision of a plan of reorganization which purports to grant a release of claims by third parties against a non-debtor cannot be approved . . . . The Trustee (and the Court) do not have the power to grant a release of [creditors] on behalf of third parties."); In re Arrowmill Dev. Corp., 211 B.R. 497, 506 (Bankr. D.N.J. 1997) ("Keeping in mind the Third Circuit's analysis that section 524(e) specifically limits the scope of the discharge, and that the Bankruptcy Code does not contemplate a discharge of nondebtors, this court holds that plans of reorganization may not contain provisions which discharge nondebtors.").

19. Indeed, although the United States Court of Appeals for the Third Circuit has declined to establish a "blanket" rule with respect to the permissibility of nonconsensual third party plan releases, it has emphasized that such releases cannot be granted absent extraordinary circumstances. In re Continental Airlines, 203 F.3d 203, 213-15 (3d Cir. 2000); see also In re Tribune Co., 464 B.R. 126, 179 (Bankr. D. Del. 2011) ("The Continental Court determined that non-consensual releases by a non-debtor of other non-debtor third parties are to be granted only in extraordinary cases.") (internal quotations omitted); In re Genesis Health Ventures, Inc., 266 B.R. 591, 608 (Bankr. D. Del. 2001) (noting that non-consensual release of third party claims may be appropriate only in certain extraordinary circumstances).

20. The hallmarks of permissibility for nonconsensual third party releases, as referenced in Continental, are "fairness, necessity to the reorganization, and specific factual findings to support these conclusions[.]" In re Continental Airlines, 203 F.3d at 214. Courts within the Third Circuit have further expanded upon this standard by also evaluating whether: (i)

the release was necessary to the success of the reorganization, (ii) the releasees provided a critical financial contribution to the debtor's plan, (iii) the releasees' financial contribution was necessary to make the plan feasible, and (iv) the non-consenting creditors received reasonable compensation in exchange for the release. See, e.g., In re Genesis Health Ventures, Inc., 266 B.R. at 607-08; In re Exide Techs., 303 B.R. 48, 75 (Bankr. D. Del. 2003). Under these standards and the circumstances of these Chapter 11 Cases, the Third Party Releases and Injunction are clearly impermissible.

21. First, the Debtors are admittedly solvent. The cash distributions to creditors under the Plan represent their lawful recoveries and priority of distribution from the proceeds from the sale of the Debtors' assets – not compensation from any released parties. Second, creditors such as MLB are ***unimpaired*** under the Plan, requiring that all legal, equitable and contractual rights of such creditors be left ***unaltered*** by the Plan in accordance with section 1124 of the Bankruptcy Code.

22. Moreover, the Mutual Releases under the MLB Settlement are separate and distinct ***contractual*** releases in stark contrast to the ***non-consensual*** ones proposed by the Debtors in the Plan. See MLB Settlement at 4. Nowhere in the MLB Settlement did MLB consent to the Third Party Releases and Injunction contained in the Plan.

23. Additionally, the Third Party Releases and Injunction are not necessary to the Debtors' reorganization. The most significant effect of such releases on the Debtors and their Representatives, relief from the burdens of any potential litigation on released third party claims, has no bearing on the Debtors' ability to effectuate the Plan and successfully reorganize, and does not make the Third Party Releases and Injunction necessary to the reorganization. See, e.g., In re Spansion, Inc., 426 B.R. 114, 145 (Bankr. D. Del. 2010) ("[R]elieving the Reorganized

Debtors and their management from the distractions of litigation does not make the non-consensual releases 'necessary to the reorganization.'").

24. In short, the Third Party Releases and Injunction are not necessary to the Debtors' reorganization, and deprive MLB of the value of its claims in exchange for nothing in return. Accordingly, the Third Party Releases and Injunction cannot be approved under Third Circuit precedent.

## II. The Federal Judgment Rate of Post-Petition Interest Provided in the Debtors' Plan is Inequitable

25. In the Plan, the Debtors propose paying postpetition interest to General Unsecured Claims at a rate of 0.17%, which was the federal judgment rate as of the Petition Date:

> [E]ach holder of Allowed General Unsecured Claim . . . shall receive Cash from the Sale Proceeds equal to 100% of the Allowed amount of such General Unsecured Claim plus simple interest from the Commencement Date at the Federal judgment rate of 0.17% per annum in effect on the Commencement Date[.]

Plan § 3.2(c)(ii). To the extent the Plan purports to pay MLB's unimpaired claims anything less than the applicable contract or state law interest rates, such treatment is clearly inappropriate.

26. As stated above, the MLB Claims consist of (i) DIP Claims, (ii) Prepetition Claims, (iii) Post-Petition Claims, and (iv) Cure Claims. Thus, the MLB Claims all continue to accrue postpetition interest, and are administrative and/or unimpaired claims under the Plan. Moreover, even if the MLB Claims are considered prepetition unsecured claims, because the Plan purports to unimpair all claims against the Debtors, MLB is entitled to receive postpetition interest as provided under applicable non-bankruptcy law. Accordingly, and as explained further below, MLB is entitled to receive postpetition interest at the applicable contract or state statutory rates.

*A. The MLB Claims are Administrative Claims Entitled to Postpetition Interest at Applicable State or Contract Law Rates*

27. MLB is entitled to postpetition interest in connection with the MLB Claims because those claims are properly classified as administrative expense claims. See In re Paolino, 1991 WL 284107, at * 11 (Bankr. E.D. Pa. Jan. 11, 1991) (holding that creditors are entitled to postpetition interest on claims for administrative expenses); In re F.A. Potts & Co., Inc., 114 B.R. 92, 94 (Bankr. E.D. Pa. 1990) (holding that postpetition interest on section 503(b)(1) administrative claims was allowable as an administrative expense).

28. First, the Plan specifically provides that all agreements between MLB and the Debtors will be assumed:

> The Plan shall constitute a motion to assume and, to the extent applicable, assign to the Reorganized Debtors all executory contracts and unexpired leases that have not been previously assumed, other than those executory contracts and unexpired leases that are listed on Exhibit 7.1 to the Plan[.]

Plan § 7.1. Such assumed agreements include the MLB Constitution, as well as the various related agreements rules, guidelines, regulations, bulletins, directives, policies, decisions and requirements of MLB adopted thereunder (the "MLB Agreements"). See Plan § 1.68.

29. Prior to and after the Petition Date, MLB incurred certain fees, costs, and expenses on behalf of MLB member clubs in connection with the MLB Agreements. In order to properly assume and assign the MLB Agreements, the Debtors must satisfy all of the Cure Claims by payment in cash. Plan § 7.3,[6] 11 U.S.C. § 356(b)(1). Further, the Cure Claims are

---

6 Section 7.3 of the Plan provides:

> Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to [Section 7.1] of the Plan[,] any monetary amounts by which each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to the Plan is in default for the period prior to the Effective

properly classified as section 503(b)(1) administrative expense claims. See N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531-32 (1984) ("Should the debtor in possession elect to assume the executory contract, however, it assumes the contract cum onere . . . and the expenses and liabilities incurred may be treated as administrative expenses.") (internal citation omitted).

30. Where, as in the instant case, debtors are required to pay accrued post-petition interest on administrative expense claims—particularly those stemming from the assumption of executory contracts and unexpired leases in default—applicable state and contract rates apply. See In re Valley View Shopping Center, L.P., 260 B.R. 10, 25-26 (Bankr. D. Kan. 2001) (holding that the assumption and cure of the debtor's prepetition lease default required payment of postpetition interest at the contract rate); In re Entertainment, Inc., 223 B.R. 141, 150-51 (Bankr. N.D. Ill. 1998) (holding that party that is forced to continue performance of a lease or executory contract is entitled to the full benefit of the bargain); In re Tech Hifi, Inc., 49 B.R. 876, 881 (Bankr. D. Mass. 1985) (holding that unless the debtor produces evidence that the contract rate of interest is unreasonable, debtor must pay interest at the rate specified and reserved under the contract) (superseded on other grounds by statute).

31. Second, MLB has incurred significant fees and expenses under the $150M Debtor-in-Possession financing facility approved by Order of the court on August 8, 2011 [Docket No. 339]. The DIP Claims are attached hereto in Annex A. Pursuant to the Final Order Authorizing Debtors To Obtain Postpetition Financing (the "DIP Order") [Docket No. 339], the DIP Claims are also properly classified as section 503(b)(1) administrative claims. DIP Order at ¶ 5 ("[MLB] is hereby granted, pursuant to section 364(b) of the Bankruptcy Code, an allowed

---

date shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code by payment of such "Cure Amount" in Cash[.] Plan at 7.3.

Plan § 7.3

Administrative Expense Claim under section 503(b)(1) of the Bankruptcy Code for all DIP Obligations.") Therefore, the proper post-petition interest rate for the MLB Claims is any applicable contract or state judgment rate, not the federal judgment rate included in the Plan.

32. Further, section 1129(a) of the Bankruptcy Code requires that in order to confirm a plan, all claims under section 507(a)(2) (including administrative expenses under section 503(b)(1)) must "receive on account of such claim cash equal to the allowed amount of such claim[.]" 11 U.S.C. § 1129(a)(9)(A). Therefore, interest on the MLB Claims must be paid at the rate they are entitled to under applicable law, which, as stated above, is the applicable contract or state judgment rate.

*B. As Unimpaired Claims, the MLB Claims Must Receive Postpetition Interest at State or Contract Law Rates*

33. The MLB Claims are entitled to postpetition interest at applicable state or contract law rates because (1) the Plan purports to unimpair *all* claims such that no class of creditors (except Existing Interests in HoldCo) will vote on the Plan, and (2) even if classified as General Unsecured Claims, the MLB Claims are entitled to postpetition interest at a rate higher than the federal judgment rate provided in the Plan. Plan §§ 4.1, 4.2. The Plan provides:

> Class 1E (Existing Interests in HoldCo) is impaired and entitled to vote or reject the plan . . . . [All other Classes] of the Plan are unimpaired by the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of such Allowed Claims and Interests are conclusively deemed to have accepted the Plan and are therefore not entitled to vote to accept or reject the plan.

Id.

34. Pursuant to section 1124 of the Bankruptcy Code, a claim is unimpaired under a plan only if the plan "leaves unaltered the legal, equitable, and contractual rights to which [a] claim or interest entitles the holder of such claim or interest[.]" 11 U.S.C § 1124(1); In re Montgomery Ward, LLC, 634 F.3d 732, 740 (3d Cir. 2011) (providing that under section

1124(1) "a claim is unimpaired if the plan 'leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitled the holder of such claim or interest'"). Thus, to accurately classify and treat the MLB Claims as unimpaired, the Plan must provide them with the full value to which they are legally, equitably and contractually entitled, including the rate of postpetition interest to which MLB is entitled under applicable non-bankruptcy law. See In re PPI Enterprises (U.S.), Inc., 324 F.3d 197, 206-07 (3d Cir. 2003) (stating that in order for a claim to be classified as unimpaired, the claimant must receive the full value of the claim, including all postpetition pre-confirmation interest arising from such claim). Additionally, such interest must be paid at applicable state and contract law rates, rather than the significantly lower federal judgment rate. See In re LaGuardia Associates, L.P., No. 04-34512, 2006 WL 6601650, at *45 (Bankr. E.D. Pa. Sept. 13, 2006) (providing that a finding that a creditor is unimpaired within the meaning of section 1124 automatically provides the right to impose or retain the contractual or market rate of interest); In re Route One West Windsor Ltd. P'ship., 225 B.R. 76, 83 (Bankr. D. N.J. 1998) (finding a creditor improperly classified as unimpaired where the defaulting debtor failed to provide the applicable default rate of interest provided in the contract).

35. In their Omnibus Reply addressing certain objections made to the approval of the Disclosure Statement regarding postpetition interest, the Debtors contend that, under the precedent of this Court, the federal judgment rate is the appropriate rate for determining postpetition interest on the claims of MLB and other creditors under section 1129(a)(7) of the Bankruptcy Code. Omnibus Reply at ¶ 19 (citing In re Washington Mutual, Inc., 461 B.R. 200, 241-43 (Bankr. D. Del. 2011)). Such arguments regarding the "best interests of creditors" test and the proper rate of interest provided under section 726(a)(5) of the Bankruptcy Code are irrelevant. Although it is true that the Plan must satisfy section 1129(a)(7) to be confirmed, the

best interests test merely provides no more than a floor recovery for unsecured creditors (i.e., creditors must receive at least as much property as they would receive in a chapter 7 liquidation). See In re Washington Mutual, Inc., 442 B.R. at 358 (stating that "the federal judgment rate was the minimum that must be paid to unsecured creditors in a solvent debtor case under a plan to meet the best interest of creditors' test," but that the court has discretion to alter it); In re Coram Healthcare Corp., 315 B.R. at 346 ("[W]e are not persuaded . . . that section 1129(b) *requires* the use of the federal judgment rate for post-petition interest to be paid under a chapter 11 plan of reorganization. Instead, we conclude that the specific facts of each case will determine what rate of interest is 'fair and equitable'.") (emphasis in original). Section 1129(a)(7) does not limit in any way the amount of value (including postpetition interest) that creditors are entitled to receive under a plan.

36. Here, as explained above, all claims (including the MLB Claims) are purportedly unimpaired under the Plan and, thus, deemed to have accepted the Plan without casting a ballot. Consequently, regardless of what the floor rate of postpetition interest would be under the best interests test, the Debtors must provide such claims with all of their legal, equitable and contractual rights as existed prior to the Petition Date—including postpetition interest at whatever rate is available to such creditors under applicable nonbankruptcy law.

## III. The Retention of Jurisdiction Provision Should be Clarified

37. Article X.(k) of the Plan includes retention of jurisdiction language concerning the MLB Settlement that is inconsistent with, and arguably broader than, the retained jurisdiction provision contained in the Order Approving MLB Settlement. Specifically, Article X.(k) provides:

> [The Bankruptcy Court shall retain exclusive jurisdiction] ***[t]o take any action and issue such orders***, including any such action or orders as may be necessary after occurrence of the Effective Date

> and/or consummation of the Plan and the Purchase Agreement, ***as may be necessary to construe, enforce, implement, execute, and consummate*** this Plan, the Purchase Agreement, and ***the MLB Settlement***, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan, the Purchase Agreement, and ***the MLB Settlement following consummation***;

Plan, Article X.(k).

38. In contrast, the Order Approving MLB Settlement provides that "except as otherwise provided in the Agreement with respect to disputes to be resolved by the Mediator, this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or enforcement of this Order." Order Approving MLB Settlement. To avoid any inconsistency between the Plan and the Order Approving MLB Settlement, the Confirmation Order should provide that in the event of any conflict between the Plan's retention of jurisdiction provisions and the Order Approving MLB Settlement, the Order Approving MLB Settlement shall control.

## IV. <u>MLB Settlement Enforcement</u>

39. The Plan, as amended, provides that "the Confirmation Order shall provide that the MLB Settlement (including, for avoidance of doubt, the Special Terms Related to Sale of the Los Angeles Dodgers Baseball Club) shall remain in effect and ***enforceable by the Purchaser*** and the Reorganized Debtors." Plan § 4.10 (emphasis added). Although the MLB Settlement will remain in effect post-confirmation and be enforceable by the Reorganized Debtors, the Purchaser (defined as "the Person(s) identified in the Purchase Agreement as the purchaser", Plan § 1.89) is not a party to the MLB Settlement. Accordingly, MLB objects to the extent the Plan provides the non-party Purchaser with enforcement rights beyond the scope of the MLB Settlement.

## V. Reservation of Rights

40. MLB reserves all of its rights to be heard in connection with this Limited Objection at the Confirmation Hearing and any other proceedings concerning the Plan, including the right to raise any additional grounds and arguments with respect thereto.

## CONCLUSION

For the foregoing reasons, MLB respectfully requests that the Plan be modified consistent with this Limited Objection.

Dated: March 23, 2012
Wilmington, Delaware

**OFFICE OF THE COMMISSIONER OF BASEBALL**

By: ______________________

Jeffrey M. Schlerf (DE ID No. 3047)
Eric M. Sutty (DE ID No. 4007)
Carl D. Neff (DE ID No. 4895)
L. John Bird (DE ID No. 5310)
FOX ROTHSCHILD LLP
919 Market Street, Suite 1600
Wilmington, DE 19801-2323
Telephone: (302) 654-7444
Facsimile: (302) 656-8920

-and-

Thomas E Lauria
Glenn M. Kurtz
John K. Cunningham
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

-and-

Bradley I. Ruskin
Jeffrey W. Levitan
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000

-and-

Mark K. Thomas
Jeremy T. Stillings
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, IL 60602-4342
(312) 962-3550

*Counsel to the Office of the Commissioner of Baseball*