**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LOS ANGELES DODGERS LLC, *et al.*,[1] | ) Case No. 11-12010(KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Objection Deadline: April 15, 2013 at 3:00 p.m. (*Requested*)** |
| | ) **Hearing Date: April 15, 2013 at 3:00 p.m. (*Requested*)** |

**LOS ANGELES DODGERS LLC'S**
**MOTION TO ENFORCE CONFIRMATION ORDER**

TO THE HONORABLE KEVIN GROSS, CHIEF UNITED STATES BANKRUPTCY JUDGE:

Los Angeles Dodgers request that this Court enforce its confirmation order against Jamie McCourt and Frank McCourt to prevent them from discovering, disclosing or using confidential mediation materials from this case in their unrelated divorce proceedings. Early in this case, the Court appointed Judge Farnan as a mediator to resolve various disputes between Debtors and MLB. As is customary and consistent with Delaware's local rules, the Court ordered that information prepared for the mediation and disclosed to Judge Farnan remain confidential and that such information could not be used in "any" court proceeding. This order applies to, among other documents, a presentation made by Debtors to Judge Farnan at his request.

Although the McCourts' divorce litigation was seemingly resolved with a final judgment on January 19, 2012, Jamie filed a motion to set aside the judgment on September 24, 2012. Discovery ensued. Among the documents sought by Jamie is the mediation presentation described above. The production of this document would violate the Court's order relating to

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number are: Los Angeles Dodgers LLC (3133); Los Angeles Dodgers Holding Company LLC (4851); LA Holdco LLC (2567); LA Real Estate Holding Company LLC (4850); and LA Real Estate LLC (3029). The location of the Debtors' corporate headquarters and the service address for the Debtors is: 1000 Elysian Park Avenue, Los Angeles, California, 90012.

mediation confidentiality and Delaware's local rules. Thus, as both Jamie McCourt and Frank McCourt are subject to this Court's continuing jurisdiction (as holders of claims and beneficiaries of the consummation of the Plan), the Court should enter an order directing them to cease discovering (or attempting to discover), disclosing or using confidential mediation materials or information in their divorce litigation.

## PRELIMINARY STATEMENT

1. The issue before the Court is whether Jamie McCourt can seek to discover, Frank McCourt can produce or either of them use, materials that were prepared for and used in a mediation between the Debtors and Major League Baseball and as such were ordered by this Court to be kept confidential.

2. The answer to this question is clearly no. The Court entered an Order that all materials disclosed during mediation "shall remain confidential." (Dkt. No. 519.) By pursuing discovery of confidential mediation materials, Jamie is violating this Court's Confirmation Order, which incorporates all of the Court's previous orders in this case and enjoins Jamie from failing to comply with any of the Court's orders. Perhaps even worse, compliance with Jamie's discovery requests would force Frank McCourt to violate the Court's orders and the local rules by producing those confidential mediation materials when the parties who created those materials – the Debtors – did not authorize their disclosure.

3. Accordingly, the Court should enforce its Confirmation Order and the local rules by ruling that: (a) the presentation at issue is subject to the Court's order; (b) prohibiting Jamie from seeking confidential mediation material or information; (c) precluding Frank from disclosing such material or information.

## RELEVANT BACKGROUND

### A. Bankruptcy Proceedings

4. The Court appointed Judge Joseph J. Farnan, Jr. as Mediator on July 5, 2011, in connection with disputes arising between Debtors and MLB. (Dkt. No. 519.) In appointing Judge Farnan, the Court ordered that "[t]he mediation proceedings are settlement negotiations, and all offers, promises, conduct and statements, whether written or oral, made in the course of the proceedings, are inadmissible in any arbitration or court proceeding, to the extent otherwise allowed by applicable state law." (*Id.* at ¶ 5.) The Court further ordered that "[i]nformation disclosed to the Mediator in private session *shall remain confidential* unless the party authorizes disclosure." (*Id.* (emphasis added).)

5. The mediation was also governed by Local Rule 9019-5(d), which provides:

> **Protection of Information Disclosed at Mediation**. The mediator and the participants in mediation are prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation. No person may rely on or introduce as evidence in any arbitral, judicial or other proceeding, evidence pertaining to any aspect of the mediation effort, including but not limited to: (A) views expressed or suggestions made by a party with respect to a possible settlement of the dispute; (B) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator; (C) proposals made or views expressed by the mediator; (D) statements or admissions made by a party in the course of the mediation; and (E) documents prepared for the purpose of, in the course of, or pursuant to the mediation.

Frank McCourt was an officer of the Dodgers, a participant in the mediation, and an individual signatory to the settlement agreement that ultimately resulted from the mediation. He is therefore bound by Local Rule 9019-5(d).

6. The parties proceeded in mediation with Judge Farnan over the course of several months through plan confirmation. During that time, as one would expect, they communicated with Judge Farnan openly and freely – in the spirit of good faith negotiation and compromise –

without fear that their statements could subsequently be used without their permission in any way. As the Court is well aware, Judge Farnan was immensely successful in bringing the parties together to resolve numerous complex and important disputes.

7. In part due to the efforts of Judge Farnan, the Court was able to confirm the Plan of Reorganization on April 6, 2012 (the "Confirmation Order"). (Dkt. No. 1632.) The Confirmation Order incorporated, *inter alia*, "all orders entered" in the case, including the Order appointing Judge Farnan as the Mediator. (*Id.* at ¶ D.)

8. The Confirmation Order, by its express terms, is binding on both Jamie and Frank McCourt. The order applies to "all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates . . . ." (*Id.* at Article 9.6(a).) Both Jamie McCourt and Frank McCourt filed proofs of claims and are thus holders of Claims subject to the order. In fact, both Jamie McCourt and Frank McCourt meaningfully participated in the bankruptcy proceedings and were ably represented by counsel in the process.

9. Through their participation in the bankruptcy process, Jamie McCourt and Frank McCourt consented to the entry of an injunction precluding them from interfering with the administration of the Plan or the Court's orders:

a. Article 9.5 of the Confirmation Order provides that "all Holders of Claims and Interests . . . shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan." (*Id.* at Article 9.5.)

b. Article 9.6 of the Confirmation Order provides that "all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from . . . acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law." (*Id.* at Article 9.6(a).)

c. Article 9.6 further provides that "[e]ach holder of an Allowed Claim or Allowed Interest shall be deemed to have specifically consented to the injunction set forth herein." (*Id.* at Article 9.6(b).)

10. Of course, this Court has jurisdiction to prevent participants in the bankruptcy from interfering with the Plan or the Court's orders. Article X(f) of the Confirmation Order provides that this Court "shall retain exclusive jurisdiction . . . [to] take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court." (*Id.* at Article X(f).)

**B. The Divorce Proceedings**

11. In 2009, Jamie McCourt instituted divorce proceedings in Los Angeles County Superior Court (*In re Marriage of McCourt*, Case No. BD 514309). After lengthy litigation, Frank and Jamie reached an agreement regarding the division of their assets and executed the Binding Term Sheet on October 11, 2011. (Ex. B.) Under the term sheet, Jamie received, among other things, a tax-free $131 million dollar payment, and over $50 million in real estate, and Frank received the Dodger Assets.[2] The term sheet was eventually incorporated into a Stipulated Judgment, which was entered on January 19, 2012. (Ex. C.)

12. In the Stipulated Judgment, Jamie acknowledged and specifically waived her right to obtain further discovery concerning the value of the Dodger Assets. (*Id.* at ¶¶ I, J.) Jamie also acknowledged that "the value of the Dodgers Assets has been a contentious issue of dispute, with the parties offering values covering a broad range," and that she was "willing to enter into this Stipulated Judgment regardless of the value that the assets may ultimately have, without further discovery, and without an evidentiary hearing regarding the value of those assets." (*Id.* at ¶ K.)

---

[2] The Dodger Assets are the team, Dodger Stadium, and approximately 276 acres of property surrounding Dodger Stadium.

13. Approximately six months after Frank sold the team, Jamie filed a motion to set aside the Stipulated Judgment. Frank responded by filing a motion for a protective order. Following a hearing on Frank's motion, Jamie was allowed to pursue limited discovery with respect to her motion, related to "the timing and disclosure of the 'RSN document,' . . . and to the date and nature of information provided [to Frank]" by either Blackstone or Guggenheim Partners "with respect to formal or informal offers, bids, or purchase proposals for the Dodger Assets prior to January 19, 2012." (Ex. D at ¶ 1.)

14. Despite the narrow scope of discovery provided for by the court, Jamie served Frank with requests for production of eleven extremely broad categories of documents, including "any and all documents relating to the valuation of any or all of the Dodgers Assets between October 1, 2009 and March 31, 2012." (Ex. E at 10.) Jamie then moved to compel production of these documents on December 14, 2012. (Ex. F.) Jamie's motion to compel was filed with knowledge of the confidentiality requirements in the Order appointing Judge Farnan as the Mediator. (*Id.* at 4-5.)

15. Among the documents sought by Jamie's motion to compel is a presentation (and drafts thereof) prepared for the mediation at the request of Judge Farnan by the Dodgers and Blackstone at the direction and under the supervision of counsel. (*See* Ex. G at ¶ 2.) This presentation, which contains sensitive team financial information, was submitted to Judge Farnan and was used in the mediation to resolve the disputes between the team and MLB. (*Id.*) Frank has objected to production of the document based upon the work product doctrine, the mediation privilege, this Court's order and the local rules.

16. On January 23, 2013, the California court held a hearing on several outstanding discovery motions, including Jamie's motion to compel. Following the hearing, the court

granted Jamie's motion to compel in part and ordered Frank to produce, among other things, "[a]ll presentations in his possession, custody or control of the value of the Dodger Assets." (Ex. H at 3.)

17. On April 5, 2013, the California court adopted Jamie's proposed order with regard to the January 23 hearing, which requires that Frank "produce all responsive documents to which he is not asserting the attorney-client or work product privilege." (Ex. I.) This order does not address the fact that production of the presentations or any other confidential mediation materials would violate this Court's Confirmation Order, the Mediation Order, and Local Rule 9019-5(d).

18. On April 11, 2013, counsel for Frank appeared before Judge Gordon in the divorce proceedings and explained that this Court's Confirmation Order prohibits Jamie from seeking discovery of confidential mediation materials, including the presentations, and prohibits Frank from disclosing such materials. The Court is now considering this specific issue and has set Wednesday April 17 as the date on which he intends to rule. (The Court asked that the team and MLB be provided notice of that date.) As of now, the motion to aside the divorce judgment is set to proceed to a hearing on April 19.

## ARGUMENT

19. The Court should enforce the Confirmation Order by requiring Jamie to withdraw her requests for confidential mediation documents and prohibiting her from seeking such materials, including the presentations, in the divorce proceedings or in any other forum. The Court should also require Frank to comply with the Confirmation Order by requiring him to not disclose any confidential mediation materials, including the presentations. This is true for the following reasons:

20. First, the materials at issue are indisputably covered by the Court's mediation order. The presentations at issue bear the title, "Confidential Mediation Materials." As Judge Farnan has explained, those presentations "were prepared at my request for the mediation over which I presided." (Ex. G at ¶ 2.) The presentations formed the basis of discussion between Judge Farnan, counsel for the Dodgers and Blackstone for Judge Farnan's "use in trying to resolve the Dodgers' then-pending dispute." (*Id.*) As Judge Farnan has noted, the presentations "are confidential pursuant to Judge Gross's Mediation Order." (*Id.*)

21. Judge Farnan is of course correct that the materials are covered by the mediation order. The order states that "[i]nformation disclosed the Mediator in private session shall remain confidential unless the party authorizes disclosure." (Dkt. No. 519 at ¶ 5.) Here, the information was created for the mediation and disclosed to Judge Farnan in private session. Notably, the parties to that session – the Dodgers and MLB – have objected to the disclosure of any confidential mediation materials and neither has authorized the disclosure of such materials. (Ex. J.) Thus, the materials must be treated as confidential under the Court's order.

22. Among the information in the presentations is an array of team financial information that will be subject to public disclosure if produced in the McCourts' divorce litigation. While Jamie McCourt already this financial information, it is non-public. And although there is a protective order in the McCourt litigation, given that the case is set for trial shortly, in the absence of extraordinary relief (such as sealing the courtroom) it is likely that this information will be publicly disclosed.

23. The Court should enforce its order and preserve the materials as confidential. Courts have long recognized that there is a "strong policy" in promoting "full and frank discussion during a mediation." *In re Tribune Co.*, No. 08-13141 (KJC), 2011 WL 386827, at *8

(D. Del. Feb. 3, 2011). Without this guarantee of confidentiality, parties would be afraid to speak freely and participate fully in mediation:

> Absent the mediation privilege, parties and their counsel would be reluctant to lay their cards on the table so that a neutral assessment of the relative strengths and weaknesses of their opposing positions could be made. Assuming they would even agree to participate in a mediation process absent confidentiality, participants would necessarily 'feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute.' The effectiveness of mediation would be destroyed, thereby threatening the well established public needs of encouraging settlement and reducing court dockets.

*Id.* (quoting *Sheldone v. Pennsylvania Turnpike Comm'n*, 104 F.Supp.2d 511, 514 (W.D. Pa. 2000) (citations omitted). If the Court simply disregards the assurance of confidentiality it gave to the parties *ex ante*, it would not only be unfair to these parties, but it would inhibit candid discussion of other parties in future mediations as their mediation materials and communications would potentially be subject to discovery in unrelated actions in other courts.

24. Second, Jamie McCourt's discovery request for these materials is a breach of this Court's order that the Court can and should remedy. The Court clearly has authority and jurisdiction over Jamie McCourt in this matter. As noted above, Jamie filed proofs of claim and is thus a holder of claims within the meaning of Articles 9.5 and 9.6 of the Confirmation Order. Accordingly, Jamie *consented* to being permanently *enjoined* from "acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law." (*Id.* at Article 9.6.) Of course, the "Plan" incorporates all of the Court's prior orders, including the mediation order.

25. There is no reason to give Jamie a "pass" on this confidentiality provision. As a holder of claims, Jamie had the opportunity to object to the Plan for Reorganization. In fact, Jamie, who was actively represented by counsel during the bankruptcy, submitted a statement

regarding confirmation of the Plan for Reorganization ("Jamie's Statement"). (Dkt. No. 1323.) Jamie's Statement asked that the Plan for Reorganization "provide full faith and credit to the Stipulated Judgment" and ensure that Jamie received the $131 million that she was entitled to under the Stipulated Judgment. (*Id.* at 2-3.) Notably, at no time did Jamie make any objections to the confidentiality of mediation materials even though she was served with that order at the time it issued.

26. Jamie's attempt to acquire the presentations and any other confidential mediation materials is a violation of the Confirmation Order and related injunction to which she consented. Similarly, Frank McCourt's disclosure of these mediation materials – or any other information prepared for or exchanged during the mediation – would violate this Court's orders and Local Rule 9019-5(d).

27. Third, allowing the discovery of these materials is unnecessary because the information may not be used in the McCourts' divorce proceeding or any other case without violating this Court's mediation order. The Court's mediation order states that any "conduct and statements, whether written or oral, made in the course of the proceedings, are inadmissible in any arbitration or court proceeding." (Dkt. No. 519 at ¶ 5.) Thus, any effort by Jamie to use the information in her divorce proceeding would be a further violation of the Court's order. The same is true under California law. *See* California Evidence Code, Section 1119 ("[n]o evidence" from a mediation may be "subject to discovery," its production may not be compelled in a civil action and noting that all communications in a mediation "shall remain confidential.").

WHEREFORE, the Dodgers respectfully request that this Court enforce its April 6, 2012, Confirmation Order against Jamie McCourt and Frank McCourt and to enter an order, substantially the form of Exhibit A, (i) ruling that the presentation at issue is subject to the

Court's mediation order; (ii) requiring Jamie McCourt to withdraw her discovery requests in the divorce proceedings that seek confidential mediation materials, (iii) prohibiting Jamie McCourt from issuing any further discovery in any proceeding, related to confidential mediation materials or information, (iv), prohibiting Frank McCourt from disclosing confidential mediation materials or information in the divorce proceedings or in any other proceeding.

Dated: April 12, 2013

*/s/ Amanda Winfree Herrmann*
William P. Bowden (#2553)
Amanda Winfree Herrmann (#4615)
ASHBY & GEDDES, P.A.
500 Delaware Ave.
8th Floor, PO Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
Email: awinfree@ashby-geddes.com

-and-

*/s/ Derek J. Sarafa*
Derek J. Sarafa (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: dsarafa@winston.com

-and-

Michael J. Small (admitted *pro hav vice*)
FOLEY & LARDNER LLP
321 N. Clark St.
Suite 2800
Chicago, IL 60654
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Email: msmall@foley.com

*Attorneys for the Reorganized Debtor and Guggenheim Baseball Management, L.P.*