# Exhibit C

A

FL-180

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| TROPE AND TROPE LLP<br>SORRELL TROPE (STATE BAR 21103)<br>ANNE KILEY (STATE BAR 145489)<br>12121 Wilshire Blvd., Suite 801<br>Los Angeles, CA 90025-1164<br>TELEPHONE NO.: (310) 207-8228 FAX NO. (Optional): (310) 826-1122<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): FRANK H. McCOURT, JR. | ORIGINAL FILED<br>JAN 19 2012<br>LOS ANGELES SUPERIOR COURT |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>STREET ADDRESS: 111 NORTH HILL STREET<br>MAILING ADDRESS: Same<br>CITY AND ZIP CODE: LOS ANGELES, CA 90012<br>BRANCH NAME: CENTRAL DISTRICT | |
| MARRIAGE OF<br>PETITIONER: JAMIE McCOURT<br>RESPONDENT: FRANK McCOURT | |
| **JUDGMENT**<br>[X] DISSOLUTION [ ] LEGAL SEPARATION [ ] NULLITY<br>[ ] Status only<br>[ ] Reserving jurisdiction over termination of marital or domestic partnership status<br>[X] Judgment on reserved issues<br>Date marital or domestic partnership status ends: | CASE NUMBER:<br>BD 514 309 |

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders. The restraining orders are contained on page(s) of the attachment. They expire on *(date)*:

2. This proceeding was heard as follows: [X] Default or uncontested [ ] By declaration under Family Code section 2336 [ ] Contested
   a. Date: JANUARY 19, 2012 Dept.: 2 Room: 215
   b. Judicial officer *(name)*: SCOTT GORDON [ ] Temporary judge
   c. [X] Petitioner present in court [X] Attorney present in court *(name)*: DENNIS WASSER & MICHAEL KUMP
   d. [X] Respondent present in court [X] Attorney present in court *(name)*: SORRELL TROPE & RYAN KIRKPATRICK
   e. [ ] Claimant present in court *(name)*: [ ] Attorney present in court *(name)*:
   f. [ ] Other *(specify name)*:

3. The court acquired jurisdiction of the respondent on *(date)*: AUG 26 2010
   a. [ ] The respondent was served with process.
   b. [X] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. [ ] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons
      (1) [ ] on *(specify date)*:
      (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify)*:

   d. [ ] This judgment will be entered nunc pro tunc as of *(date)*:
   e. [X] Judgment on reserved issues.
   f. The [ ] petitioner's [ ] respondent's former name is restored to *(specify)*:
   g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order* (form FL-192) is attached.





Exhibit A - Page 9

FL-180

| CASE NAME (*Last name, first name of each party*): | CASE NUMBER: |
| --- | --- |
| McCOURT, Jamie and Frank | BD 514 309 |

4. (*Cont'd.*)

i. [ ] A settlement agreement between the parties is attached.
j. [X] A written stipulation for judgment between the parties is attached.
k. [ ] The children of this marriage or domestic partnership.
   (1) [ ] The children of this marriage or domestic partnership are:
   Name Birthdate

   (2) [ ] Parentage is established for children of this relationship born prior to the marriage or domestic partnership.

l. [ ] Child custody and visitation are ordered as set forth in the attached
   (1) [ ] settlement agreement, stipulation for judgment, or other written agreement.
   (2) [ ] *Child Custody and Visitation Order Attachment* (form FL-341).
   (3) [ ] *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).
   (4) [ ] other (*specify*):

m. [ ] Child support is ordered as set forth in the attached
   (1) [ ] settlement agreement, stipulation for judgment, or other written agreement.
   (2) [ ] *Child Support Information and Order Attachment* (form FL-342).
   (3) [ ] *Stipulation to Establish or Modify Child Support and Order* (form FL-350).
   (4) [ ] other (*specify*):

n. [X] Spousal or partner support is ordered as set forth in the attached
   (1) [X] settlement agreement, stipulation for judgment, or other written agreement.
   (2) [ ] *Spousal, Partner, or Family Support Order Attachment* (form FL-343).
   (3) [ ] other (*specify*):

**NOTICE:** It is the goal of this state that each party will make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal or partner support.

o. [X] Property division is ordered as set forth in the attached
   (1) [X] settlement agreement, stipulation for judgment, or other written agreement.
   (2) [ ] *Property Order Attachment to Judgment* (form FL-345).
   (3) [ ] other (*specify*):

p. [ ] Other (*specify*):

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions.
Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date:

JUDICIAL OFFICER

5. Number of pages attached: 23

[ ] SIGNATURE FOLLOWS LAST ATTACHMENT

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar thing. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

In Re Marriage of McCOURT L.A.S.C. Case No. BD 514 309

## STIPULATED JUDGMENT ON RESERVED ISSUES (FORM FL-180)

This Stipulated Judgment on Reserved Issues ("Stipulated Judgment") is consented to by Petitioner, JAMIE McCOURT, and Respondent, FRANK McCOURT. This Stipulated Judgment is granted based upon the following facts, to which the Court finds the parties have agreed:

A. Petitioner and Respondent were married on November 3, 1979.

B. There are no minor children of the parties. They have four adult sons.

C. Due to irreconcilable differences, Petitioner and Respondent separated on July 6, 2009 (hereafter "Date of Separation").

D. On October 27, 2009, Petitioner caused the Petition for Dissolution of Marriage to be filed in this action (hereafter "Dissolution Action"). The Superior Court has jurisdiction over the parties and over the subject matter of the Petition for Dissolution of Marriage.

E. On October 26, 2010, the parties filed a Stipulated Judgment of Dissolution of Marriage-Status Only, pursuant to which they terminated their marriage, reserving jurisdiction over all other unresolved issues in this dissolution action.

F. In the Dissolution Action, the parties disputed ownership of, inter alia, the following business assets: The McCourt Broderick Limited Partnership ("TMBLP") and The McCourt Company, Inc. and all of their subsidiaries (which subsidiaries include, without limitation, Los Angeles Dodgers LLC, LA Real Estate LLC, LA Holdco LLC, Blue Landco LLC, FJM Blue LLC, LA Marathon LLC, McCourt College Street LLC) (collectively, the "McCourt Entities"). The "Dodger Assets" as used herein means the following entities, including all of their rights and assets: (a) Los Angeles Dodgers, LLC, (b) Los Angeles Dodgers Holding Company LLC, (c) LA Real Estate LLC, (d) LA Real Estate Holding Company LLC, (e) LA Holdco LLC, (f) Blue Landco LLC. The Dodger Assets specifically includes, without limitation, the Los Angeles Dodgers baseball club and all media rights associated with it, Dodger Stadium, and the approximately 276 acres of land located in Chavez Ravine.

G. Petitioner has been represented in this proceeding by Wasser, Cooperman & Carter, Kinsella Weitzman Iser Kump & Aldisert LLP, and Boies, Schiller & Flexner LLP, all of whom

*Execution Copy*

have advised Petitioner in connection with this Stipulated Judgment.

H. Respondent has been represented in this proceeding by Susman Godfrey L.L.P., and Trope and Trope L.L.P., both of whom have advised Respondent in connection with this Stipulated Judgment.

I. The parties have conducted both formal and informal discovery in this action. In negotiating the economic terms of this Stipulated Judgment, each party hereto has been informed of the laws of the State of California, which permit each party the opportunity to obtain from the other, and from others, all facts pertaining to financial aspects of the parties, including all of the financial circumstances of the other party, and the income which each is likely to derive from the property acquired by each hereunder, through discovery procedures and otherwise, both on a voluntary basis and through formal discovery procedures. Each party knowingly and expressly waives his or her rights to engage in further discovery, both formal and informal, and to investigate fully the financial circumstances of the other party; and each party accepts the economic terms of this Stipulated Judgment with full knowledge of their rights in light of the foregoing waiver.

J. The parties also acknowledge that by entering into a negotiated settlement of all issues between them, each knowingly waives his or her right to a full evidentiary hearing on the merits with respect to those issues. Each party acknowledges that each has been advised by his or her respective counsel that the economic benefits conferred on each by this Stipulated Judgment may be better or worse than the economic benefits that would be conferred after such a full evidentiary hearing. Nevertheless, both parties have considered the risk of continued litigation and the costs thereof, and have decided that it is preferable to settle all issues rather than to be subjected to the uncertainties associated with continuing the litigation process.

K. The parties acknowledge that the value of the assets at issue in this litigation have been a matter of dispute. In particular, the value of the Dodger Assets has been a contentious issue of dispute, with the parties having offered values covering a broad range. The parties acknowledge that they are willing to enter into this Stipulated Judgment regardless of the value

that the assets may ultimately have, without any further discovery, and without an evidentiary hearing regarding the value of those assets.

L. Each party has acknowledged and agreed that there may be certain tax consequences as a result of the provisions of this Stipulated Judgment, including, but not limited to, capital gains tax consequences and state and federal income tax consequences. Each party has further acknowledged and agreed that she/he has consulted with, or has had the opportunity to consult with, her/his own tax advisors, tax attorneys and/or accountants regarding any tax consequences to her/him resulting from this Stipulated Judgment. Each party acknowledges that she/he has sought and obtained all of the tax, business-related or other advice that she/he deems necessary in order to enter into this Stipulated Judgment.

M. Each party has consented to the terms of this Stipulated Judgment voluntarily and free of any coercion, duress or undue influence. Petitioner and Respondent have acknowledged that no presumption of undue influence by the other party is applicable to this Stipulated Judgment.

N. The parties acknowledge that prior to the execution of this Stipulated Judgment, they executed a Binding Term Sheet dated October 11, 2011 (the "Binding Term Sheet"), which is binding upon them and fully enforceable under California Code of Civil Procedure § 664.6 and California law, which was entered and so ordered by the Court on November 3, 2011, and upon which the terms of this Stipulated Judgment have been based. The purpose of the Binding Term Sheet and this Stipulated Judgment is to settle and to determine all presently existing personal and property rights of the parties with respect to each other, and to satisfy such obligations, claims and rights which she/he may have against the other as of the date hereof, in the manner set forth in this Stipulated Judgment. This Stipulated Judgment shall be binding on and determinative of the rights and obligations of Petitioner and Respondent as those rights exist or could have been asserted as of the Effective Date hereof. The Binding Term Sheet remains a valid and enforceable agreement and constitutes a written agreement pursuant to Section 2516 of the Internal Revenue Code. The distribution of assets described in this Stipulated Judgment are made pursuant to the Binding Term Sheet.

*Execution Copy*

O. It is the mutual wish and desire of both Petitioner and Respondent to immediately effect a full, complete and final settlement of all their respective property interests, future and present, and, except as otherwise set forth herein, to irrevocably adjust and determine forever all legal obligations of any nature which may exist with respect to one another and by reason of their marriage, and to fully and completely resolve any and all issues relating to spousal support, division of property, and attorneys' fees and costs.

P. It is the intention of the parties that this Stipulated Judgment be effective as of October 11, 2011, the date of the Binding Term Sheet (herein the "Effective Date"). The parties agree to file this Stipulated Judgment with the Court within twenty-four (24) hours of it being executed by Petitioner and Respondent, and to fully cooperate in taking whatever steps are necessary for the Court to sign and enter this Stipulated Judgment as soon as possible after it has been submitted to the Court. Each party waives any right to object to, contest or interfere in any way whatsoever with the filing of or the Court's entry of this Stipulated Judgment. The Court shall retain jurisdiction for all purposes for enforcement of this Stipulated Judgment and to resolve any disputes that arise with respect to this Stipulated Judgment.

Q. The Binding Term Sheet provides that on or before November 15, 2011, Frank shall execute a confession of judgment for $131 million dollars in a form reasonably satisfactory to all parties reflecting the terms of the Binding Term Sheet. The parties agree that this Stipulated Judgment which can be enforced as set forth herein and under applicable law satisfies Petitioner's request for a confession of judgment, and that no separate confession of judgment will be filed with the Court.

**THE PARTIES AGREE AND THE COURT ORDERS, ADJUDGES AND DECREES AS FOLLOWS:**

1. **INCORPORATION OF RECITALS**

The recitals set forth above shall be incorporated herein by this reference.

2. **RESOLUTION OF PROPERTY ISSUES**

A. The following assets are confirmed and awarded to Petitioner as her sole and separate property, free and clear of any claims whatsoever of any type by Respondent:

*Execution Copy*

(1) The real property commonly referred to by the parties as the Charing Cross residence, located at 10231 Charing Cross Road, Los Angeles, CA 90024.

(2) The real property commonly referred to as the Malibu I residence, located at 22426 Pacific Coast Highway, Malibu, CA 90265.

(3) The real property commonly referred to as the Malibu II residence, located at 22420 Pacific Coast Highway, Malibu, CA 90265.

(4) The real property commonly referred to as the Vail condominium, located at The Lodge at Vail, 174 East Gore Creek Drive, Unit 411, Vail, CO 81657.

(5) All fixtures, furnishings, artwork and personal property located at and/or associated with the real properties listed in 2.A (1) through (4) above, with the exception of personal property of a personal nature to Respondent (e.g., clothing, jewelry, books, photographs, family heirlooms from Respondent's parents or grandparents, etc.).

(6) All of Petitioner's jewelry, clothing, and other personal property, including vehicles and boats as to which Petitioner is the record owner.

(7) All funds and assets held in all joint accounts, and all funds and assets in all individual accounts (including, without limitation, bank accounts, retirement accounts, and other investment accounts) in Petitioner's name.

(8) Except as otherwise provided herein, any and all other assets presently in Petitioner's name, in her possession, or under her control, including but not limited to any business entities in Petitioner's name, together with all assets, liabilities, good will and financial accounts thereof.

(9) Except as otherwise provided in this Stipulated Judgment, Petitioner shall be solely responsible for and pay all obligations relating to any asset awarded to her, and she shall indemnify and hold Respondent harmless therefrom. This shall include, but not be limited to, the mortgages, outstanding bills, and other indebtedness associated with the real properties listed in 2.A (1) through (4) above, with the exception of the $18 million mortgage secured in part by the Vail property. Petitioner will indemnify and hold Respondent harmless in connection with those debts and obligations. Petitioner will use her best efforts to remove Respondent from the

*Execution Copy*

mortgages on the Charing Cross residence and the two Malibu residences.

B. The following assets are confirmed and awarded to Respondent as his sole and separate property, free and clear of any claims whatsoever of any type by Petitioner:

(1) The entire beneficial interest in, and all assets of, the New Rushy Marsh Realty Trust, which assets include the real property commonly referred to as the Cotuit property, located at 1524 Main Street, Cotuit, MA 02635, including the land and structures surrounding the primary residence.

(2) The real property commonly referred to as the Willowbend property, located at Lot 30, 101 Willowbend Drive, Mashpee, MA 02649.

(3) All fixtures, furnishings and personal property located at and/or associated with the real properties listed in 2.B (1) and (2) above, with the exception of personal property of a personal nature to Petitioner (e.g., clothing, jewelry, books, photographs, family heirlooms from Petitioner's parents or grandparents, etc.).

(4) All of Respondent's personal jewelry, clothing, and other personal property, including vehicles and boats as to which Respondent is the record owner.

(5) All ownership interest in the McCourt Entities.

(6) All assets or other business entities owned by or through the McCourt Entities, including but not limited to the Dodger Assets, unimproved land in Montana owned by FJM Blue LLC, the College Street property in Los Angeles, California owned by McCourt College Street LLC, and the Los Angeles Marathon LLC.

(7) Any other business interests of any type owned directly or indirectly by Respondent, the McCourt Entities, or any other entity in which Respondent has an interest, except for interests and assets awarded to Petitioner in Section 2.A above (to the extent, if any, that those interests and assets could be characterized as "business interests").

(8) All funds and assets held in all individual accounts, and other bank accounts, retirement accounts, and other investment accounts in Respondent's name alone.

*Execution Copy*

(9) Any and all other assets presently in Respondent's name, in his possession, or under his control, including but not limited to any business entities in Respondent's name, together with all assets, liabilities, good will and financial accounts thereof.

(10) Respondent shall be solely responsible for and shall pay all obligations relating to any asset awarded to him, and he shall indemnify and hold Petitioner harmless therefrom. This shall include, but not be limited to, indemnifying Petitioner for, and holding Petitioner harmless from, any liability in connection with the $18 million line of credit secured by the Cotuit and Vail properties, including any action taken by Comerica on the Vail property with respect to that line of credit. This shall further include, but not be limited to, all of the debts owing in connection with any of Respondent's business interests and entitles, including without limitation, the McCourt Entities and the Dodgers Assets. To the extent that Petitioner's name is on any of the debts of the business entities or business interests awarded to Respondent herein, Respondent shall forthwith take all steps necessary to remove Petitioner's name and to have the business entity and/or business interest debt reissued in his name only.

C. Petitioner agrees that Respondent shall be treated, for tax purposes, as having owned 100% of the McCourt Entities and Dodger Assets at all times; shall be entitled to 100% of any tax deductions, credits, and losses associated with those assets for all years; and shall be responsible for all tax obligations and reporting responsibilities associated with those assets. Twenty-one days after receiving the proof described below, but in no event earlier than April 30, 2012, Respondent will reimburse Petitioner for any taxes, interest, and penalties (to the extent permitted by law, and not including any penalties for Petitioner's fraud or willful violation of law) for which Petitioner is liable and is required to pay in connection with her 2008 and/or 2009 individual tax returns as a result of removing any deductions, credits or losses that she has reported with respect to the McCourt Entities and Dodger Assets, up to a maximum of $593,675. This reimbursement payment is made incident to divorce, and for full and adequate consideration, and will be non-taxable to Petitioner and non-deductible by Respondent. At least 21 days before receiving reimbursement from Respondent; Petitioner will provide Respondent with (a) an affidavit that amended returns have been prepared and filed in accordance with this provision, also

stating the amount of tax, the amount of interest, and the amount of penalty due by Petitioner, as a result of removing such income, loss, deductions and credits arising from the McCourt Entities on the amended returns, and (b) adequate proof of payment. Respondent will not be obligated to pay any attorneys' fees or accountants' fees in connection with those returns.

D. Respondent agrees that Petitioner shall be treated, for tax purposes, as having owned 100% of the business interests and real properties awarded to her in this Stipulated Judgment at all times and shall be entitled to 100% of any tax deductions associated with those assets.

E. Petitioner and Respondent will be permitted to reasonably request and obtain copies of videos, photographs, or other recordings of family or professional events or activities that are in the possession of the other, including without limitation, videos and photographs of Petitioner's association with and activities on behalf of the Los Angeles Dodgers. The requesting party will pay the reasonable costs of duplication and of any other expenses associated with locating and duplicating such photographs or videos.

3. <u>LUMP SUM PAYMENT BY RESPONDENT TO PETITIONER</u>

A. As part of the consideration for the making of the Binding Term Sheet upon which this Stipulated Judgment is based and this Stipulated Judgment, and the division of the parties' assets and debts, Respondent shall pay to Petitioner the sum of One Hundred Thirty-One Million Dollars and no/100 ($131,000,000.00) in cash due on or before April 30, 2012 ("Lump Sum Payment"), subject to possible adjustment as set forth below.

B. The foregoing Lump Sum Payment, payable by Respondent to Petitioner, shall be nontaxable to Petitioner and nondeductible by Respondent as such payment is made pursuant to Internal Revenue Code section 1041, as part of the division of marital assets and is a transfer between spouses incident to the dissolution of their marriage.

C. Respondent shall have the right to prepay the aforementioned Lump Sum Payment. In the event that he prepays the Lump Sum Payment in full on or before April 30, 2012, the amount of the Lump Sum Payment shall be reduced by $1 million per month on a pro rata basis. By way of example, if Respondent prepays the Lump Sum Payment in full on December

31, 2011, the amount of the Lump Sum Payment shall be reduced on a pro rata basis to $127 million. In the event Respondent only partially prepays the Lump Sum Payment before April 30, 2012, there shall be no reduction in the $131 million Lump Sum Payment.

D. In the event that Respondent fails to make the Lump Sum Payment in full on or before April 30, 2012, Petitioner shall have all enforcement rights and remedies available to her under California law. In addition to all enforcement rights and remedies that Petitioner may have to compel payment of the Lump Sum Payment, in the event that Respondent fails to make the Lump Sum Payment in full on or before April 30, 2012, the Dodgers Assets forthwith shall be sold in an orderly manner, with joint control of the sales process by Respondent and Petitioner, and with the first $131 million in net, after-tax proceeds being paid to Petitioner.

E. If it is necessary for Petitioner to take legal action after April 30, 2012 to collect any of the Lump Sum Payment, Respondent shall pay Petitioner's reasonable attorneys' fees and costs related to such legal action.

F. Until the Lump Sum Payment is paid in full, the net proceeds (up to $131 million, and after repayment of existing loans on the Dodgers Assets and payment of taxes related to such transaction) of any sale, financing or other disposition of the Dodgers Assets, or of any entities that directly or indirectly own or control the Dodgers Assets, shall be paid to Petitioner before Respondent receives any proceeds. Respondent shall not take any action that unfairly interferes with Respondent's ability to make full payment of the Lump Sum Payment to Petitioner on or before April 30, 2012.

4. <u>DEBTS, LIABILITIES AND REIMBURSEMENTS</u>

A. The Court finds that each of the parties has acknowledged and agreed that the parties have no community liabilities or debts, and that neither has any claim for or right to any reimbursements and/or credits from the other.

B. Except as provided in this Stipulated Judgment, each party shall solely assume and hold the other free and harmless from any and all debts and obligations in his or her name, or incurred on his or her behalf, including any and all liabilities which each has incurred or has arisen in his or her name from and after the Date of Separation. This shall include but not be

limited to credit card debt, credit line obligations, and any obligation relating in any way to either party's assets as awarded pursuant to this Stipulated Judgment and the Binding Term Sheet upon which it is based.

C. Respondent shall assume and pay and have sole responsibility and liability for the $18 million line of credit secured by the Cotuit and Vail properties and shall fully indemnify and hold Petitioner harmless from same. Respondent will use his best efforts to remove Petitioner from that line of credit and sever the Vail property from that line of credit.

D. Respondent will pay, from the Effective Date forward, any and all education expenses for the McCourt children.

E. Petitioner shall assume and pay and have sole responsibility for the mortgages on the Charing Cross property and the two Malibu properties and shall fully indemnify and hold Respondent harmless from same. Petitioner will use her best efforts to remove Respondent from those mortgages.

F. Each party waives any and all reimbursement rights of any type or nature, including but not limited to (i) rights under Family Code section 2640 for contributions of either separate property to the acquisition of a community asset or separate property to the acquisition of separate property of the other party, (ii) under *Epstein*, *Watt*, *Moore/Marsden*, and (iii) any other theory under California law whereby the community or either party might be entitled to a reimbursement or ownership interest for use of community property or his/her separate property, either prior to or subsequent to the Date of Separation, toward the acquisition of, improvement of, maintenance of, or any other obligation relating to the separate property of the other party or to any community asset. Respondent's specifically waives his right to reimbursement for his contributions to and pay-downs of the mortgages on the Malibu properties, the Cotuit property, and the Charing Cross properties, and his contributions to all of Petitioner's bank and investment accounts, including, without limitation, the Pinnacle Hedge Funds. Further, Frank waives his right pursuant to the Court's Order dated May 7, 2010 as amended in the Court's Order dated June 30, 2010, to seek reimbursement or reallocation of the property maintenance payments which he has made pursuant to said Order, and he further waives any claim for any reimbursement or interest in

*Execution Copy*

any of the parties' previously owned jointly titled assets including but not limited to the Cabo property and the Pinnacle China Fund.

F. Except as provided in this Stipulated Judgment, each party receiving assets, or having assets confirmed to her/him, shall assume and indemnify the other from all debts, liabilities and obligations associated with assets transferred, assigned, awarded or confirmed to the receiving party pursuant to this Stipulated Judgment.

G. The Court finds that each party has warranted and represented that she/he has not created or permitted to be created any debt or obligation chargeable to the other or to any of the property transferred, assigned, awarded or confirmed to the other pursuant to this Stipulated Judgment. In the event that it should be determined that a party created or permitted to be created any such debt or obligation, that party shall indemnify and hold the other party free and harmless therefrom, forthwith upon demand.

H. Each party is enjoined from incurring any indebtedness chargeable against the other, including, but not limited to, encumbrances on property still owned jointly by the parties. Each party is enjoined from contracting any debt or obligation in the name of the other.

I. Notwithstanding any other provision of this Stipulated Judgment, all hold-harmless and indemnity provisions of this Stipulated Judgment (no matter where they are located herein) include, but are not limited to, the requirement that the indemnifying party provide for and pay costs of defense in the event any proceedings are instituted, including all reasonable attorneys' fees, accounting fees, and any other costs of litigation reasonably incurred in connection therewith.

5. <u>SPOUSAL SUPPORT</u>

A. Respondent shall continue to pay to Petitioner the sum of $225,000 per month as and for spousal support, with payments of $112,500 to be made on the first and fifteenth days of each month, and continuing until the first to occur of: (a) Petitioner's death or (b) payment in full of the Lump Sum Payment, subject to the potential adjustment set forth immediately below. This payment of spousal support by Respondent to Petitioner shall not be modifiable in amount or duration except as specifically set forth in this Stipulated Judgment, and shall not terminate on Respondent's death or Petitioner's remarriage. The monthly amount of $225,000 shall be reduced

on a proportional basis by any advance partial payment of the Lump Sum Payment. By way of example, if Respondent pays Petitioner the sum of $65.5 million prior to April 30, 2012, then commencing on the first day of the month following that partial payment, Respondent's spousal support obligation shall be reduced on a proportional basis, and Respondent shall pay to Petitioner spousal support in the amount of $112,500 per month continuing until the first to occur of: (a) Petitioner's death or (b) payment in full of the Lump Sum Payment. The spousal support payable by Respondent to Petitioner hereunder shall be nontaxable to Petitioner and not includable in her income, and nondeductible by Respondent.

B. As part of the consideration for the making of this Stipulated Judgment and the Binding Term Sheet upon which it is based, Petitioner is waiving the right to seek any payment of retroactive spousal support or payment for property maintenance expenses for periods prior to the Effective Date, other than that which has already been paid by Respondent prior to the execution of this Stipulated Judgment.

C. As part of the consideration for the making of this Stipulated Judgment and the Binding Term Sheet upon which it is based, Respondent is waiving his right to seek reallocation and rechargeability of the property maintenance expenses paid by him from December 15, 2009 to the date of the entry of this Stipulated Judgment. Further, Respondent is waiving the right to seek credits for use of any funds belonging to him for payment of property maintenance expenses or support from the Date of Separation to the date of the entry of this Stipulated Judgment. In addition, Respondent is waiving his right to claim any credit for Petitioner's use for any purpose of any of the Pinnacle Funds, or any other funds, subsequent to the institution of the Dissolution Action.

D. As of the Effective Date, and except for the spousal support provisions contained in this Stipulated Judgment, each of the parties does hereby waive the right to request or receive spousal support or other maintenance from the other party. Each of the parties acknowledges that by reason of the division and award of assets as set forth herein, and upon full payment of the Lump Sum Payment under Paragraph 3 above, each party will be self-sufficient and have sufficient assets and income to maintain his/her respective lifestyle. Each of the parties

further acknowledges that this waiver of the right to receive or request spousal support is final and irrevocable regardless of what circumstances may occur in the future with regard to either party's assets, health, or any other factors which might relate to a party's ability to be self-supporting.

6. **FEES AND COST OF LITIGATION**

Except as otherwise provided herein, each party shall bear his/her attorney's fees, expert fees, and other costs pertaining to this action through execution of this Stipulated Judgment and waives all rights to seek reimbursement of any costs or fees paid through execution of this Stipulated Judgment.

7. **INDEMNIFICATION AND HOLD HARMLESS FOR INCOME TAXES**

A. Respondent shall fully indemnify and hold Petitioner harmless from any and all liability arising out of or associated with any of the parties' joint personal tax returns filed for the tax years 2004 to the present, and all federal, state or other business tax returns for the tax years 2004 to the present for the Dodger Assets and the McCourt Entities, and for any other liability, tax or otherwise, in connection with the Dodgers Assets and the McCourt Entities, including without limitation, any federal, state or other tax liability arising out of the sale, exchange or other disposition of the Dodgers Assets and the McCourt Entities – except for any liability caused by Petitioner's fraud or willful violation of law where the practice was directed primarily by Petitioner. This indemnification shall include both possibility of payment of unpaid taxes, penalties, interest, and the costs of defense including reasonable attorneys' fees arising from matters for which Respondent has agreed to indemnify Petitioner.

B. Petitioner will cooperate with Respondent in dealing with any taxation agencies or authorities. Respondent shall have control over any tax controversy related to the indemnified matters, and Petitioner will not unilaterally agree to any settlement, assessments, or judgments with respect to the indemnified matters without the consent of Respondent, which consent shall not be unreasonably withheld. Respondent shall timely provide Petitioner with copies of all documents of legal significance filed or issued in connection with any matters for which Respondent has agreed to indemnify Petitioner, or in connection with any tax controversy concerning matters for which Respondent has agreed to indemnify Petitioner. The term

*Execution Copy*

"documents of legal significance" includes documents such as protests, assessments, notices of appeal, and briefs, but not documents such as document requests, responses to document requests, and procedural letters. Nothing herein limits Petitioner's or Respondent's ability to give truthful answers to questions or to provide documents requested, or requires Petitioner or Respondent to join in or support any assertion she or he believes is inaccurate or misleading.

C. Except as otherwise provided in this Stipulated Judgment, each of the parties shall solely assume and pay any and all taxes with respect to assets awarded to him and her, and shall indemnify and hold the other party harmless therefrom.

D. The Court finds that the division of community and quasi-community property represents an allocation of property between spouses which does not constitute a sale or exchange of property by either of them. The Court finds that the parties agree that all payments and allocations of property hereunder are non-taxable transfers of property incident to divorce, within the meaning of Internal Revenue Code Section 1041(a)(2), and that, except as expressly provided for herein, the tax basis of each asset allocated or paid hereunder has not changed and will not change by reason of such allocation, division or payment. The Court further finds that the parties agree not to seek a new income tax basis for any asset allocated hereunder on the theory that any sale or exchange of property was made. Moreover, any spousal support payments hereunder shall be non-deductible under Internal Revenue Code section 215 and non-includable under Internal Revenue Code section 71. If there is a breach of the foregoing agreement of the parties not to seek a new income tax basis and not to treat the division hereunder as a sale or exchange, and if any future tax should be assessed against the nonbreaching party by reason of the transfer of property provided for in this Stipulated Judgment, the party who has violated said agreement and has received property and attempted to step up the basis of such property shall indemnify and hold harmless the other nonbreaching party against any and all tax liability, including penalties, interest and expenses, including attorneys' fees and accounting fees incurred with respect to the subject transfers of property hereunder and in contesting any assessments.

8. <u>DODGERS' BANKRUPTCY</u>

A. Petitioner will fully cooperate with Respondent in connection with *In re:*

*Los Angeles Dodgers LLC, et al.*, Case No. 11-12010 (KG) (D. Del.) and all dealings with Major League Baseball, provided however, that Respondent shall pay all of Petitioner's reasonable expenses, including reasonable attorney's fees, incurred in connection with such cooperation.

B. Without limiting the generality of the foregoing, if requested by Respondent, Petitioner shall support all pleadings filed, including any plans of reorganization, and positions taken by the Debtors in such case and, if so requested by Respondent, join with the Debtors in opposing any pleadings filed or positions taken by other parties in interest in such cases. Petitioner will also withdraw all pending objections to motions filed by the Debtors. Nothing herein shall require Petitioner to join in pleadings containing allegations or statements which she reasonably believes to be untrue or inaccurate.

9. <u>CLAIMS AGAINST BINGHAM McCUTCHEN LLP</u>

With respect to any and all claims that Petitioner has or may have against Bingham McCutchen LLP, or any of its predecessors, successors, partners or employees (collectively, the "Claim" or "Claims"), the parties agree that: (a) Petitioner will not commence or prosecute any Claim against Bingham without Respondent's prior written consent (i.e., a covenant not to sue), (b) Petitioner will have no obligation to prosecute any such Claims, subject to a further agreement between the parties, and (c) Petitioner will provide Bingham a general release of Claims if requested by Respondent as part of any settlement between Respondent and Bingham.

10. <u>MUTUAL RELEASE</u>

A. Except as otherwise provided in this Stipulated Judgment, from and after the Date of Separation, all income, earnings, annuities, and any and all other payments thereafter accruing to, received or earned by the other party and all property thereafter acquired in any manner by the other party shall be the sole and separate property of the acquiring party. The Court finds that Petitioner and Respondent each hereby forever release, relinquish, renounce and waive any right or claim in and to any income or property of the other party. The Court finds that Petitioner and Respondent each also hereby forever release, relinquish, renounce and waive any right or claim in and to any income hereafter accruing to or being earned from property which is received by or confirmed to either party under this Stipulated Judgment.

*Execution Copy*

B. In addition to resolving all of the issues which exist between the parties in the Dissolution Action, whether issues have been raised or have not yet been raised, it is the intent of the parties to resolve all potential issues which may exist between the parties, whether known or unknown, of any type whatsoever, arising from the beginning of time until the entry by the Court of this Stipulated Judgment, arising out of or relating to either party's actions, omissions, or assets, including corporations, companies, businesses, trusts and real properties, or otherwise. As part of the making of this agreement, each of the parties does hereby now and forever release any and all claims of any type whatsoever, whether known or unknown, which he/she may have against the other party or against any of the other party's business or other property interests, including employees and agents of either party or of his/her businesses or properties, arising from the beginning of time until the entry by the Court of this Stipulated Judgment; provided, however, that the foregoing release shall not apply to (i) any obligations arising under the Binding Term Sheet or this Stipulated Judgment or (ii) any claims or rights against Bingham or its partners and employees or (iii) any duties or obligations expressly agreed to and imposed by this Stipulated Judgment. It is further provided, however, that notwithstanding anything else herein, there is no release of claims arising out of or related to any tax or liability (including any tax, interest, or penalties) in connection with the parties' joint personal tax returns prior to 2004. This release includes an agreement that neither party shall hereafter institute any legal action against the other party or anyone else being released for any claim(s) being released herein, and if any such legal action is instituted, the filing party shall be solely and completely responsible for all fees and costs incurred by the party defending such legal action; provided, however, that if an employee covered by the releases in this Paragraph 10.B hereafter files a lawsuit or asserts any type of claim in any forum against the releasing party for actions or omissions that allegedly occurred prior to the entry by the Court of this Stipulated Judgment, then notwithstanding the releases contained herein, that releasing party may file or assert any counterclaims against the released employee.

C. Except as otherwise expressly provided in this Stipulated Judgment, the Court finds that Petitioner and Respondent release each other from any and all liabilities, debts, or obligations of every kind or character that have been or will be incurred and from any and all

*Execution Copy*

claims and demands, including without limitation: (i) all claims based on claimed present or future property rights relating to community property or separate property, wherever located; (ii) Petitioner's rights, interest in, or claim to any pre-separation or post-separation income of Respondent, from any source whatsoever; and (iii) Respondent's right, interest in, or claim to any pre-separation or post-separation income of Petitioner, from any source whatsoever. Petitioner and Respondent each shall execute such assignments or other documents as may reasonably be necessary to give full force and effect to this Stipulated Judgment, said documents to be executed in a form acceptable to the requesting party. Petitioner and Respondent shall indemnify each other and hold each other harmless as to any and all claims, liabilities, debts, obligations and demands herein released.

D. "Unknown" as used in the foregoing definition of claims to be released means claims which the parties, or either of them, do not know or suspect exist in their favor at the time of the release which, if known, would have materially affected their decision to settle or the terms of the settlement. The foregoing release shall be deemed to reflect the parties' intention to expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code which states as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

The parties also waive the benefits of any and all provisions of any and all similar statutes or law of California or of any other jurisdiction. In giving this release and waiver, each party is deemed to acknowledge that he or she may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the release, but each party intends to fully, finally and forever settle and release any and all claims described above regardless of the subsequent discovery or existence of such different or additional facts.

E. Notwithstanding the foregoing, the release of all unknown claims shall not apply to undisclosed assets. The Court will retain jurisdiction with respect to those assets, as

provided in Paragraphs 10.J and 10.K below.

F. Except for the benefits, rights and obligations created by this Stipulated Judgment or reserved herein, and except as to any action to enforce the terms of this Stipulated Judgment, the parties acknowledge that it is their intention that this Stipulated Judgment shall be a full and final accord and satisfaction of all claims which each may have against the other. Each party warrants and represents to the other that he/she has not heretofore assigned any claims against the other to any third person or entity.

G. The Court finds that Petitioner and Respondent each warrant and represent to the other that he or she has not heretofore assigned any claims against the other to any third person or entity.

H. Except as otherwise provided in this Stipulated Judgment, Petitioner warrants to Respondent that Petitioner has not incurred, nor will Petitioner incur, any liability or obligation for which Respondent is or may be liable. If any claim, action or proceedings arising out of the representation set forth in this Paragraph shall hereafter be brought seeking to hold Respondent liable on account of any liability or obligation for which Petitioner is or may be liable, Petitioner shall, at Petitioner's sole expense, defend Respondent against all such claims or demands and Petitioner shall hold Respondent free and harmless therefrom. Respondent shall be entitled to recover from Petitioner in such action, by cross-complaint or otherwise, the amount of any judgment rendered against Respondent and Respondent shall be entitled to recover for all costs and attorneys' fees incurred by Respondent. Accordingly, if Respondent is served with legal process, Respondent may appear through counsel, defend the action, and also cross-complain against Petitioner.

I. Except as otherwise provided in this Stipulated Judgment, Respondent warrants to Petitioner that Respondent has not incurred, nor will Respondent incur, any liability or obligation for which Petitioner is or may be liable. If any claim, action or proceedings arising out of the representation set forth in this Paragraph shall hereafter be brought seeking to hold Petitioner liable on account of any liability or obligation for which Petitioner is or may be liable, Respondent shall, at Respondent's sole expense, defend Petitioner against all such claims or

demands and Respondent shall hold Petitioner free and harmless therefrom. Petitioner shall be entitled to recover from Respondent in such action, by cross-complaint or otherwise, the amount of any judgment rendered against Petitioner and Petitioner shall be entitled to recover for all costs and attorneys' fees incurred by Petitioner. Accordingly, if Petitioner is served with legal process, Petitioner may appear through counsel, defend the action, and also cross-complain against Respondent.

J. The Court reserves jurisdiction to make disposition of all after-discovered community and/or quasi-community property not otherwise disposed of by this Stipulated Judgment.

K. No waiver or release approved by or made an Order of the Court; shall prevent a party from asserting a claim to his or her interest in any undisclosed community or quasi-community property.

L. Each of the parties shall retain his or her respective Social Security rights and benefits as his or her separate property. Under present law, each party may have derivative rights on account of contributions paid by the other, and such derivative benefits are also confirmed as the separate property of the recipient spouse.

11. RELEASE OF ESTATES AND SURVIVOR BENEFITS

A. The Court finds that Petitioner and Respondent have each waived any and all right to inherit from the estate of the other at her/his death, or to take property from the other by devise or bequest, unless under a Will executed subsequent to the separation date, or to claim any family allowance or probate homestead, or to act as administrator or administratrix of the estate of the other, or to act as the executor or executrix under the Will of the other.

B. The Court finds that Petitioner and Respondent have each waived any and all right to receive surviving spouse benefits or any other form of interest or benefit under any private, nongovernmental, pension or retirement plan in which the other spouse is a participant.

12. EXECUTION OF DOCUMENTS AND RESERVATION OF JURISDICTION.

A. Each party shall promptly, upon request of the other or counsel of the other

*Execution Copy*

party, execute, acknowledge and deliver any and all deeds, bills of sale, assignments, instruments, and documents necessary or desirable to transfer title and to carry out the terms and provisions of this Stipulated Judgment. Should a party required to execute and deliver such document(s) fail to do so within ten (10) business days after demand has been made therefor by the party entitled thereto, then, and in that event, the other party may make application to the Court on *ex parte* notice of such application to the other party, for such orders as may be necessary to obtain the execution of said documents and to obtain delivery of same to the party entitled thereto; and, the Clerk of the Court or any Assistant Clerk of the Los Angeles County Superior Court may sign in place of the other party pursuant to the request of the party making the application, if necessary.

B. Except as otherwise specifically provided in this Stipulated Judgment, should either party fail to perform any obligation under this Stipulated Judgment, or under any instrument to be executed pursuant to this Stipulated Judgment, and it should thereafter become necessary for either party to employ counsel to enforce the terms of this Stipulated Judgment, or any instrument to be executed pursuant to this Stipulated Judgment, the Court shall have jurisdiction pursuant to the provisions of Family Code Section 2030, et seq. and Family Code Section 270 to make an award of attorneys' fees and costs incurred in connection with such proceeding.

C. Judge Scott M. Gordon of the Los Angeles County Superior Court retains jurisdiction over the parties to settle any disputes arising from or to interpret the provisions of this Stipulated Judgment; and to make any and all further orders necessary to enforce the provisions of this Stipulated Judgment and the implementation thereof. If Judge Gordon is unwilling or unable to decide any disputes, the parties will submit themselves to binding and confidential arbitration before one JAMS arbitrator with the parties sharing the costs equally.

D. Judge Scott M. Gordon of the Los Angeles County Superior Court retains jurisdiction to make such other and further orders as may be necessary, convenient or required with respect to the form of any documents which are or may be necessary to effectuate the purpose of this Stipulated Judgment, and any aggrieved party may make application to the Court for such purposes upon *ex parte* application. If Judge Gordon is unwilling or unable to decide any

*Execution Copy*

disputes, the parties will submit themselves to binding and confidential arbitration before one JAMS arbitrator with the parties sharing the costs equally.

13. <u>ENTIRE UNDERSTANDING</u>

This Stipulated Judgment and the Binding Term Sheet constitute the full and entire understanding of the parties with respect to the subject matters hereof. The parties hereto shall not alter and/or modify this Stipulated Judgment except by an instrument in writing executed by them and dated after the entry by the Court of this Stipulated Judgment. This Stipulated Judgment and the Binding Term Sheet include all of the representations of every kind and nature made by the parties.

14. <u>CONSTRUCTION OF AGREEMENT AND GOVERNING LAW</u>

A. The form of this Stipulated Judgment has been prepared, and negotiations in connection herewith have been carried on, by the joint efforts of the parties, and this Stipulated Judgment is to be construed simply and fairly and not strictly for or against either of the parties hereto.

B. This Stipulated Judgment is entered into in the State of California and shall be construed and interpreted under and by virtue of the laws of the State of California.

15. <u>WAIVERS</u>

The parties waive notice of trial, notice of intended decision, motion for reconsideration or new trial, statement of decision and the right to appeal, as to each and every issue resolved by this Stipulated Judgment.

16. <u>BINDING ON HEIRS</u>

This Stipulated Judgment shall be binding upon, and shall inure to the benefit of, the respective legatees, devisees, heirs, trustees, executors, administrators, assigns and successors-in-interest of the parties.

17. <u>EXECUTION IN COUNTERPARTS</u>

This Stipulated Judgment may be executed in counterparts, each of which, when executed, shall be deemed an original, and all of which together constitute one and the same Judgment. Telefaxed, scanned and/or emailed signatures on this Stipulated Judgment shall be

*Execution Copy*

deemed to be original signatures for this Stipulated Judgment.

**IT IS SO AGREED:**

DATED: January 12, 2012

Jamie McCourt
JAMIE McCOURT
Petitioner

DATED: 1/12, 2012.

FRANK McCOURT
Respondent

**APPROVED AS TO FORM:**

BOIES, SCHILLER & FLEXNER LLP

Dated: 1/13, 2012

By ______________________
DAVID BOIES
Attorneys for Petitioner
JAMIE McCOURT

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

Dated: January 12, 2012

By ______________________
MICHAEL J. KUMP
Attorneys for Petitioner
JAMIE McCOURT

[SIGNATURES AND JUDGMENT CONTINUED ON NEXT PAGE]

*Execution Copy*

Dated: 1/13, 2012

WASSER, COOPERMAN & CARTER

By ______________________
DENNIS M. WASSER
Attorneys for Petitioner
JAMIE McCOURT

Dated: 1/13, 2012

SUSMAN GODFREY L.L.P.

By ______________________
RYAN C. KIRKPATRICK
Attorneys for Respondent
FRANK McCOURT

Dated: 1/13, 2012

TROPE AND TROPE L.L.P.

By ______________________
SORRELL TROPE
Attorneys for Respondent
FRANK McCOURT

**JUDGMENT**

**IT IS SO ORDERED, ADJUDGED AND DECREED:**

Dated: JAN 19 2012, 2012

**SCOTT M. GORDON**

______________________
HONORABLE SCOTT M. GORDON
JUDGE OF THE SUPERIOR COURT